United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RODERICK MAGADIA, | Case No. 17-CV-00062-LHK |
| Plaintiff, | **ORDER GRANTING MOTION FOR CLASS CERTIFICATION** |
| v. | Re: Dkt. No. 60 |
| WAL-MART ASSOCIATES, INC., et al., | |
| Defendants. | |

Plaintiff Roderick Magadia ("Plaintiff") brings the instant putative class action against Defendants Wal-Mart Stores, Inc. and Wal-Mart Associates, Inc. (collectively, "Wal-Mart") for violations of the California Labor Code. Before the Court is Plaintiff's motion for class certification. The Court finds this matter appropriate for determination without oral argument and VACATES the motion hearing set for January 11, 2017. Civil L. R. 7-1(b). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Plaintiff's motion for class certification.

## I. BACKGROUND

### A. Factual Background

#### 1. Parties

1

Wal-Mart is "a national retailer with locations throughout the United States." ECF No. 1-1, Ex. A ("Compl.") ¶ 3. Plaintiff is a former employee of Wal-Mart. Specifically, Plaintiff worked "as a non-exempt employee at [Wal-Mart's] store in San Jose, California" from June 17, 2008 to September 16, 2016. *Id.* ¶ 4.

### 2. Plaintiff's Claims

Plaintiff identifies three "class-wide policies and practices engaged in by" Wal-Mart that allegedly violate California law: (1) Wal-Mart's alleged failure to pay adequate meal period premiums to its employees; (2) Wal-Mart's "failure to specify the hourly rates and number of hours worked for [] overtime adjustment wages"; and (3) Wal-Mart's failure to "list the pay period start and end dates" on wage statements issued to terminated employees. ECF No. 60 ("Mot.") at 10–11.

### a. Meal Period Premium Claim

Plaintiff states that, as required by California law, Wal-Mart has a policy of providing non-exempt California employees "30-minute off-duty meal periods . . . within the first five hours of work." Mot. at 18; *see* ECF No. 60-1, Ex. B ("Stokes Dep.") at 35. However, Plaintiff alleges that at times, he was required to take late lunches that were not within the first five hours of his workday, in violation of California law. *See* ECF No. 77-1, Ex. 1 ("Pl. Dep.") at 44–45. When an employer fails to provide a meal period to an employee "in accordance with [California] law"— for instance, by improperly delaying a meal period like in Plaintiff's case—the employer must pay the employee "one additional hour of pay at the employee's regular rate of compensation"— otherwise known as a meal period premium. Cal. Lab. Code § 226.7(c). Plaintiff asserts that although Wal-Mart has a policy of paying meal period premiums whenever it fails to provide meal periods that comply with California law, Wal-Mart's policy violates California Labor Code § 226.7(c) because its meal period premiums are inadequate.

Specifically, Plaintiff points to § 226.7(c)'s requirement that an employee's meal period premium be equal to "one additional hour of pay at the employee's regular rate of compensation." Plaintiff argues that under California law, an employee's "regular rate of compensation" must

United States District Court
Northern District of California

include any non-discretionary remuneration that the employee earned "during the same pay period." Mot. at 18–19. In other words, under Plaintiff's legal theory, an employee's meal period premium is not always equivalent to one additional hour of pay at the employee's *base* rate of pay. Instead, if an employer fails to provide its employee a meal period that complies with California law, and if that employee earns any non-discretionary remuneration during the same pay period, then the employee is entitled to one additional hour of pay at a rate that factors in *both* the employee's base rate of pay *and* the employee's non-discretionary remuneration.

Thus, Plaintiff asserts that Wal-Mart's meal period premium policy violates California Labor Code § 226.7(c) because Wal-Mart uniformly and invariably pays meal period premiums according to its employees' *base* rates of pay, "regardless of whether the employee has also earned non-discretionary incentive pay during the same pay period." Mot. at 18–19. Further, Plaintiff alleges that because Plaintiff received meal period premiums at his base rate of pay "during pay periods in which [he] earned non-discretionary remuneration," Plaintiff was affected by Wal-Mart's defective meal period premium policy. Compl. ¶ 25.

For its part, Wal-Mart does not dispute that it has a policy of calculating meal period premiums for its California employees without regard to any non-discretionary remuneration earned by those employees. Instead, for purposes of opposing class certification, Wal-Mart submits evidence relevant to the issue of whether questions of law or fact common to all class members predominate over questions affecting only individual class members. Specifically, Wal-Mart submits evidence that not all employees who received meal period premiums were actually deprived of compliant meal periods. According to Todd Stokes, Wal-Mart's "Regional HR Director," Wal-Mart's policy "provides that if time records indicate an associate may not have received a full meal period on time and without interruption," Wal-Mart will pay the associate a meal period premium "without researching whether the records are accurate (i.e., an associate failed to enter punches) or the payment is required by California law, and without regard as to why the meal period was skipped, short, interrupted, or late (including, for instance, where the associate did so voluntarily." ECF No. 78 ("Stokes Decl.") ¶ 5. Further, although Wal-Mart

Case No. 17-CV-00062-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

generates a "daily Meal Exception Report at each store," that Report indicates a "meal exception"—in other words, a skipped, delayed, or shortened meal period—according only to an "associate's punches in and out of the time clock." *Id.* ¶ 6. Thus, Wal-Mart's Meal Exception Reports will reflect a meal exception "irrespective of whether the associate voluntarily skipped, shortened, or took a late meal period, or whether the associate received a full meal period on time and without interruption but did not clock-in or clock-out for whatever reason." *Id.* Further, as a matter of Wal-Mart policy, any associate who appears on a Meal Exception Report will receive a meal period premium "regardless of why they are on the report." *Id.*

However, at his deposition, Mr. Stokes also testified that Wal-Mart investigates every reported "meal exception" in order to determine and document why the exception happened. Stokes Dep. at 44–45, 47–48. According to Mr. Stokes, the purpose of these investigations is not to determine which employees should receive meal premium payments. Instead, these investigations are conducted for other remedial purposes, such as to determine whether any Wal-Mart managers should be subject to disciplinary action for failing to provide meal periods to employees in accordance with California law, or to determine whether an employee who forgot to "punch in" his meal period or who voluntarily missed, delayed, or shortened his meal period needs to be "coached" to comply with Wal-Mart's policies. *Id.* at 47; *see* Stokes Decl. ¶ 7.

### b. Overtime Wage Statement Claim

Plaintiff states that when a non-exempt California employee works overtime during a given pay period and earns "non-discretionary remuneration in the same pay period," Wal-Mart's policy is to pay that employee an "additional overtime wage" called "OVERTIME/INCT." Mot. at 19; *see* Stokes Dep. at 66–68, 69, 76–77. The purpose of this policy is to ensure that Wal-Mart is in compliance with California Labor Code § 510(a), which requires employers to factor in an employee's non-discretionary remuneration when calculating that employee's overtime pay. *See Marin v. Costco Wholesale Corp.*, 169 Cal. App. 4th 804, 807 (2008) ("Because the nondiscretionary bonus at issue here increases the regular rate of pay, employees who worked overtime during the bonus period and were paid at 1.5 times their hourly rate (unaugmented by the

4

bonus) during that time are entitled to additional overtime pay once the bonus is awarded.").

However, Plaintiff alleges that "[a]lthough the 'OVERTIME/INCT' is an overtime payment, [Wal-Mart] lists it as a lump sum on the employee's check without listing the applicable hourly rates and numbers of hours worked for the overtime pay." Mot. at 19; *see* Compl. ¶ 31 ("[Wal-Mart] fail[s] to identify the correct rates of pay and number of hours worked, including for the 'OVERTIME/INCT,' item of pay, which is an overtime wage payment."). Plaintiff asserts that Wal-Mart's policy of listing "OVERTIME/INCT" as a lump sum on wage statements without specifying the hourly rates and numbers of hours worked for "OVERTIME/INCT" violates California Labor Code § 226(a)(9), which requires employers to furnish "semimonthly or at the time of each payment of wages" an "accurate itemized statement" that shows, inter alia, "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

### c. Final Wage Statement Claim

Plaintiff alleges that when his employment with Wal-Mart was terminated, instead of providing Plaintiff "an itemized wage statement with [his] last pay check[]," Wal-Mart provided only a "Statement of Final Pay" that did not include the start and end dates of Plaintiff's final pay period. Compl. ¶ 31. According to Mr. Stokes' deposition testimony, as a matter of Wal-Mart's policy and practice, none of Wal-Mart's statements of final pay from December 2015 onwards included pay period start or end dates. Stokes Dep. at 89–91. Plaintiff asserts that Wal-Mart's policy of not listing pay period start and end dates on statements of final pay violates California Labor Code § 226(a)(6), which requires employers to furnish "semimonthly or at the time of each payment of wages" an "accurate itemized statement" that shows, inter alia, "the inclusive dates of the period for which the employee is paid."

### B. Procedural History

Plaintiff filed this putative class action in the Superior Court for the County of Santa Clara on December 2, 2016. *See* Compl. Plaintiff's complaint alleges causes of action for (1) violation of California Labor Code §§ 226.7 and 512; (2) violation of California Labor Code § 226(a); (3)

Case No. 17-CV-00062-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

violation of the Private Attorney Generals Act, Cal. Lab. Code § 2698, *et seq.*; and (4) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq. Id.* On January 5, 2017, Wal-Mart removed the action to this Court alleging jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). *See* ECF No. 1. Then, on February 2, 2017, Wal-Mart filed an answer to Plaintiff's complaint. ECF No. 19.

On May 31, 2017, this Court "order[ed] the parties to prepare a neutral notice for putative class members to opt-out of having their names and contact information provided to Plaintiff's counsel. A third party administrator shall distribute the notice and accept opt-outs from the putative class at Plaintiff's expense." ECF No. 27, at 1. Then, on June 5, 2017, Plaintiff filed an "Administrative Motion Regarding *Belaire-West* Opt-Out Notice Procedure" requesting this Court to (1) order "that the putative class members be given 30 days to opt-out of having their contact information provided to Plaintiff's counsel"; and (2) order Wal-Mart to "provide all known email addresses and cell phones to the administrator in connection with the opt-out process and upon the expiration of the opt-out period, that this information be provided to Plaintiff's counsel." ECF No. 31 at 3. On June 21, 2017, this Court granted Plaintiff's first request and denied Plaintiff's second request. ECF No. 33. Accordingly, the Court ordered Wal-Mart to "provide the third-party administrator the known mailing addresses and last known home telephone numbers of all putative class members as defined by Plaintiff." *Id.* at 3. The Court also ordered the notices to be "mailed out within ten (10) days of the third-party administrator's receipt of the putative class members' mailing addresses and last known home phone numbers," and noted that putative class members "will have 30 calendar days from the date of mailing" of the notices to opt-out. *Id.* at 4.

On October 9, 2017, Plaintiff filed a motion for class certification, in addition to a sealing motion. *See* Mot; ECF No. 59. Plaintiff's motion for class certification seeks to certify the following proposed classes:

- **Meal Period Regular Rate Class:** All current and former California non-exempt retail store employees of [Wal-Mart] who received non-discretionary remuneration, including "MYSHARE INCT," and was paid any meal period premium payments

in the same period that the non-discretionary remuneration was earned, at any time between December 2, 2012, through the present.

- **OVERTIME/INCT Wage Statement Class:** All current and former California non-exempt employees of [Wal-Mart] who received "OVERTIME/INCT," at any time between December 2, 2015, through the present.

- **Final Wage Statement Class**: All former non-exempt employees who worked for [Wal-Mart] in the State of California and whose employment terminated (whether voluntarily or involuntarily) at any time from December 2, 2015 to the present.

These three classes correspond to the three "class-wide policies and practices engaged in by" Wal-Mart that Plaintiff seeks to challenge, as discussed above.

On October 26, 2017, the Court denied Plaintiff's sealing motion. ECF No. 65.

On November 20, 2017, Wal-Mart filed an opposition to Plaintiff's motion for class certification. *See* ECF No. 75 ("Opp."). On December 18, 2017, Plaintiff filed a reply. *See* ECF No. 79 ("Reply").

## II.    LEGAL STANDARD

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. Rule 23 does not set forth a mere pleading standard. To obtain class certification, Plaintiffs bear the burden of showing that they have met each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001). "A party seeking class certification must affirmatively demonstrate . . . compliance with the Rule[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Rule 23(a) provides that a district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). That is, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation to maintain a class action. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

7

If all four prerequisites of Rule 23(a) are satisfied, the Court must also find that Plaintiff "satisf[ies] through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1242 (2013). Rule 23(b) sets forth three general types of class actions. *See* Fed. R. Civ. P. 23(b)(1)-(3). Of these types, Plaintiff seeks certification under Rule 23(b)(3). The Court can certify a class under Rule 23(b)(3) if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and effectively adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim[.]" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Dukes*, 564 U.S. at 351); *see also* Mazza, 666 F.3d at 588 ("'Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23.'" (quoting *Zinser*, 253 F.3d at 1186)). This "rigorous" analysis applies to both Rule 23(a) and Rule 23(b). *Comcast*, 133 S. Ct. at 1432 (stating that Congress included "addition[al] . . . procedural safeguards for (b)(3) class members beyond those provided for (b)(1) or (b)(2) class members (e.g., an opportunity to opt out)" and that a court has a "duty to take a 'close look' at whether common questions predominate over individual ones").

Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at 1194–95. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195. If a court concludes that the moving party has met its burden of proof, then the court has broad discretion to certify the class. *Zinser*, 253 F.3d at 1186.

## III.   DISCUSSION

As set forth above, Plaintiff asserts that Wal-Mart's meal period premiums are inadequate under California Labor Code § 226.7(b) because Wal-Mart calculates these premiums without

regard to non-discretionary remuneration earned in the same pay period, and correspondingly seeks to certify a class of "[a]ll current and former California non-exempt retail store employees of [Wal-Mart] who received non-discretionary remuneration, including 'MYSHARE INCT,' and was paid any meal period premium payments in the same period that the non-discretionary remuneration was earned, at any time between December 2, 2012, through the present." Mot. at 3. Further, Plaintiff argues that Wal-Mart's failure to specify on its wage statements the hourly rates and number of hours worked for "OVERTIME/INCT"—an additional overtime wage payment—violates California Labor Code § 226(a)(9), and correspondingly seeks to certify a class of "[a]ll current and former California non-exempt employees of [Wal-Mart] who received 'OVERTIME/INCT,' at any time between December 2, 2015, through the present." *Id.* Finally, Plaintiff asserts that Wal-Mart's failure to include pay period start and end dates on its statements of final pay violates California Labor Code § 226(a)(6), and correspondingly seeks to certify a class of "[a]ll former non-exempt employees who worked for [Wal-Mart] in the State of California and whose employment terminated (whether voluntarily or involuntarily) at any time from December 2, 2015 to the present." *Id.* at 3–4.

Wal-Mart does not contest that Plaintiff has satisfied the requirements of Rule 23(a), as evidenced by the fact that Wal-Mart's brief in opposition does not address the issue. *See generally* Opp. The Court agrees that Plaintiff satisfies all of the Rule 23(a) requirements.

First, with regards to numerosity, Wal-Mart has identified (1) 51,824 employees "who were paid any meal period premiums and additional non-discretionary pay in the same period" during the relevant class period; (2) 75,791 employees "who received [OVERTIME/INCT] on their wage statements during the relevant [class] period"; and (3) 67,211 employees "who received a Statement of Final Pay from [Wal-Mart] during the relevant [class] period." Mot. at 22; *see* Stokes Dep. at 93; ECF No. 60-1, Ex. A.

Second, as to commonality, the resolution of each of Plaintiff's three claims turns on a question of law common to the corresponding class. Specifically, for the "Meal Period Regular Rate Class," every class member's claim depends in part on whether Wal-Mart's policy of

9

calculating meal period premiums without regard to non-discretionary remuneration violates California Labor Code § 226.7(c). Similarly, for the "OVERTIME/INCT Wage Statement Class," every class member's claim depends on whether Wal-Mart's policy of listing "OVERTIME/INCT" as a lump sum on wage statements without specifying the hourly rates and numbers of hours worked for "OVERTIME/INCT" violates California Labor Code § 226(a)(9). Finally, for the "Final Wage Statement Class," every class member's claim depends on whether Wal-Mart's policy of not listing pay period start and end dates on statements of final pay violates California Labor Code § 226(a)(6).

Third, with regards to typicality, Plaintiff has alleged that within each class, Plaintiff and all class members suffered the same injury. Specifically, Plaintiff asserts that (1) all class members in the "Meal Period Regular Rate Class" received inadequate meal period premiums; (2) all class members in the "OVERTIME/INCT Wage Statement Class" received wage statements that improperly failed to identify the hourly rates and numbers of hours worked for "OVERTIME/INCT"; and (3) all class members in the "Final Wage Statement Class" received statements of final pay that improperly failed to include pay period start and end dates.

Fourth, as to adequacy, there is no indication of any conflict of interest among the class, and Plaintiff's counsel are experienced in litigating wage and hour class actions. *See* Mot. at 30. Instead of contesting whether Plaintiff has satisfied the requirements of Rule 23(a), Wal-Mart argues in its opposition that Plaintiff falls short of the predominance and superiority requirements of Rule 23(b)(3). The Court addresses each requirement in turn.

**A. Predominance**

Under Rule 23(b)(3), plaintiffs must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry" is meant to "tes[t] whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The Ninth Circuit has held that "there is clear justification for handling the dispute on a representative rather than an individual basis" if "common questions

present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022. In ruling on a motion for class certification based on Rule 23(b)(3), a district court must conduct a rigorous analysis to determine whether the class representatives have satisfied both the predominance and superiority requirements. *See Zinser*, 253 F.3d at 1186. The predominance analysis focuses on "the legal or factual questions that qualify each class member's case as a genuine controversy" to determine "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623; *see also* Fed. R. Civ. P. 23(b)(3) (to certify a class, the court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members").

This Court has previously identified five principles that guide the Court's predominance inquiry:

> First, and most importantly, the critical question that this Court must answer is whether common questions predominate over individual questions. *Amgen*, 133 S. Ct. at 1191. In essence, this Court must determine whether common evidence and common methodology could be used to prove the elements of the underlying cause of action. *Id.* Second, in answering this question, this Court must conduct a "rigorous" analysis. *Comcast Corp.*, 133 S. Ct. at 1432. This analysis may overlap with the merits, but the inquiry cannot require Plaintiffs to prove elements of their substantive case at the class certification stage. *Amgen*, 133 S. Ct. at 1194. Third, this Court must determine not only the admissibility of expert evidence that forms the basis of the methodology that demonstrates whether common questions predominate. *Ellis*, 657 F.3d at 982. Rather, this Court must also determine whether that expert evidence is persuasive, which may require the Court to resolve methodological disputes. *Id.*; *see also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 9244, 255 (D.C. Cir. 2013). Fourth, the predominance inquiry is not a mechanical inquiry of "bean counting" to determine whether there are more individual questions than common questions. *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013). Instead, the inquiry contemplates a qualitative assessment, which includes a hard look at the soundness of statistical models. *Id.*; *In re Rail Freights Fuel Surcharge Antitrust Litig.*, 725 F.3d at 255. Fifth, Plaintiffs are not required to show that each element of the underlying cause of action is susceptible to classwide proof. *Amgen*, 133 S. Ct. at 1196. Rather, they need only show that common questions will predominate with respect to their class as a whole. *Id.*

*In re High-Tech Empl. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1186–87 (N.D. Cal. 2013). With

these principles in mind, the Court turns to Plaintiff's motion.

Plaintiff argues that class certification is appropriate for all three of Plaintiff's claims (and their corresponding classes) because each claim challenges a "class-wide polic[y] and practice[]." Mot. at 31. In contrast, Wal-Mart asserts that Plaintiff has failed to show predominance for any of Plaintiff's claims. The Court evaluates each of Plaintiff's claims in turn.

### 1. Meal Period Premium Claim

Plaintiff argues that class certification is appropriate for Plaintiff's "Meal Period Regular Rate Class" because "if this Court determines that the meal period premium must include additional non-discretionary remuneration consistent with the definition of regular rate [in California Labor Code § 226.7(c)], then adjudication of this claim will only require mathematical computations to calculate the amount of damages/penalties owed." Mot. at 31. In other words, Plaintiff asserts that (1) every class member's claim depends on the legal question of whether Wal-Mart's policy of calculating meal period premiums without regard to non-discretionary remuneration violates California Labor Code § 226.7(c); and (2) this common legal question predominates over all individualized inquiries regarding each class member's damages.

Wal-Mart asserts that Plaintiff's meal period premium claim falls short of the predominance requirement because even if Plaintiff is correct that Wal-Mart's method of calculating meal period premiums violates California Labor Code § 226.7(c), the Court must evaluate individualized evidence and engage in individualized inquiries to determine Wal-Mart's liability. *See* Opp. at 7–11. This is because (1) Wal-Mart cannot be in violation of § 226.7(c) for failing to pay the correct meal period premium to a class member unless Wal-Mart was legally obligated to pay a meal period premium to that class member in the first place; (2) Wal-Mart can only be legally obligated to pay a meal period premium to a class member if Wal-Mart actually "fail[ed] to provide [that class member] . . . a meal . . . period in accordance with a state law," Cal. Lab. Code § 226.7(c); and (3) although every class member received at least one meal period premium, it cannot be assumed that Wal-Mart was legally obligated to pay *every* meal period premium that it paid to the class members because the payment of a meal period premium to a

United States District Court
Northern District of California

class member does not necessarily mean that Wal-Mart actually failed to provide that class member a compliant meal period. *See id.* According to Wal-Mart's "Regional HR Director," Todd Stokes, Wal-Mart's policy is to pay a meal period premium to an employee whenever a Meal Exception Report indicates that the employee's meal was skipped, shortened, or delayed, regardless of "whether the associate voluntarily skipped, shortened, or took a late meal period, or whether the associate received a full meal period on time and without interruption but did not clock-in or clock-out for whatever reason." Stokes Decl. ¶ 5. Thus, Wal-Mart has introduced evidence indicating that in some instances, a class member may have received a meal period premium not because Wal-Mart was legally obligated to pay that meal period premium, but rather because the class member either forgot to clock-in and clock-out for his meal period or voluntarily skipped or shortened his meal period. In turn, because Plaintiff must establish that Wal-Mart was legally obligated to pay a meal period premium to a class member in order to establish a violation of § 226.7(c), and because it cannot be assumed that every meal period premium received by a class member was legally required, determination of Wal-Mart's liability would entail individualized inquiries into whether each meal period premium received by each class member was legally required—that is, prompted by an actual failure by Wal-Mart to provide a compliant meal period as opposed to a mere clocking error or voluntary meal period disruption by the class member.

Although Wal-Mart is correct that determining Wal-Mart's liability will necessitate individualized inquiries into whether each meal period premium received by each class member was legally required, Wal-Mart has not demonstrated that such individualized inquiries will predominate over the common legal question presented by Plaintiff's meal period premium claim. In affirming class certification in *Abdullah v. United States Security Associates, Inc.*, 731 F.3d 952 (9th Cir. 2013), the Ninth Circuit ruled on a similar predominance issue. The plaintiff in *Abdullah* brought a class action based on a claim that his employer had a policy of requiring employees to take "on-duty meal periods" and was "therefore liable for 'paying premium compensation for missed meal periods . . . pursuant to California Labor Code § 226.7.'" *Id.* at 955. In opposing

Case No. 17-CV-00062-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

class certification, the defendant in *Abdullah* argued that the predominance requirement was not met because determining the defendant's liability would entail individualized inquiries into whether each meal period taken by each class member was actually an "on-duty" meal period as opposed to an "off-duty" meal period. *See id.* at 966 ("Finally, USSA argues that individual issues will predominate because USSA's 'time records will not dispositively show which meal periods were off duty meal periods' for any given employee."). The Ninth Circuit rejected the defendant's argument by observing that "it would not be difficult to determine USSA's liability to individual plaintiffs" because "Defendant's records of each employee's clock-in and clock-out times, how much he was paid, and whether he was staffed at a single guard post[] can be used to extrapolate whether his meal break was on- or off-duty." *Id.* at 966–67.

Similarly, in the instant case, Wal-Mart's own records can be used to determine whether any particular meal period premium received by a class member was prompted by an actual failure by Wal-Mart to provide a compliant meal period (and therefore legally required). Specifically, at his deposition, Mr. Stokes testified that Wal-Mart investigates every reported "meal exception"— which means every meal period that appears to have been skipped, shortened, or late according to the Meal Exception Report—in order to determine and document why the exception happened.[1] Stokes Dep. at 44–45, 47–48. Mr. Stokes explained that Wal-Mart conducts these investigations in order to determine whether any Wal-Mart managers should be subject to disciplinary action for failing to provide compliant meal periods to employees, or whether an employee who forgot to "punch in" his meal period or who voluntarily missed, delayed, or shortened his meal period needs

---

[1] The Court notes that Plaintiff appears to conflate the Meal Exception Reports with the records that are generated by Wal-Mart's investigations into every reported meal exception. *See* Reply at 10 ("Moreover, there is no evidence from the *Sandoval* case that Walmart provided deposition testimony as to the meal exception reports and, in particular, that a supervisor investigates and documents the reasons for every meal period violation. In other words, the trial court in *Sandoval* failed to address the actual substance of the meal exception reports, or that the plaintiff in that case presented such evidence."). According to Mr. Stokes, these are two different things. Specifically, while the Meal Exception Reports will reflect a meal exception "irrespective of whether the associate voluntarily skipped, shortened, or took a late meal period, or whether the associate received a full meal period on time and without interruption but did not clock-in or clock-out for whatever reason," Stokes Decl. ¶ 6, Wal-Mart will then investigate every reported meal exception in order to determine and document why the exception happened. Stokes Dep. at 44–45, 47–48.

Case No. 17-CV-00062-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

to be "coached" to comply with Wal-Mart's policies. *Id.* at 47; *see* Stokes Decl. ¶ 7. Thus, it

appears that "it would not be difficult to determine [Wal-Mart's] liability to individual plaintiffs"

because Wal-Mart's records of these investigations—which, according to Mr. Stokes, document

why each meal exception happened—"can be used to extrapolate" whether each meal period

premium that was paid to a class member was prompted by an actual failure by Wal-Mart to

provide a compliant meal period. *Abdullah*, 731 F.3d at 966–67. Further, Wal-Mart does not

offer any reason to believe that these records cannot be relied upon to make these determinations.

Wal-Mart further argues that even if Plaintiff can show that the predominance requirement

is met for Plaintiff's meal period premium claim, that claim "is based on a flawed legal premise."

Opp. at 11. In other words, Wal-Mart argues that Plaintiff is wrong on the merits of his meal

period premium claim. *See id.* at 12 (arguing that "inclusion of non-discretionary incentive pay . .

. in the calculation of the 'regular rate of compensation' required by Cal. Labor Code § 226.7(b) . .

. is a marked departure from California law which is not supported by California legislative

decisions" and asserting that "no California appellate court, nor any federal court in California

(applying substantive California law) has reached the conclusion sought by the Plaintiff here"); *id.*

at 13–14 (stating that "there is a split among the California trial courts on this important issue");

*id.* at 14 ("Nevertheless, there has not been a California appellate court that has ruled on the issue

of whether non-discretionary incentive bonuses must be included in the 'regular rate of

compensation' for the purposes of meal premium pay. This Court should reject Plaintiff's request

to create new law and to take Cal. Labor Code § 226.7 to a place where the California Legislature

did not intend it to go."); *id.* at 17 ("Plaintiff's interpretation of Section 226.7 is not supported by

governing law."). However, as discussed above, "Rule 23 grants courts no license to engage in

free-ranging merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at 1194–95. Thus,

"[m]erits questions may be considered to the extent—but only to the extent—that they are relevant

to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195.

Wal-Mart's argument that Plaintiff asserts an incorrect interpretation of California Labor Code §

226.7(b) raises a merits question that is completely unrelated to whether any of the Rule 23

15

1    requirements have been met in the instant case. As a result, at this stage of the proceedings, the

2    Court cannot consider Wal-Mart's merits argument that Plaintiff's claim "is based on a flawed

3    legal premise." Opp. at 11.

4         **2. Overtime Wage Statement Claim**

5         Plaintiff argues that class certification is appropriate for Plaintiff's "OVERTIME/INCT

6    Wage Statement Class" because "if this Court finds that" Wal-Mart is currently in violation of

7    California Labor Code § 226(a)(9) and therefore "must specify the hourly rates and numbers of

8    hours worked for OVERTIME/INCT"—which, as discussed above, is an additional overtime

9    wage that is paid in order to ensure compliance with California Labor Code § 510(a)—"then

10   Plaintiff can proceed to trial on" the other elements of Plaintiff's claim and "use mathematical

11   computations for the amount of penalties based on the number of violative wage statements."

12   Mot. at 31.

13        Wal-Mart argues that Plaintiff cannot satisfy the predominance requirement on Plaintiff's

14   overtime wage statement claim because under California Labor Code § 226(e), Plaintiff can

15   establish injury stemming from Wal-Mart's alleged violation of California Labor Code § 226(a)(9)

16   only if Plaintiff demonstrates that Wal-Mart's employees "'cannot promptly and easily determine

17   from the wage statement[s] alone' . . . the applicable hourly rates in effect during the pay period

18   and the corresponding number of hours worked at each hourly rate." Opp. at 20–21 (quoting

19   *Lubin v. Wackenhut Corp.*, 5 Cal. App. 5th 926, 959 (2016) (quoting Cal. Lab. Code §

20   226(e)(2)(B)). Thus, Wal-Mart argues that "the focus would still be an associate by associate

21   basis to determine whether a particular associate could not 'promptly and easily determine'" the

22   hourly rates and number of hours worked from "his/her wage statements." *Id.* at 21. In other

23   words, Wal-Mart asserts that determining Wal-Mart's liability on this claim would require

24   individualized inquiries into whether each particular class member could "promptly and easily

25   determine" from his wage statements alone the hourly rates and number of hours he worked in a

26   given pay period.

27        Wal-Mart's argument is defeated by the text of California Labor Code § 226. Specifically,

28

16

§ 226(e)(2)(C) states that "'promptly and easily determine' means a *reasonable person* would be able to readily ascertain the information without reference to other documents or information." Cal. Lab. Code § 226(e)(2)(C) (emphasis added). Thus, contrary to Wal-Mart's assertion, determining Wal-Mart's liability on this claim would not require individualized inquiries into whether *each particular* class member could "promptly and easily determine" the hourly rates and number of hours he worked in a given pay period from his wage statements alone. Instead, in order to establish injury stemming from Wal-Mart's alleged violation of California Labor Code § 226(a)(9), Plaintiff need only demonstrate that "a reasonable person" would not be able to "readily ascertain" from Wal-Mart's wage statements the hourly rates and numbers of hours he worked in a given pay period. *See Stafford v. Brink's, Inc.*, 2015 WL 12699458, *15 (C.D. Cal. Dec. 1. 2015) ("[T]he standard . . . is whether '*a reasonable person* would be able to readily ascertain the information without reference to other documents or information,' and not whether *the plaintiff or each putative class member* would be able to readily ascertain the information without reference to other documents or information."). This objective "reasonable person" standard enables Plaintiff to demonstrate injury for Wal-Mart's alleged violation of § 226(a)(9) on a class-wide basis, and therefore fatally undermines Wal-Mart's argument that Plaintiff's overtime wage statement claim fails to meet Rule 23's predominance requirement. *See id.* ("This objective standard undermines Defendant's claim that Defendant 'is entitled to ask each one of the individuals at stake what their understanding of the wage statements was before a . . . liability determination is made against it' . . . . .").

In its opposition, Wal-Mart also argues that Plaintiff's overtime wage statement claim "is built on a faulty legal premise," and appears to assert a number of merits-based challenges to Plaintiff's claim. Opp. at 18; *see id.* ("Therefore, there can be no argument that Wal-Mart is improperly excluding MyShare incentive awards from an associate's overtime compensation because Wal-Mart is in clear compliance with 29 C.F.R. § 778.208 and with guidance from the U.S. Dept. of Labor."); *id.* at 20 ("Section 226(a)(9) does not require that the regular rate or changes in the regular rate be included on the wage statement. All that is required is that 'all

17

applicable hourly rates in effect during the pay period' be listed, and Wal-Mart includes the associate's applicable hourly rate on the wage statements."). Again, at the class certification stage, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 133 S. Ct. at 1195. Because Wal-Mart's merits arguments against Plaintiff's overtime wage statement claim are not relevant to determining whether Rule 23's predominance requirement is met for Plaintiff's overtime wage statement claim, the Court will not consider them at this stage of the proceedings.

### 3. Final Wage Statement Claim

Plaintiff argues that class certification is appropriate for Plaintiff's "Final Wage Statement Class" because "if this Court finds that" Wal-Mart's failure to "specify . . . pay period dates" on its statements of final pay violates California Labor Code § 226(a)(6), "then Plaintiff can proceed to trial on" the other elements of Plaintiff's claim and "use mathematical computations for the amount of penalties based on the number of violative wage statements." Mot. at 31.

Although Wal-Mart states in its opposition that Plaintiff's claim "cannot be certified because it . . . will require individualized proof to establish liability," in substance, Wal-Mart's argument amounts to a merits-based argument that "Plaintiff's claim . . . is based on a flawed legal premise." Opp. at 21. Specifically, Wal-Mart asserts the following:

> [Plaintiff's] claim fails to take into account the clear and unequivocal language of Cal. Lab. Code § 226(a), which states that an employer must provide detailed wage statements "semimonthly <u>or</u> at the time of each payment of wages." Wal-Mart fully complies with Section 226(a) because, although its Statement of Final Pay does not include the pay period, its on-cycle wage statements provide this information and are provided to associates semimonthly.

*Id.* (citation omitted). However, the legal question of whether Wal-Mart need only specify pay period dates on its semimonthly on-cycle wage statements to comply with California Labor Code § 226(a)(6) is a merits question that is not relevant to determining whether Plaintiff can satisfy Rule 23's predominance requirement for his final wage statement claim.

Wal-Mart appears to attempt to turn this merits question into a predominance issue by

Case No. 17-CV-00062-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

arguing that (1) "[b]ecause each associate's regular on-cycle wage statement provides all statutorily required information, Plaintiff can only establish liability if he can prove that he (or other class members) did not receive the final on-cycle wage statement"; and therefore (2) determining Wal-Mart's liability would require individualized inquiries into whether each individual class member received a final on-cycle wage statement. Opp. at 22. However, Plaintiff does not allege that Plaintiff or any class member failed to receive a final on-cycle wage statement, and does not dispute Wal-Mart's assertion that every "terminated Wal-Mart associate can access his/her final on-cycle wage statement on-line." *See* Reply at 5; Opp. at 22. Thus, it is clear that Plaintiff's claim does not in any way depend on whether Plaintiff or any other class members actually received a final on-cycle wage statement. Instead, Plaintiff's claim is that Wal-Mart's failure to specify pay period dates on its statements of final pay amounts to a violation of California Labor Code § 226(a)(6), regardless of whether any (or every) class member received a final on-cycle wage statement that specifies pay period dates. Wal-Mart's argument that § 226(a)(6) only requires Wal-Mart to specify pay period dates on its on-cycle wage statements may be a successful merits argument, but it has no bearing on whether Plaintiff has satisfied the requirements of Rule 23 for Plaintiff's final wage statement claim. As a result, the Court does not consider that argument at the class certification stage of the proceedings.

**B. Superiority**

Rule 23(b)(3) provides four factors that a court must consider in determining whether a class action is superior to other methods of adjudication. These factors are:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "'[T]he purpose of the superiority requirement is to assure that the class

19

is the most efficient and effective means of resolving the controversy.'" *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting 7AA Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure, § 1779 at 174 (3d ed. 2005)). "In cases in which plaintiffs seek to recover relatively small sums and the disparity between litigation costs and the recovery sought may render plaintiffs unable to proceed individually, 'class actions may permit the plaintiffs to pool claims which would be uneconomical to bring individually.'" *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 622 (C.D. Cal. 2015) (quoting *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir.), *cert. denied*, 534 U.S. 973 (2001).

In the instant case, Wal-Mart argues that Plaintiff has not shown that a class action is superior to other methods of adjudication because (1) each class member's potential recovery "could be in the multiple thousands of dollars, in addition to recovery of attorney fees as provided by statute"; and therefore (2) some class members may have strong interests "in individually controlling the prosecution or defense of separate actions." Opp. at 22; Fed. R. Civ. P. 23(b)(3)(A). However, courts "routinely find that the class action device is superior to other forms of adjudication" for "wage and hour cases under California law" that involve similar claims—and therefore similar amounts of damages—to those in the instant case. *Moore*, 311 F.R.D. at 622; *see Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361, 364–65 (C.D. Cal. 2009) (certifying a class of nearly 6,000 employees who alleged that their employer failed to pay minimum wages, provide proper meal and rest periods, provide accurate wage statements, or provide wages upon termination); *see also Arredondo v. Delano Farms Co.*, 2011 WL 1486612, *17 (E.D. Cal. 2011) ("Courts recognize that employer practices and policies with regard to wages and hours often have an impact on large numbers of workers in ways that are sufficiently similar to make class-based resolution appropriate and efficient."). Thus, even though Wal-Mart correctly observes that the Ninth Circuit has noted that individual damages exceeding $50,000 weigh against finding that a class action is superior to other methods of adjudication, *see Zinser*, 253 F.3d at 1190–91, the individual damages in this wage and hour case—even if they "could be in the multiple thousands

20

of dollars" for some class members, as Wal-Mart asserts—are substantially lower and therefore weigh in favor of finding that a class action is superior to other methods of adjudicating the claims in the instant case.

Wal-Mart also asserts that "Plaintiff cannot establish that class certification of his wage statement claims in this lawsuit is a superior method because there is another lawsuit pending in this federal district with a proposed class-wide settlement that would resolve Plaintiff's and the putative class' wage statement claims." Opp. at 22–23. Specifically, Wal-Mart points to *Smith v. Wal-Mart Stores, Inc.*, No. 16-CV-02832-JD (N.D. Cal.), and asserts that the impending class-wide settlement in *Smith* will resolve the claims in the instant case because the plaintiff in *Smith* "has alleged that she and other California employees of Wal-Mart were not provided with accurate wage statements in violation of California's Labor Code." Opp. at 23. However, the wage statement claims against Wal-Mart in *Smith* are different from the claims in the instant case. *Smith* is premised on Wal-Mart's alleged "knowing and intentional failure to furnish wage statements accurately showing 'the name and address of the legal entity that is the employer' as required by California Labor Code section 226(a)(8)." Complaint ¶ 19, *Smith v. Wal-Mart Stores, Inc.*, No. 16-CV-02832-JD (N.D. Cal. May 25, 2016), ECF No. 1-1. Thus, as Plaintiff correctly points out, "the release [in *Smith*] is expressly limited to only releasing claims for violation of [California] Labor Code Section 226(a)(8)." Reply at 13. Specifically, the release provision of the settlement agreement in *Smith*, which has been preliminarily approved by Judge James Donato, states the following:

> Upon entry of the Court's Order of Final Approval and judgment, it is understood and agreed by Participating Class Members that each Participating Class Member releases Defendants and the Releasees (as defined in paragraph 21) from any and all claims based upon Defendants' alleged failure to furnish and/or maintain wage statements accurately setting forth the name of the legal entity that is the employer in violation of [California] Labor Code § 226(a)(8), including any claims under [California] Labor Code § 226(e) or the California Labor Code Private Attorneys General Act of 2004, Labor Code §§ 2698 *et seq.*, based on any alleged violation of [California] Labor Code § 226(a)(8), whether known or unknown, suspected or unsuspected, that existed or came into existence between March 30, 2015 and February 1, 2016. The claims described above are referred to herein as the

Case No. 17-CV-00062-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

"Released Claims." The Released Claims do not include any [California] Labor Code claims or any PAGA claims other than claims based on any alleged violation of [California] Labor Code § 226(a)(8).

Proposed Class Action Settlement Agreement and Release ¶ 39, *Smith v. Wal-Mart Stores, Inc.*, No. 16-CV-02832-JD (N.D. Cal. Nov. 27, 2017), ECF No. 68-2 Ex. 1.

Based on this release provision, it is clear that the proposed class-wide settlement in *Smith* will not resolve any of the claims in the instant case. The release provision in *Smith* explicitly states that the only claims against Wal-Mart that will be released as a result of the settlement in *Smith* are those based on alleged violations of California Labor Code § 226(a)(8). Because the claims in the instant case are based on alleged violations of §§ 226(a)(6), 226(a)(9), and 226.7(c), none of them are covered by the release provision in *Smith*.

Accordingly, the Court finds that a class action is superior to other available methods of adjudicating the claims in the instant case.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for class certification. Plaintiff has satisfied the requirements of Rules 23(a) and 23(b)(3), and the Court CERTIFIES the following three Rule 23(b)(3) classes:

> **Meal Period Regular Rate Class:** All current and former California non-exempt retail store employees of [Wal-Mart] who received non-discretionary remuneration, including "MYSHARE INCT," and was paid any meal period premium payments in the same period that the non-discretionary remuneration was earned, at any time between December 2, 2012, through the present.

> **OVERTIME/INCT Wage Statement Class:** All current and former California non-exempt employees of [Wal-Mart] who received "OVERTIME/INCT," at any time between December 2, 2015, through the present.

> **Final Wage Statement Class**: All former non-exempt employees who worked for [Wal-Mart] in the State of California and whose employment terminated (whether voluntarily or involuntarily) at any time from December 2, 2015 to the present.

The Court APPOINTS Roderick Magadia as representative of the class. As Defendants do not challenge the adequacy of proposed class counsel, the Court also APPOINTS Larry Lee of Diversity Law Group, P.C., Dennis Hyun of Hyun Legal, APC, and William L. Marder of Polaris

22

Case No. 17-CV-00062-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

1    Law Group LLP as class counsel to represent the class.

2    **IT IS SO ORDERED.**

3

4    Dated: January 9, 2018

5                                          _Lucy H. Koh_
                                           _____
6                                          LUCY H. KOH
                                           United States District Judge

7

Case No. 17-CV-00062-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION