UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RODERICK MAGADIA, et al.<br><br>        Plaintiff,<br><br>    v.<br><br>WAL-MART ASSOCIATES, INC., et al.,<br><br>        Defendants. | Case No. 17-CV-00062-LHK<br><br>**ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 67 |

Plaintiff Roderick Magadia ("Plaintiff") brings the instant suit on behalf of himself and others similarly situated against Defendants Wal-Mart Stores, Inc. and Wal-Mart Associates, Inc. (collectively, "Wal-Mart"). Before the Court is Plaintiff's motion for partial summary judgment. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Plaintiff's motion for partial summary judgment.

I.      BACKGROUND

    A.      Factual Background

        Wal-Mart is a national retailer with locations throughout the United States. ECF No. 84. Plaintiff worked as a non-exempt employee in Wal-Mart's store in San Jose, California from June 17, 2008 to September 16, 2016. *Id.*

1

United States District Court<br>Northern District of California

When one of Wal-Mart's non-exempt California employees works overtime during a given pay period and earns "non-discretionary remuneration in the same pay period," Wal-Mart pays an employee an "additional overtime wage" that appears as "OVERTIME/INCT" on the employee's wage statement. ECF No. 67 ("Mot.") at 19; *see* ECF No. 67-1, Ex. C, Deposition of Todd Stokes ("Stokes Dep.") at 66–68, 69, 76–77. INCT is an abbreviation for incentive. *See* Stokes Dep. at 67. This ensures Wal-Mart is in compliance with California Labor Code § 510(a), which requires employers to factor in an employee's non-discretionary remuneration when calculating that employee's overtime pay. *See Marin v. Costco Wholesale Corp.*, 169 Cal. App. 4th 804, 807 (2008) ("Because the nondiscretionary bonus at issue here increases the regular rate of pay, employees who worked overtime during the bonus period and were paid at 1.5 times their hourly rate (unaugmented by the bonus) during that time are entitled to additional overtime pay once the bonus is awarded."). The OVERTIME/INCT item is a lump sum and does not list an hourly rate or specify hours worked. ECF No. 67-1 at 35 (one of Plaintiff's wage statements).

Wal-Mart employees like Plaintiff are paid biweekly. ECF No. 67-1, Ex. 1, Declaration of Todd Stokes ("Stokes Decl.") ¶ 9. Wal-Mart provides employees with biweekly wage statements that correspond to the particular pay period. *Id.* These wage statements list the start and end dates of the pay period. ECF No. 67-1 at 34 (one of Plaintiff's wage statements). When an employee is terminated, they receive a "Statement of Final Pay" that lists all wages being paid to the employee at the end of employment. Stokes Dep. at 82; Stokes Decl. ¶ 9. According to Todd Stokes, Wal-Mart's "Regional HR Director," as a matter of Wal-Mart's policy and practice, none of Wal-Mart's Statements of Final Pay from December 2015 onwards included pay period start or end dates. Stokes Dep. at 89–91. However, Wal-Mart also generates a final on-cycle wage statement and informs employees how to access it online during their exit interview. Stokes Decl. ¶ 9.

### B.    Procedural History

Plaintiff filed this putative class action in the Superior Court for the County of Santa Clara on December 2, 2016. *See* Compl. Plaintiff's complaint alleges causes of action for (1) violation of California Labor Code §§ 226.7 and 512; (2) violation of California Labor Code § 226(a); (3)

United States District Court
Northern District of California

1   violation of the Private Attorney Generals Act, Cal. Lab. Code § 2698, *et seq.*; and (4) violation of

2   California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq. Id.* On January 5,

3   2017, Wal-Mart removed the action to this Court alleging jurisdiction under the Class Action

4   Fairness Act, 28 U.S.C. § 1332(d)(2). *See* ECF No. 1. On February 2, 2017, Wal-Mart filed an

5   answer to Plaintiff's complaint. ECF No. 19.

6          On May 31, 2017, this Court "order[ed] the parties to prepare a neutral notice for putative

7   class members to opt-out of having their names and contact information provided to Plaintiff's

8   counsel. A third party administrator shall distribute the notice and accept opt-outs from the

9   putative class at Plaintiff's expense." ECF No. 27, at 1. Then, on June 5, 2017, Plaintiff filed an

10  "Administrative Motion Regarding *Belaire-West* Opt-Out Notice Procedure" requesting this Court

11  to (1) order "that the putative class members be given 30 days to opt-out of having their contact

12  information provided to Plaintiff's counsel"; and (2) order Wal-Mart to "provide all known email

13  addresses and cell phones to the administrator in connection with the opt-out process and upon the

14  expiration of the opt-out period, that this information be provided to Plaintiff's counsel." ECF No.

15  31 at 3.

16         On June 21, 2017, this Court granted Plaintiff's first request and denied Plaintiff's second

17  request. ECF No. 33. Accordingly, the Court ordered Wal-Mart to "provide the third-party

18  administrator the known mailing addresses and last known home telephone numbers of all putative

19  class members as defined by Plaintiff." *Id.* at 3. The Court also ordered the notices to be "mailed

20  out within ten (10) days of the third-party administrator's receipt of the putative class members'

21  mailing addresses and last known home phone numbers," and noted that putative class members

22  "will have 30 calendar days from the date of mailing" of the notices to opt-out. *Id.* at 4.

23         On January 9, 2018, the Court granted Plaintiff's motion for class certification. ECF No.

24  84. The Court certified three classes:

25         **Meal Period Regular Rate Class:** All current and former California non-exempt

26         retail store employees of Wal-Mart who received non-discretionary remuneration,
           including "MYSHARE INCT," and was paid any meal period premium payments

27

28
Case No. 17-CV-00062-LHK
ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

in the same period that the non-discretionary remuneration was earned, at any time between December 2, 2012, through the present.

**OVERTIME/INCT Wage Statement Class:** All current and former California non-exempt employees of Wal-Mart who received "OVERTIME/INCT," at any time between December 2, 2015, through the present.

**Final Wage Statement Class**: All former non-exempt employees who worked for Wal-Mart in the State of California and whose employment terminated (whether voluntarily or involuntarily) at any time from December 2, 2015 to the present.

*Id.* at 22.

On October 30, 2017, Plaintiff moved for partial summary judgment on Plaintiff's claim under California's he Private Attorneys General Act ("PAGA"). ECF No. 67. Plaintiff's motion for partial summary judgment was filed after Plaintiff moved for class certification, but before the Court issued its order granting class certification. On January 16, 2018, Wal-Mart filed its opposition. ECF No. 86 ("Opp."). On February 5, 2018, Plaintiff filed his reply. ECF No. 91 ("Reply").

On February 5, 2018, the Court denied Wal-Mart's motion to stay and struck disputed language from the class notice. ECF No. 92.

On March 12, 2018, the Court ordered Plaintiff to file a class notice update. ECF No. 97. Plaintiff filed the class notice update on March 14, 2018. ECF No. 98. On March 30, 2018, the Court ordered Plaintiff to file a second class notice update. ECF No. 106. On April 2, 2018, Plaintiff filed a second class notice update. ECF No. 107.

## II.   LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The party moving for summary judgment bears the initial burden of identifying those

Case No. 17-CV-00062-LHK
ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1    portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

2    issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party

3    meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own

4    affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial."

5    Fed. R. Civ. P. 56(e). If the nonmoving party fails to make this showing, "the moving party is

6    entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

7        At the summary judgment stage, the Court must view the evidence in the light most

8    favorable to the nonmoving party: if evidence produced by the moving party conflicts with

9    evidence produced by the nonmoving party, the judge must assume the truth of the evidence set

10   forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152,

11   1158 (9th Cir. 1999).

## III.     DISCUSSION

13       Plaintiff moves for summary judgment on Plaintiff's PAGA claim, and argues that Wal-

14   Mart has violated California Labor Code § 226(a)(6) and § 226(a)(9). Wal-Mart contests the

15   underlying § 226(a)(6) and § 226(a)(9) violations. Wal-Mart also advances the threshold

16   arguments that Plaintiff's summary judgment motion is barred by the one-way intervention rule,

17   that Plaintiff can only claim limited damages under California Labor Code § 226(e), and that

18   Plaintiff failed to administratively exhaust his PAGA claim before filing this action. The Court

19   first addresses Wal-Mart's threshold arguments, and then turns to the alleged § 226(a)(6) and §

20   226(a)(9) violations that undergird Plaintiff's PAGA claim. The Court finds that Wal-Mart's

21   threshold arguments are unpersuasive, and agrees with Plaintiff's § 226(a)(6) and § 226(a)(9)

22   arguments.

### A.     Wal-Mart's Threshold Arguments

#### 1.     One-Way Intervention Rule

25       Wal-Mart argues that the Court should refuse to rule on Plaintiff's motion for summary

26   judgment under the one-way intervention rule. This is unpersuasive.

27       Federal Rule of Civil Procedure 23(c)(2) seeks "to ensure that the plaintiff class receives

5

Case No. 17-CV-00062-LHK
ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1   notice of the action well *before* the merits of the case are adjudicated." *Schwarzschild v. Tse*, 69

2   F.3d 293, 295 (9th Cir. 1995). Rule 23(c)(2) does so "to prevent 'one-way intervention'—that is,

3   the intervention of a plaintiff in a class action after an adjudication favoring the class had taken

4   place." *Id.* Put otherwise, Rule 23(c)(2) "exists in part to protect defendants from unfair 'one-way

5   intervention,' where the members of a class not yet certified can wait for the court's ruling on

6   summary judgment and either opt in to a favorable ruling or avoid being bound by an unfavorable

7   one." *Villa v. San Francisco Forty-Niners, Ltd.*, 104 F. Supp. 3d 1017, 1021 (N.D. Cal. 2015). As

8   *Villa* explains, "[t]he doctrine is 'one-way' because a plaintiff would not be bound by a decision

9   that favors the defendant but could decide to benefit from a decision favoring the class." *Id.*

10  District courts have therefore denied putative lead plaintiffs' pre-certification motions for

11  summary judgment because "[p]laintiff's motion for partial summary judgment, if unsuccessful,

12  would not prevent putative class members from filing their own suits with hope for a more

13  favorable ruling." *Id.*; *see, e.g., Khasin v. Hershey Co.*, 2014 WL 1779805, at *2–3 (N.D. Cal.

14  2014); *Corns v. Laborers Int'l Union of N. Am.*, 2014 WL 1319363, at *4 (N.D. Cal. 2014).

15      The problem for Wal-Mart is that the one-way intervention rule does not apply here. The

16  Court granted Plaintiff's motion for class certification on January 9, 2018. ECF No. 84. On March

17  5, 2018, Rust Consulting (acting on Plaintiff's behalf) mailed the first round of the class opt-out

18  notices to 89,750 class members. ECF No. 107 at 3. The notices set an opt-out deadline of April

19  13, 2018, 45 days from the date of mailing. *Id.* On March 26, 2018, Rust Consulting mailed the

20  second round of class opt-out notices to 81,907 additional class members. *Id.* The notices set an

21  opt-out deadline of May 10, 2018, 45 days from the date of mailing. *Id.* It is now after May 10,

22  2018, which means that the deadline for class members to opt out has passed. Consequently,

23  because the class has already been certified, and class members have already been notified and

24  decided whether or not to participate in this action, the Court's summary judgment order binds

25  both Wal-Mart *and* the class—there is no longer any danger of one-way intervention. *See*

26  *Schwarzschild*, 69 F.3d at 296 ("[D]istrict courts generally do not grant summary judgment on the

27  merits of a class action until the class has been properly certified and notified.").

28

6

There is another independent reason that the one-way intervention rule does not prevent deciding Plaintiff's motion for partial summary judgment. Plaintiff has not moved for summary judgment on his class claims, but rather has moved for summary judgment on his PAGA claim. Mot. at 1 ("Plaintiff Roderick Magadia ('Plaintiff') now seeks a ruling from the Court granting partial summary judgment on Plaintiff's Fourth Cause of Action for Violation of the Private Attorney General's Act"). Unlike class actions where a lead plaintiff represents a class of similarly situated individuals, a plaintiff suing under PAGA seeks civil penalties "as the proxy or agent of [California's] labor law enforcement agencies." *Arias v. Superior Court*, 209 P.3d 923, 933 (Cal. 2009). Because the plaintiff is standing in the shoes of a government agency instead of a class, nearly "every court to reach the issue in this district, ha[s] found that representative PAGA claims need not be certified under Rule 23 to proceed." *Gallardo v. AT & T Mobility, LLC*, 937 F. Supp. 2d 1128, 1137 (N.D. Cal. 2013); *Kuang Xuan Liu v. Win Woo Trading, LLC*, 2017 WL 4283947, at *3 (N.D. Cal. 2017) (noting same); *see Willner v. Manpower Inc.*, 35 F. Supp. 3d 1116, 1135–36 (N.D. Cal. 2014) (granting plaintiff's motion for summary judgment on PAGA claim in suit also bringing class claims and noting PAGA claims not subject to Rule 23); *see also Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1123 (9th Cir. 2014) (finding PAGA suit does not trigger Class Action Fairness Act jurisdiction because "a PAGA suit is fundamentally different than a class action." (citation omitted)).

### 2. California Labor Code § 226(e) Damages

Wal-Mart next contends that Plaintiff can only receive one award of damages under California Labor Code § 226(e) for each wage statement that violates California Labor Code § 226(a), even if the wage statement violates § 226(a) in multiple respects. Wal-Mart's argument is not relevant at this point.

Plaintiff has only moved for summary judgment on Plaintiff's PAGA claim. "PAGA plaintiffs are private attorneys general who, stepping into the shoes of the LWDA, bring claims on behalf of the state agency." *Baumann*, 747 F.3d at 1123. In line with this premise, a PAGA plaintiff recovers civil penalties on behalf of the California Labor Workforce Development

7

United States District Court
Northern District of California

Agency ("LWDA"), instead of compensatory damages for injury suffered by the plaintiff. *Id.* The LWDA keeps 75 percent of any civil penalties imposed on a defendant for violating the underlying statute—here, § 226(a)—"leaving the remaining 25 percent for the 'aggrieved employees.'" *Arias*, 209 P.3d at 930 (quoting Cal. Lab. Code. § 2699(i)).[1]

The distinction between a PAGA claim and a traditional damages claim disposes of Wal-Mart's § 226(e) argument. If Plaintiff had moved for summary judgment based on Plaintiff's claim for damages under § 226(a), Plaintiff would need to satisfy § 226(e)(1)'s requirement that employees seeking damages suffer an "injury as a result of a knowing and intentional failure by an employer to comply with … [§ 226(a)]." Cal. Lab. Code § 226(e). However, because Plaintiff's PAGA claim only seeks penalties on the LWDA's behalf, Plaintiff "need only prove a violation of Section 226(a), and need not establish a Section 226(e) injury." *McKenzie v. Fed. Exp. Corp.*, 765 F. Supp. 2d 1222, 1232 (C.D. Cal. 2011); *Willner*, 35 F. Supp. 3d at 1136 ("Willner is not required to establish injury in order to obtain judgment on this [PAGA] claim. All she needs to establish is a violation of section 226(a)"); *Lopez v. Friant & Assocs., LLC*, 224 Cal. Rptr. 3d 1, 11 (Cal. Ct. App. 2017), *review denied* (Jan. 10, 2018) ("[W]e hold a plaintiff seeking civil penalties under PAGA for a violation of section 226(a) does not have to satisfy the 'injury' and 'knowing and intentional' requirements of section 226(e)(1)."). Consequently, although Wal-Mart's § 226(e) argument is relevant to deciding Plaintiff's claim for damages under § 226(a), it has no bearing on Plaintiff's PAGA claim.

### 3. Administrative Exhaustion

Wal-Mart's final threshold argument is that Plaintiff's PAGA claim is barred because Plaintiff did not fully exhaust his administrative remedies before initiating this action. The Court agrees that Plaintiff did not exhaust his administrative remedies before filing suit, but finds this

---

[1] In PAGA actions where the underlying statute does not specify a civil penalty, courts award the catchall penalties set forth in California Labor Code § 2699(f). *See McKenzie v. Fed. Exp. Corp.*, 765 F. Supp. 2d 1222, 1231–32 (C.D. Cal. 2011). Because § 226 does not provide a penalty, Plaintiff can recover penalties under § 2699(f) for Wal-Mart's violations of § 226(a). *Id.*; *see Cabardo v. Patacsil*, 248 F. Supp. 3d 1002, 1013–14 (E.D. Cal. 2017) (noting same).

1    does not bar Plaintiff's PAGA claim.

2          Before a plaintiff can pursue a PAGA claim the plaintiff must exhaust the administrative

3    remedies specified in California Labor Code § 2699.3. In particular, § 2699.3 requires that

4    prospective PAGA plaintiffs "give written notice by online filing with the Labor and Workforce

5    Development Agency ["LWDA"] and by certified mail to the employer of the specific provisions

6    of this code alleged to have been violated, including the facts and theories to support the alleged

7    violation." *Id.* § 2699.3(a)(1)(A). The LWDA has 60 days from that point to tell the prospective

8    PAGA plaintiff whether or not it intends to investigate the alleged violation. *Id.* § 2699.3(a)(2)(A).

9    The prospective PAGA plaintiff can file the PAGA suit after (1) receiving notice from the LWDA

10   that the agency will not investigate or, (2) if the LWDA does not provide notice, the prospective

11   plaintiff can file suit 65 days after the postmark date of the notice Plaintiff initially provided to the

12   LWDA and the employer. *Id.*

13         Plaintiff provided notice to Wal-Mart and the LWDA on October 4, 2016. ECF No. 67-1,

14   Declaration of Larry W. Lee ("Lee Decl.") ¶ 2. LWDA has never provided Plaintiff with notice

15   that the agency intends to investigate. Reply at 5. Plaintiff was therefore permitted to file this

16   action 65 days after providing notice on October 4, 2016. Sixty-five days from October 4, 2016 is

17   December 8, 2016. Plaintiff filed the instant lawsuit on December 2, 2016. ECF No. 1 at 1 (copy

18   of state court complaint filed on December 2, 2016). Plaintiff's suit was therefore six days too

19   early. Reply at 4.

20         Plaintiff does not dispute that Plaintiff's suit was premature. Instead, Plaintiff argues that

21   the Court should excuse the premature filing because the LWDA has not acted on Plaintiff's

22   notice in the 17 months since Plaintiff originally provided it. In other words, Plaintiff argues the

23   Court should excuse his failure to exhaust his administrative remedies before bringing this suit

24   because administrative exhaustion occurred after the suit began.

25         The Court agrees and adopts the approach used in *Bradescu v. Hillstone Restaurant Group,*

26   *Inc.*, 2014 WL 5312546 (C.D. Cal. 2014). In *Bradescu*, the defendant moved for summary

27   judgment arguing, *inter alia*, that plaintiff had failed to administratively exhaust her PAGA claim

28
     Case No. 17-CV-00062-LHK
     ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

because she filed suit just one day after sending notice to the LWDA. *Id.* *10. The district court disagreed. The district court noted that the defendant "has not directed the Court to a single case where the premature filing of a complaint in court—premature only because the plaintiff had not waited the requisite time period under section 2699.3(a)(2)(A) after serving notice under section 2699.3(a)(1)—led to the dismissal of the PAGA claim." *Id.* Moreover, *Bradescu* found it was unnecessary to require plaintiff to file an amended complaint at that late stage of the proceedings because "at this point in time, well more than [65] … days have elapsed since Plaintiff issued her notice pursuant to section 2699.3(a)(1) … and there is no indication in the record that the LWDA has decided to step forward in any manner in connection with Plaintiff's claims."[2] *Id* (internal citation omitted).

The Court will do the same here. It has now been well over a year since Plaintiff submitted notice to the LWDA, and no action has been forthcoming. Thus, "the Court sees little reason to punish [Plaintiff] for acting too quickly once [he] had taken the requisite step of providing notice under section 2699.3(a)(1)." *Id.*; *see Donnelly v. Sky Chefs, Inc.*, 2016 WL 9083158, at *2 (N.D. Cal. 2016) ("California courts have not held that the failure to exhaust administrative remedies before initiating PAGA actions must led [*sic*] to dismissal of the PAGA claim."); *see Harris v. Vector Mktg. Corp.*, 2010 WL 56179, at *2 (N.D. Cal. 2010) ("The bottom line is that Ms. Harris has now sent a PAGA notice and furthermore has received a response from the state agency. … [T]he failure to exhaust … has now, in essence, been cured.").

In sum, the Court finds that Plaintiff's failure to complete the 65 day exhaustion waiting period before filing Plaintiff's PAGA claim does not bar adjudicating Plaintiff's PAGA claim because has exhaustion subsequently occurred.

**B.    Plaintiff's Substantive Claims**

As noted above, PAGA plaintiffs stand in the shoes of the LWDA and pursue penalties for

---

[2] At the time *Bradescu* was decided, the mandatory waiting period in California Labor Code § 2699.3(a)(1) was 33 days instead of the current 65 days. Cal. Lab. Code § 2699.3(a)(1) (2004) (prior to 2015 amendment). Thus, while *Bradescu* referred to 33 days instead of 65 days, the substantive analysis is identical.

Case No. 17-CV-00062-LHK
ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

defendants' violations of the California Labor Code. Plaintiff's motion for partial summary judgment on Plaintiff's PAGA claim therefore relies on two alleged violations of the California Labor Code. First, Plaintiff argues that Wal-Mart violated § 226(a)(9) by failing to include employees' overtime hourly rates and hours worked in wage statements. Second, Plaintiff argues that Wal-Mart violated § 226(a)(6) by failing to include the start and end dates of the pay period in employees' Statements of Final Pay. The Court agrees with Plaintiff on both counts.

### 1.  California Labor Code § 226(a)(9)

California Labor Code § 226(a) provides that "[a]n employer ... at the time of each payment of wages, shall furnish to his or her employee ... an accurate itemized statement in writing" that includes "(9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee ... ." Cal. Lab. Code § 226(a)(9). Plaintiff argues Wal-Mart's wage statements do not comply with this requirement.

Wal-Mart employees who receive a MyShare incentive award at the end of a quarter and also worked overtime during that quarter are given additional overtime pay based on having received the incentive. Stokes Dep. at 69–70 (noting the MyShare incentive was "added into the total wages that the associate received over the course of a quarter, and it was calculated out to overtime, so they were the beneficiary of the right amount of overtime."). The additional overtime pay appears retroactively on the employee's wage statement as "OVERTIME/INCT". Stokes Dep. at 67–68, 71; ECF No. 67-1 at 35 (one of Plaintiff's wage statements). The amount of additional overtime pay is determined by a formula that accounts for the number of hours the employee worked and the employee's overtime rate. Stokes Dep. at 67–68, 69–70. The OVERTIME/INCT item appears on the employee's wage statement as a lump sum and does not specify how many hours the employee worked or the employee's hourly rate. ECF No. 67-1 at 35.

A wage statement complies with § 226(a) if it includes the information § 226(a) requires—here, rates and hours pursuant to § 226(a)(9). Courts also hold that a wage statement does not violate § 226(a) if "a plaintiff employee can ascertain the required information by performing simple math, using figures on the face of the wage statement." *Hernandez v. BCI Coca–Cola*

Case No. 17-CV-00062-LHK
ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1   *Bottling Co.*, 554 Fed. App'x 661, 662 (9th Cir. 2014).[3] For example, if a wage statement does not

2   list a plaintiff's hourly rate it may still comply with § 226(a)(9) if it includes hours worked and

3   total pay because the employee can divide total pay by hours worked to determine the hourly rate.

4   *Ontiveros v. Safelite Fulfillment, Inc.*, 231 F. Supp. 3d 531, 540–41 (C.D. Cal. 2017). Under

5   California law, an employee's overtime rate is 1.5 times the employee's hourly rate. *McKenzie*,

6   765 F. Supp. 2d at 1231.

7         Plaintiff's wage statements do not include the overtime rate that § 226(a)(9) requires.

8   Plaintiff's wage statements include an "OVERTIME EARN" item that lists rate of pay, hours

9   worked, and earnings. ECF No. 67-1 at 35. On the other hand, Plaintiff's wage statements also

10  include an OVERTIME/INCT item that lists earnings, but does not include a rate of pay or hours

11  worked. *Id.* Todd Stokes, Wal-Mart's Regional Human Resources Director and Rule 30(b)(6)

12  witness, testified at his deposition that OVERTIME/INCT is retroactive overtime pay. Stokes Dep.

13  at 67 ("[OVERTIME/INCT] is not an incentive, this is additional overtime pay that was granted

14  because the incentive was received by the associate."). Despite this, the OVERTIME/INCT item

15  does not list a rate of overtime pay. Wal-Mart's wage statement therefore does not comply with

16  the text of § 226(a)(9) because it does not list an hourly rate for the OVERTIME/INCT item and

17  therefore does not list "all applicable hourly rates."

18        Nor do the wage statements allow employees to determine the overtime rate through

19  application of simple math. Absent any indication as to what OVERTIME/INCT is, employees

20  have no idea how it relates to regular overtime pay and how to use the OVERTIME/INCT sum to

21  calculate the new overtime rate. Underscoring the point, Todd Stokes, Wal-Mart's Regional

22  Human Resources Director and Rule 30(b)(6) witness, testified that the formula used to determine

23

24  [3] These holdings are premised on the idea that a plaintiff has not suffered an injury under § 226(e) if the plaintiff has simply been forced to do basic math. *See Reinhardt v. Gemini Motor Transp.*,

25  879 F. Supp. 2d 1138, 1142 (E.D. Cal. 2012) ("[I]f a claimed injury is based merely upon the plaintiff having to perform 'simple math' with the information already in his possession, then

26  there is no cognizable injury."). That suggests that even if Plaintiff could calculate the information missing from Plaintiff's wage statement via simple arithmetic, Plaintiff still prevails on the PAGA

27  claim because, as noted above, PAGA does not require a § 226(e) injury. Even so, the Court will evaluate Plaintiff's § 226(a) argument under both theories in the interest of thoroughness.

28  
Case No. 17-CV-00062-LHK
ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

the OVERTIME/INCT sum did not appear on wage statements because it was "too complex." Stokes Dep. at 69, 77. Indeed, there is no guarantee that an employee would think to apply a calculation at all. Nor can Wal-Mart fall back on the usual rule that overtime is simply 1.5 times base pay—that calculation is no longer simple math when the wage statement lists two different overtime payments and only provides a rate for one of them. *McKenzie*, 765 F. Supp. 2d at 1231 (finding § 226(a)(9) violation because "FedEx's wage statement does not provide an accurate overtime rate because instead of multiplying the regular rate of pay by one and one-half, the pay stubs provide two overtime rate categories and they each provide corresponding rates that are either the same or half of the regular rate."). The bottom line is that math cannot be simple if the employee does not know what math to apply. The OVERTIME/INCT item therefore does not satisfy § 226(a)(9).

Wal-Mart contends that this is not dispositive because § 226(a)(9) does not apply to the OVERTIME/INCT item. Specifically, Wal-Mart argues that because a MyShare award is not based on an hourly rate or hours worked, the OVERTIME/INCT that derives from the MyShare award is not based on an hourly rate or hours worked. It follows that the OVERTIME/INCT item is not subject to § 226(a)(9) because the statute requires wage statements to include "hourly rates" and "hours worked."

Wal-Mart's premise is flawed. Wal-Mart's designated Rule 30(b)(6) witness admitted that OVERTIME/INCT is overtime pay. Indeed, the reason the OVERTIME/INCT item exists is to account for the increase in an employee's overtime pay that stems from an employee's receipt of an incentive award. Stokes Dep. at 67–68 ("If an associate received an incentive at the end of the quarter and worked overtime during that quarter, that incentive is, then, calculated into their overtime rate and given to them on that line item, OVERTIME/INCENTIVE."); *id.* at 69–70 ("[T]he fact that … [an employee] received a MyShare Incentive, it was then added into the total wages that the associate received over the course of a quarter, and it was calculated out to overtime, so they were the beneficiary of the right amount of overtime."). Wal-Mart cites no authority holding that overtime ceases to be based on rates and hours simply because the overtime

Case No. 17-CV-00062-LHK
ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1  derives from a nondiscretionary incentive award.

2      Moreover, the cases Wal-Mart cites are readily distinguishable. *Apodaca v. Costco*

3  *Wholesale Corp.*, 675 Fed. App'x 663 (9th Cir. 2017); *Morgan v. United Retail Inc.*, 113 Cal.

4  Rptr. 3d 10 (Cal. Ct. App. 2010). *Apodaca* is not on point because it found the wage statement

5  item at issue there was vacation time, not overtime. 675 Fed. App'x at 665. The Ninth Circuit

6  found that vacation time was not subject to § 226(a)(9) because it did not qualify as "hours

7  worked," but nowhere suggested that overtime was not "hours worked."

8      *Morgan* is no better, as it found in a footnote that meal periods and bonus payments were

9  not "hours worked" but did not suggest that overtime pay was not hours worked. *Morgan*, 113

10 Cal. Rptr. at 18 n.8.

11     Wal-Mart's final argument is that it has not violated § 226(a)(9) because it "substantially

12 complied" with the statute. It is unclear from Wal-Mart's brief how distinct this argument is from

13 Wal-Mart's theory that it complied with § 226(a)(9) because employees can determine the hourly

14 rate through simple math. Yet in any case, Wal-Mart's argument on this issue fails because the

15 two cases on which Wal-Mart relies both found that the employees there could calculate the

16 information absent from the wage statement via basic arithmetic, which is not the case here.

17 *Hernandez v. BCI Coca-Cola Bottling Co.*, 2012 WL 12272348, at *8 (C.D. Cal. 2012), *aff'd*, 554

18 Fed. App'x 661 (9th Cir. 2014); *Morgan*, 113 Cal. Rptr. 3d at 17.

19     In sum, the Court finds that Wal-Mart's wage statements violate § 226(a)(9) because they

20 do not list all applicable hourly rates and an employee would not be able to determine those rates

21 through the application of simple math.

22                  **2.      California Labor Code § 226(a)(6)**

23     Plaintiff also claims that Wal-Mart has violated California Labor Code § 226(a)'s

24 requirement that wage statements list "(6) the inclusive dates of the period for which the employee

25 is paid".

26     Wal-Mart pays employees on a biweekly basis. Stokes Decl. ¶ 9. In line with this practice,

27 Wal-Mart provides employees with biweekly wage statements corresponding to the pay period. *Id.*

28

14

United States District Court
Northern District of California

United States District Court
Northern District of California

1  These wage statements list the start and end dates of the pay period. *See, e.g.,* ECF No. 67-1 at 34

2  (one of Plaintiff's wage statements for "Pay Period Beginning Date: 12-26-2015 through Ending

3  Date: 01-08-2016"). When an employee is terminated, Wal-Mart pays all wages earned through

4  the date of termination by check. Stokes Decl. ¶ 9. On the date of termination, the employee also

5  receives a "Statement of Final Pay" that lists the wages being paid to the employee at the end of

6  employment. Stokes Dep. at 82; Stokes Decl. ¶ 9. These Statements of Final Pay do not specify

7  pay period start or end dates. Stokes Dep. at 89–91; ECF No. 67-1 at 36 (Statement of Final Pay

8  for Plaintiff's last day on September 12, 2016). However, Wal-Mart also generates a final wage

9  statement at the close of the normal biweekly pay period that does contain pay period start and end

10  dates. Stokes Decl. ¶ 9; ECF No. 86-2 (Plaintiff's final wage statement for biweekly pay period

11  from September 3, 2016 to September 16, 2016). Wal-Mart tells a terminated employee how to

12  access this final wage statement during the employee's exit interview. *Id.*

13        Wal-Mart does not dispute that the Statement of Final Pay omits the start and end dates for

14  the pay period. Wal-Mart's position instead is that a terminated employee's subsequent receipt of

15  a final wage statement—which contains the pay period dates—cures the dates' absence from the

16  Statement of Final Pay.

17        This argument is unpersuasive. Wal-Mart points to *Derum v. Saks & Co.*, 95 F. Supp. 3d

18  1221 (S.D. Cal. 2015). *Derum* considered whether an employer complied with § 226(a)(6) where

19  the employer gave employees a pay stub that lacked a pay period start date, but also at the same

20  time provided employees with an electronic wage statement that had the start date and was

21  therefore compliant. *Id.* at 1225. Wal-Mart's reliance on *Derum* is tenuous from the start because

22  the district court there denied the employer summary judgment on the plaintiff's § 226(a)(6)

23  claim. *Id.* at 1228. However, the district court did find that, in some cases, providing a compliant

24  wage statement can cure providing a noncompliant pay stub. *Id.* at 1225–28.

25        However, *Derum* is inapplicable here because both the compliant and noncompliant wage

26  documents in that case were provided when the employee received their wages. By contrast, Wal-

27  Mart here provides the final on-cycle pay statement up to two weeks after the employee receives

28

15

1   their check and Statement of Final Pay. That matters because *Derum*'s finding that a compliant

2   wage statement could cure a noncompliant one was premised on the compliant wage statement

3   being provided at the same time that the employee's wages were paid. *See id.* at 1226. The reason

4   is straightforward. Section 226(a) requires that a compliant statement be furnished "*at the time of*

5   *each payment of wages.*" *Id.* (quoting § 226(a)(6)) (emphasis in original). Consequently, a wage

6   statement can only be compliant—and thus can only cure a noncompliant wage statement—if it

7   was provided when wages were paid. *Id.* Wal-Mart's compliant wage statement was not provided

8   when the wages at issue were paid, which means it cannot cure the noncompliant Statement of

9   Final Pay.

10          On the other hand, Plaintiff's leading case lends strong support to Plaintiff's claim that the

11   Statement of Final Pay violated § 226(a)(6). *McKenzie*, 765 F. Supp. 2d 1222. In *McKenzie*, the

12   defendant employer argued that wage statements that did not list the pay period start date still

13   complied with § 226(a)(6) because an employee could determine the start date by referring to

14   other documents the employer had provided. *Id.* at 1229–31. *McKenzie* rejected this argument,

15   finding that a wage statement cannot comply with § 226(a) if an employee must refer to outside

16   documents to calculate the missing information. *Id.* at 1230 (finding § 226(a)(6) violation

17   "because the beginning dates for the pay period were not listed in FedEx's wage statements …

18   [meaning] employees had to refer to outside sources, *i.e.*, a calendar, the 'People Manual,' or a

19   work schedule, to verify which days of work were included in their paychecks."); *see also id.*

20   (noting this holding is supported by interpretive guidance from California's Department of

21   Industrial Relations, Division of Labor Standards Enforcement). *McKenzie* further weakens Wal-

22   Mart's argument that the Statement of Final Pay's noncompliance is excused by the final wage

23   statement because *McKenzie* explicitly rejected the argument that a wage statement can comply

24   with § 226(a)(6) if the employee has to refer to outside documents to fill in missing information.

25          In sum, the Court finds that the Statement of Final pay violates § 226(a)(6) because it does

26   not include the pay period start and end dates.

27   **IV.    CONCLUSION**

28

Case No. 17-CV-00062-LHK
ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

For the foregoing reasons, the Court GRANTS Plaintiff's motion for summary judgment on Plaintiff's PAGA claim based Wal-Mart's wage statements' violation of California Labor Code §§ 226(a)(6) and 226(a)(9).

**IT IS SO ORDERED.**

Dated: May 11, 2018

_____
LUCY H. KOH
United States District Judge

17

Case No. 17-CV-00062-LHK
ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT