Aaron T. Winn (SBN 229763)
Jennifer A. Kearns (SBN 125588)
**DUANE MORRIS LLP**
750 B Street, Suite 2900
San Diego, CA 92101-4681
Telephone:   619.744.2200
E-mail:  atwinn@duanemorris.com
E-mail:  jkearns@duanemorris.com

Allegra A. Jones (SBN 236518)
**DUANE MORRIS LLP**
Spear Tower, One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
Telephone: 415.957.3000
E-mail:  aajones@duanemorris.com

Attorneys for Defendants
Wal-Mart Associates, Inc. & Wal-Mart Stores, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| RODERICK MAGADIA, individually and on behalf of all those similarly situated,<br><br>            Plaintiff,<br><br>     v.<br><br>WAL-MART ASSOCIATES, INC., a Delaware corporation; WAL-MART STORES, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>            Defendants. | Case No.: 5:17-cv-00062-LHK<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR DECERTIFICATION OF THE MEAL PERIOD CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          December 20, 2018<br>Time:          1:30 p.m.<br>Courtroom:  8, 4th Floor |

1    TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

2        PLEASE TAKE NOTICE that on December 20, 2018 at 1:30 p.m., before the

3    Honorable Lucy H. Koh, District Judge in Courtroom 8 – 4th Floor of the United States

4    District Court for the Northern District of California, San Jose Division, located at 280

5    S. First Street, San Jose, California 95113, defendants Wal-Mart Associates, Inc. and

6    Wal-Mart Stores, Inc. will and hereby do move this Court for an Order decertifying the

7    Meal Period Class.

8        The motion is based upon the accompanying Memorandum of Points and

9    Authorities, the declarations and exhibits accompanying this motion, the pleadings,

10   orders, and other records on file with the Court, and any other matters that the parties

11   may submit or the Court may deem appropriate.

12

13   Dated:  July 26, 2018                    **DUANE MORRIS** LLP

14

15                                            By:/s/Aaron T. Winn
                                                 Aaron T. Winn
16                                               Jennifer A. Kearns
                                                 Allegra A. Jones
17                                               Attorneys for Defendants
                                                 Wal-Mart Associates, Inc. and
18                                               Wal-Mart Stores, Inc.

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND .........................................2

    A.    The Court certifies the Meal Period Premium Class............................. 2

    B.    Post-certification discovery.................................................... 3

          1.    Walmart's 30(b)(6) witness explains that the meal period investigation process does not confirm whether a meal period premium was legally owed.................................3

          2.    The 50-store sampling of meal period investigation worksheets. ...................................................6

ARGUMENT.......................................................................................................6

    A.    When assessing a motion for decertification, the burden remains on the plaintiff to satisfy the requirements of Rule 23. ............................. 6

    B.    Determining who was legally entitled to a meal period premium will require intensive individualized inquiries that will swamp the proceedings.................................................................. 7

          1.    Walmart's meal period investigation process does not attempt to resolve any discrepancies regarding an employee's allegations or otherwise confirm (or reject) the associate's explanation for the exception.........................................8

          2.    Meal period investigation data cannot serve as the basis for making any reliable determination regarding who was legally entitled to a meal period premium. ...................................9

          3.    Because Walmart's documents cannot easily identify who was legally entitled to a meal period premium, this case is no different than other meal break cases in which class certification is improper...............................................13

CONCLUSION .................................................................................................14

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR DECERTIFICATION

# TABLE OF AUTHORITIES

**Page No(s).**

**Federal Cases**

*Brum v. MarketSource, Inc.*
  No. 2:17-cv-241-JAM-EFB, 2017 WL 2633414 (E.D. Cal. June 16, 2017) ............... 1

*Gen. Tel. Co. of Sw. v. Falcon*
  457 U.S. 147 (1982) ........................................................................................... 6

*Gonzalez v. Officemax N. Am.*
  No. CV 07-04839 JVS MLGX, 2012 WL 5473764, at *2 (C.D. Cal. Nov.
  5, 2012) ............................................................................................................. 7

*Li v. A Perfect Franchise, Inc.*
  No. 5:10-CV-01189-LHK, 2011 WL 4635198 (N.D. Cal. Oct. 5, 2011) ............. 10, 13

*Marlo v. United Parcel Serv., Inc.*
  639 F.3d 942 (9th Cir. 2011) ............................................................................ 6

*Ochoa v. McDonald's Corp.*
  No. 3:14-CV-02098-JD, 2016 WL 3648550 (N.D. Cal. July 7, 2016) ..................... 13

*Ries v. Ariz. Beverages USA LLC*
  No. 10-01139 RS, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) .............................. 6

*Wilson v. TE Connectivity Networks, Inc.*
  No. 14-CV-04872-EDL, 2017 WL 1758048 (N.D. Cal. Feb. 9, 2017) ..................... 13

**State Statutes**

Labor Code section 226.7 ...................................................................................... 1

**Rules**

Fed. R. Civ. P. 23(b)(3) ...................................................................................... 6-7

Fed. R. Civ. P. 23(c)(1)(C) ................................................................................... 6

**Suspects**

Labor Code ............................................................................................................ 1

# INTRODUCTION

Plaintiff's Meal Period Premium claim challenges the rate at which Walmart pays its meal period premiums.[1]  But before getting to that question, "Plaintiff must establish that Walmart was legally obligated to pay a meal period premium."  (*See* Class Certification Order, ECF No. 84 at 13.)  This would not be difficult, Plaintiff's counsel argued when seeking certification, because Walmart investigates each meal period exception (*i.e.*, a late, short or missed meal).  (Plaintiff's Reply, ECF No. 79 at 9-10.)  These investigation documents, Plaintiff argued, would allow the Court to readily identify which associates were legally entitled to a meal period premium.  *Id.*  Based on this assumption, the Court certified the Meal Period Premium Class.  (Class Certification Order, ECF No. 84 at 12-16, 22.)

To test the theory that the investigation documents would be a reliable tool for determining who was entitled to a meal period premium, the parties pulled meal period investigation worksheets from 50 California Walmart stores.  (Declaration of Aaron Winn ("Winn Decl."), ¶3.)  These documents show that the meal period investigation process is not a reliable and accurate tool for identifying who was *legally* entitled to a meal period premium.

In fact, for several meal period exceptions, there is no corresponding investigation worksheet.  (Declaration of Todd Stokes ("Stokes Decl."), ¶ 7.)  When there is a worksheet, it sometimes fails to identify any reason for the meal period exception.  (Stokes Decl., ¶ 4 (Exs. 1, 2, 3), ¶ 5.)  When there is a worksheet, and it *does* include the associate's explanation, the explanation is sometimes so short, muddled, or oblique that it would be extremely difficult (if not impossible) to readily determine

---

[1] As outlined in Walmart's concurrently filed motion for summary judgment, Walmart's practices comply with Labor Code section 226.7 because the "regular rate of compensation," as used in section 226.7, is different than the "regular rate of pay," which is used elsewhere in the Labor Code.  *See e.g.*, *Brum v. MarketSource, Inc.*, No. 2:17-cv-241-JAM-EFB, 2017 WL 2633414 (E.D. Cal. June 16, 2017) (rejecting challenge to meal period premium rate because "the legislature's choice to use the word 'compensation' instead of 'pay' [is] meaningful").

1  whether there was an actual meal period violation.  This is not particularly surprising

2  because (1) the worksheet is designed to identify only *the associate's* explanation for the

3  exception; (2) the worksheet does not ask the manager to investigate or confirm the

4  truth of the associate's allegation; and (3) Walmart does not use the worksheet to

5  determine whether an exception triggered a *legal* obligation to pay a premium.

6      Because the meal period investigation worksheets do not confirm whether an

7  associate was legally entitled to a meal period premium, the "coding" of the worksheets

8  in the Exception Management System (EMS) is equally unhelpful for determining

9  *actual* meal period violations.  For example, some meal period exceptions were coded as

10  "Manager Directed" even when the associate's explanation—*e.g.*, "I lost track of time"—

11  does not remotely suggest a "Manager Directed" event.  (Stokes Decl., ¶ 4 (Ex. 4), ¶ 5.)

12  In short, post-certification discovery shows that Walmart's investigation records *cannot*

13  be used to readily or reliably identify who was legally entitled to a meal period

14  premium.  As a result, the Court should decertify the Meal Period Premium Class.

15  ## FACTUAL AND PROCEDURAL BACKGROUND

16  ### A.    The Court certifies the Meal Period Premium Class.

17      Plaintiff's reply brief in support of their class certification motion argued that

18  the Court could easily use Walmart's own records to determine who was legally

19  entitled to a meal period premium because Walmart supposedly investigates and

20  documents "every single meal period violation."  (ECF No. 79 at 9.)  As a result,

21  Plaintiff explained that he would simply "accept the truth of Defendants' meal period

22  reports and limit the meal period premium rate claim to only those violations which

23  Defendants confirmed."  (*Id.*)

24      Based on Plaintiff's theory, the Court certified the Meal Period Premium Class.

25  (ECF No. 84 at 12-16, 22.)  The Court defined the Meal Period Premium Class as all

26  current and former hourly California Walmart retail employees who were paid any

27  meal period premium [regardless of the reason] in the same period that they received a

28  non-discretionary bonus.  (*Id.* at 22.)

1

**B.      Post-certification discovery**

2          After the Court's certification order, the parties conducted extensive discovery.

3   Among other things, Plaintiff took a 30(b)(6) deposition regarding Walmart's meal

4   period investigation process and identified 50 California Walmart stores from which

5   the parties pulled all relevant meal period investigation worksheets—the documents,

6   Plaintiff argued, would allow the Court to easily determine which associates were

7   legally entitled to a meal period premium.

8                    **1.      Walmart's 30(b)(6) witness explains that the meal period
                            investigation process does not confirm whether a meal
9                            period premium was legally owed.**

10         Prior to class certification, Plaintiff's counsel deposed Walmart's Regional HR

11  Director Todd Stokes.  He was *not* designated as a 30(b)(6) witness for purposes of meal

12  period investigations, and during his deposition, Walmart's counsel repeatedly objected

13  that questions regarding the meal period investigation process exceeded the scope of

14  the 30(b)(6) notice.  Counsel explained that Stokes "is not prepared to testify on behalf

15  of Walmart policy regarding [the meal period investigation process]."  (Winn Decl. Ex.

16  A, Stokes Dep., at 44:4-48:9.)  And Stokes explained:  "I don't know the actual, full

17  process to speak fully on that."  (Winn Decl. Ex. A, Stokes Dep., at 45:8-22.)

18         Despite Stokes' lack of familiarity with the investigation process, Plaintiff's

19  counsel used his testimony *in their reply brief* to support their theory that determining

20  who was legally entitled to a meal period premium would be easy because Walmart

21  investigates each meal period exception.

22         After the Court granted class certification, Plaintiff noticed a separate 30(b)(6)

23  deposition regarding Walmart's meal period investigation topics.  This was necessary,

24  of course, because Stokes was *not* familiar with the meal period investigation process

25  and was *not* designated as a 30(b)(6) witness to discuss meal period investigations.

26  The 30(b)(6) deposition regarding meal period investigations occurred on June 28,

27  2018.  Walmart's 30(b)(6) designee was Victoria Moore.

28

1
2
3
4
5
6
7
8
9
10
11
12

Throughout Moore's deposition, Plaintiff's counsel confused and/or conflated several different internal procedures that relate to Walmart's meal period policy.[2]  But to the extent the questioning allowed her to do so, Moore explained that Walmart's managers are expected to use a meal period investigation worksheet to document the *associate's* reason for the exception and then to enter worksheet data into Walmart's Exception Management System (EMS).  (Winn Decl. Ex. B, Moore Dep. at 21:25-26:14; 105:13-109:19.)  The process that leads to the EMS data is *not* designed to determine whether an associate is actually entitled to receive a meal period premium.  (Winn Decl. Ex. B, Moore Dep., at 21:25-26:14; 53:25-54:11.)  Rather, Walmart pays California associates a meal period premium regardless of whether the associate completes the worksheet and regardless of the reasons (if any) an associate provides for the meal period exception.  (Winn Decl. Ex. B, Moore Dep., at 21:25-26:14; 53:25-55:1.)

13
14
15
16
17

Moore also explained that the purpose of the meal period investigation process is limited to creating visibility into risk indicators for meal exceptions.  (Winn Decl. Ex. B, Moore Dep., at 53:25-55:14; 57:12-58:20).  It is not designed to confirm whether a meal period premium was legally owed or to verify whether the associate's story was true:

18
19
20

> Q.      . . . Is there a report that we could pull from the exception management system which has the conclusion after the investigation which confirms the reason code?  If it's a valid reason code, is there a report that would be run that says "These reason codes have been confirmed"?

21
22

> A.      *There's no confirmation.  The step that you say -- the step that you outline around confirmation, that step is not part of the process.*

23

(Winn Decl. Ex. B, Moore Dep., at 124:17-125:3) (emphasis added) (objection omitted).)

24
25

Rather, as the meal period investigation worksheet makes clear, the investigation process focuses on documenting the *associate's* reason for the exception.

26
27
28

---

[2] Plaintiff's counsel also conflated the process in their class certification briefing, as the Court noted in its Order:  "Plaintiff appears to conflate the Meal Exception Reports with the records that are generated by Wal-Mart's investigations into every reported meal exception. . . . [T]hese are two different things."  (ECF No. 84 at 14 n.1.)

(Winn Decl. Ex. B, Moore Dep., at 21:25-26:14; 105:13-109:19; Stokes Decl., ¶ 4, Exs. 1-24)

The first page of the two-page investigation worksheet directs the manager at Step 1 to "[a]sk the associate and note in their words the reason a timely, full, uninterrupted rest break or meal period was not taken." (*See, e.g.*, Stokes Decl., ¶ 4, Ex. 4.)  The worksheet does *not* ask the manager to evaluate the associate's story, opine as to its credibility, or take any other action to "confirm" the associate's allegation.

The second page asks the manager at Step 2 to identify whether *the associate* alleges that he or she "voluntarily failed" or "involuntarily failed" to take a proper meal break.  (Stokes Decl., ¶ 4, Ex. 4.)  As with Step 1, the investigation worksheet does not ask or expect the manager to confirm or evaluate the associate's allegation; it merely asks the manager to document the allegation.  The manager is then asked to remind the associate of Walmart's meal period policies and to provide appropriate coaching. (Stokes Decl., ¶ 4, Ex. 4.)

The manager or a personnel associate (HR) then records in the EMS that the associate completed the meal period investigation worksheet.  (Winn Decl. Ex. B, Moore Dep., at 68:15-70:7; 108:22-109:19.)  This is done by matching, as closely as possible, the associate's allegations to one of the broad pre-populated EMS "reasons" codes.  (Winn Decl. Ex. B, Moore Dep., at 68:15-70:7).  But when an associate alleges an involuntary meal period exception, the worksheet directs the investigating manager to select "Manager Directed – No Coverage/For Customer Support" *regardless of the actual reason the associate gives for the meal exception.*  (Winn Decl. Ex. B, Moore Dep., at 105:13-109:19; Stokes Decl., ¶ 4, Ex. 4.)  The worksheet does not direct the investigating manager to enter into the EMS the Step 1 reason the associate gave for the meal exception.  (Winn Decl. Ex. B, Moore Dep., at 105:13-109:19; Stokes Decl., ¶ 4 (Ex. 4), ¶ 8.)

### 2. The 50-store sampling of meal period investigation worksheets.

To test the premise that Walmart's own documents could be easily used to determine who was *legally* owed a meal period premium, the parties pulled all relevant meal period investigation worksheets from 50 California Walmart stores, as selected by Plaintiff's counsel. (Winn Decl., ¶ 3.)  The meal period investigation worksheets exist only in hardcopy form and are located at the store where the associate works.  (Stokes Decl. ¶ 3.)  As outlined below, this sampling of investigation worksheets shows that the investigation process that leads to the EMS coding of meal period exceptions is focused on documenting associate allegations and identifying potential risks, but it does not determine (and cannot be used to easily or reliably determine) who is legally entitled to a meal premium.  (*See generally* Stokes Decl., ¶ 4, Exs. 1-24.)

# ARGUMENT

### A. When assessing a motion for decertification, the burden remains on the plaintiff to satisfy the requirements of Rule 23.

"Even after a certification order is entered, the [Court] remains free to modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). "On a motion for decertification, the burden remains on the plaintiffs to demonstrate 'that the requirements of Rules 23(a) and (b) are met.'" *Ries v. Ariz. Beverages USA LLC*, No. 10-01139 RS, 2013 WL 1287416, at *3 (N.D. Cal. Mar. 28, 2013) (quoting *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011)).

Here, the Court certified the Meal Period Premium Class under Rule 23(b)(3), finding that common issues "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).  When assessing predominance, the Court must first examine the substantive issues of Plaintiff's claim

1   and then inquire into the proof relevant to each issue.  *Gonzalez v. Officemax N. Am.*,

2   No. CV 07-04839 JVS MLGX, 2012 WL 5473764, at *2 (C.D. Cal. Nov. 5, 2012).  If the

3   substantive issues require individual proof for each member's claims, making class

4   treatment unmanageable, then class certification is inappropriate.  *Id.*, at *6 (noting

5   that "[w]ithout a viable method of common proof for evaluating the ability of [9,000]

6   class members to take breaks as required by law, the Court will be mired in over

7   [9,000] mini-trials regarding individual job duties and expectations," and stating that

8   [t]he difficulties in managing such a wide-ranging factual inquiry persuade the Court

9   that class treatment is not a superior method for resolution of the class members'

10  potential [meal break] claims").

11      **B.    Determining who was legally entitled to a meal period premium
12              will require intensive individualized inquiries that will swamp
                the proceedings.**

13

14      Plaintiff promised the Court that Walmart's own documents would make it

15  simple to determine who was legally entitled to a meal period premium.  But post-

16  certification discovery shows that Plaintiff's promise is illusory.  Although Walmart

17  asks its associates to provide a reason for meal period exceptions, the investigation

18  process that leads to the EMS coding does not confirm whether the allegation is true or

19  whether it would reasonably trigger a meal period premium.  As a result, Walmart

20  does not (and could not) rely on its investigation process to decide whether an associate

21  was *legally* entitled to a meal period premium.  Rather, out of an abundance of caution,

22  Walmart pays a meal premium to every associate with a meal exception, regardless of

23  the reason for the exception, and regardless of whether a meal period investigation is

24  even undertaken.  And because Walmart does not (and could not reasonably) use the

25  meal period investigation process to determine who was *legally* entitled to a meal

26  period, it cannot be used here as a proxy for legally determining liability.

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR DECERTIFICATION

1

2

3

### 1. Walmart's meal period investigation process does not attempt to resolve any discrepancies regarding an employee's allegations or otherwise confirm (or reject) the associate's explanation for the exception.

4   The meal period investigation process that leads to the EMS coding is not

5   designed to adjudicate conflicting stories regarding meal period exceptions or to make

6   determinations regarding the *actual* reason for a meal period exception.  (Winn Decl.

7   Ex. B, Moore Dep., at 124:5-125:18.)  Instead, the process merely documents (1) the

8   *associate's* reason (if any) for the exception and (2) the associate's (*not Walmart's*)

9   allegation regarding whether the meal exception was voluntary or involuntary.  (*See,*

10  *e.g.*, Stokes Decl., ¶ 4, Ex. 4.)  There is no part of the meal period investigation process

11  that either confirms or rejects the reason the associate provides for the meal exception.

12  (Winn Decl. Ex. B, Moore Dep., at 124:5-125:18.)

13  Walmart does not instruct managers to conduct a thorough interview of the

14  associate to gather details regarding the circumstances that led to the meal exception.

15  (Stokes Decl., ¶ 4, Ex. 4.)  Indeed, because the conversation with the associate may

16  occur more than a week after the meal period exception, the associate sometimes does

17  not recall why the exception occurred.    (Stokes Decl., ¶ 4, Ex. 5 (associate said "I don't

18  remember" when asked at Step 1 the reason for not taking a proper meal break).)  The

19  investigating manager is not instructed to ask the associate follow up questions,

20  interview other witnesses, review relevant documents or video footage, reconcile

21  conflicting statements or evidence, engage in further fact-finding or otherwise

22  challenge what the associate says regarding the reason for the meal exception.  (Winn

23  Decl. Ex. B, Moore Dep., 60:14-61:20; Stokes Decl., ¶ 4, Ex. 4.)  In terms of the

24  investigation process that leads to the EMS coding, the investigating manager is a

25  mere scribe (and often, not even that, as the associate may personally write the reason

26  for the meal exception in his or her own words and handwriting).  (Winn Decl. Ex. B,

27  Moore Dep., at 42:1-43:8; *see also* Stokes Decl., ¶ 4, Ex. 4, for an example of a Step 1

28  explanation written in the first person, in the associate's handwriting).)

1    Because Walmart's meal period investigation process primarily documents an

2    associate's allegations about the reason for a meal exception, the investigating

3    manager does not necessarily ask the associate's supervisor for his or her side of the

4    story, even when the associate alleges that he or she "involuntarily failed" to take a

5    proper meal period.  For example, because Everett Arcement alleged that he

6    "involuntarily failed" to take a proper meal break on January 13, 2013, his meal

7    exception was coded "Manager Directed" even though his supervisor did *not* participate

8    in the investigation.  (*See* Stokes Decl., ¶ 4, Ex. 6, which shows no Step 3 signature for

9    the associate's supervisor.)  That "Manager Directed" was selected without his

10   supervisor's involvement is especially concerning since his Step 1 explanation provides

11   no indication that his manager directed him to not take a proper meal period.  (*Id.*)  To

12   the extent an associate claims that a Walmart supervisor prevented the associate from

13   taking a proper meal break, Walmart is entitled to present testimony from the

14   supervisor and other evidence to demonstrate that the associate had an opportunity to

15   take a proper meal break.  Using Walmart's EMS data to prove Plaintiff's class claims

16   denies Walmart of its right to tell its side of the story, which was not necessarily

17   captured by the meal period investigation process.

18       Because the investigation process that leads to the EMS coding involves

19   documenting associate allegations (in their own words), not engaging in fact-finding

20   investigations regarding the circumstances of each meal exception, showing that

21   Walmart actually prevented any class member from taking a proper meal break would

22   require highly individualized fact-finding to determine *why* each class member failed to

23   take a proper meal period.

24       **2.    Meal period investigation data cannot serve as the basis for**
           **making any reliable determination regarding who was**
25         **legally entitled to a meal period premium.**

26       The investigation worksheets produced by Walmart show that the investigations

27   are not reliable for purposes of determining whether Walmart prevented an associate

28   from taking a proper meal period.  Because the investigation worksheets are the only

9                          CASE NO. 5:17-CV-00062-LHK

1   data point for the codes entered into the EMS system, the EMS data is no more reliable

2   that the spotty information contained in the worksheets.  (Winn Decl. Ex. B, Moore

3   Dep., at 68:15-70:7.)  Moreover, the investigating managers do not necessarily enter

4   the EMS coding themselves.  (Winn Decl. Ex. B, Moore Dep., at 68:15-70:7.)  When the

5   person selecting the EMS coding is not the same person that completed the

6   investigation worksheet, there is an additional potential for error or misinterpretation,

7   making the EMS data even less reliable than the meal period investigation worksheets

8   for the purpose of determining the actual reason for the meal exception.

9           Indeed, the EMS code sometimes bears no relationship to the associate's

10  explanation in Step 1 of the worksheet.  (*See, e.g.,* Stokes Decl., ¶ 4 (Exs. 15-18), ¶ 6.)

11  For example, a December 2017 meal exception was coded as "Associate Failed to Punch

12  – No Timely Adjustment."  (Stokes Decl., ¶ 4 (Ex. 15), ¶ 6.)  But at Step 1 of the

13  corresponding investigation worksheet, the associate explains that he simply "lost

14  track of time."  (Stokes Decl., ¶ 4, Ex. 15.)

15          Another worksheet in which an associate claims he "lost track of time" was coded

16  as "Manager Directed."  (Stokes Decl., ¶ 4, Ex. 4.)  This alone, according to Plaintiffs,

17  legally entitles the associate to a meal period premium.  But employers are not liable

18  for meal period premiums merely because their employees "lost track of time" and took

19  a late lunch.  *Li v. A Perfect Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2011 WL

20  4635198, at *13 (N.D. Cal. Oct. 5, 2011) ("Case law interpreting the statute has

21  established that meal breaks need only be made available to employees, they don't

22  necessarily actually have to be taken").  The chart below summarizes several

23  additional examples of meal period exceptions that were coded as "Manager Directed"

24  even though the associate's explanation suggests otherwise.

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR DECERTIFICATION

| Exhibit No.[3] | Step 1 Explanation | Step 2 Selection(s) | EMS "Reason" Coding |
|---|---|---|---|
| Ex. 7 (Cabrera) | "MHRM came and toured with us and by the time we were done I had gone over my 5th hour lunch break." | Voluntary; "Associate Initiated Without Management Approval" | Manager Directed – No Coverage/For Customer Support |
| Ex. 8 (Cook) | "I went over my 10th hour. Because, it was the last day of layaway and no one else was here to cover the register. Couldn't leave the customer." | Voluntary | Manager Directed – No Coverage/For Customer Support |
| Ex. 9 (Ortega) | "Preparing for inventory." | Voluntary | Manager Directed – No Coverage/For Customer Support |
| Ex. 10 (Bustamante) | "Spoke to Edgar last chance & he will pay attention to his swipes & his time." | Voluntary | Manager Directed – No Coverage/For Customer Support |
| Ex. 11 (Mora) | "Is because I need finish my work, and try to don't do again." | None | Manager Directed – No Coverage/For Customer Support |
| Ex. 12 (Reveles) | "Lost Time. The associate wasn't sure that work with break/meal period." | None | Manager Directed – No Coverage/For Customer Support |
| Ex. 13 (Wiggins) | "See ETA & Punch Log" | Voluntary; Associate Initiated Customer Support | Manager Directed – No Coverage/For Customer Support |
| Ex. 14 (Rowe) | "Busy in deli, Talked to assistant manager Jeremy about leaving early." | None | Manager Directed – No Coverage/For Customer Support |

Inconsistencies between the associate's explanation and the EMS codes are not the only reason these documents cannot be used as a shortcut for determining meal period liability. In many other cases, *there is no corresponding worksheet at all*. (Stokes Decl., ¶ 7.) Where there is no corresponding worksheet, it is impossible to know whether the associate even *alleged* that the meal exception was "Manager Directed," let alone whether it was *in fact* manager directed.

[3] *See* Stokes Decl., ¶ 4, Exs. 7-14.

1    Other worksheets are ambiguous because they are either incomplete or too

2  vague to make any determinations about what *actually* happened.  (*See e.g.,* Winn

3  Decl. Ex. B, Moore Dep. 128:7-25; 129:1-18; 130:2-132:2; Stokes Decl., ¶ 4, Exs. 1, 2, 3.)

4    Plaintiff's counsel highlighted this very problem during Moore's deposition.  For

5  example, after showing Moore an investigation worksheet with a Step 1 explanation of

6  "Helping customer on the floor," counsel asked Moore how that explanation should be

7  coded in the EMS system.  (Winn Decl. Ex. B, Moore Dep. 127:18-128:6; Winn Decl. Ex.

8  C, Moore Dep. Ex. 77.)  Moore explained:  "I have no way to know how this should be

9  coded based solely on that – based solely on the comment written there."  (Winn Decl.

10  Ex. B, Moore Dep. 128:4-6.)  She also noted that the form was not completed properly:

11  "The instructions clearly say to place an X in one of those [boxes in Step 2], but I'm not

12  sure what -- it appears the form was not completed according to the instructions on the

13  form."  (Winn Decl. Ex. B, Moore Dep., 128:7-25.)

14    Plaintiff's counsel then provided Moore with a second example.  It too was

15  incomplete.  This time, there was no Step 2 selection.  (Winn Decl. Ex. B, Moore Dep.

16  129:1-18; Winn Decl. Ex. C, Moore Dep. Ex. 77.)

17    Plaintiff's counsel then showed Moore a third worksheet, and asked whether she

18  agreed that the worksheet should be coded as "Manager Directed."  Moore explained:

19  "I don't have enough information, and the information on the form isn't clear.  The

20  information on the form is inconsistent with the associate's punches.  So at this point, I

21  would say I don't know that anything [regarding this exception] was manager-

22  directed."  (Winn Decl. Ex. B, Moore Dep. 130:2-132:2; Winn Decl. Ex. D, Moore Dep.

23  Ex. 81.)

24    These exchanges highlight the challenges inherent in trying to use the

25  worksheet investigation documentation (and corresponding EMS data) for something it

26  was never designed to do:  determine whether an associate was *legally* entitled to a

27  meal period premium.  Because the meal period investigation worksheets are not

28  designed to determine whether someone was *legally* entitled to a meal period premium,

1 and because the EMS coding is *not* a "confirmation" of any actual violation, none of

2 these documents can be used as a proxy to determine liability. This is especially true

3 given the fact that the documentation is often ambiguous, incomplete, and/or

4 inconsistent. As a result, determining whether any particular associate was *actually*

5 entitled to a meal period premium would require individualized inquiries that go far

6 beyond a review of EMS data or the underlying investigation worksheets.

> **3.    Because Walmart's documents cannot easily identify who was legally entitled to a meal period premium, this case is no different than other meal break cases in which class certification is improper.**

10        Without some common policy or practice that prevents class members from

11 taking a proper meal period—and there is no such allegation here—meal break claims

12 are inherently ill-suited for class treatment. *See, e.g., Ochoa v. McDonald's Corp.*, No.

13 3:14-CV-02098-JD, 2016 WL 3648550, at *6 (N.D. Cal. July 7, 2016) (denying

14 certification because plaintiffs "[did] not tender any evidence of a standard policy or

15 practice, formal or informal, of denying crew members their meal and rest breaks"); *Li*,

16 2011 WL 4635198, at *13 ("Whether class certification of a meal period claim is

17 appropriate depends upon whether the employer has a uniform policy.").

18        This is so because determining why any particular class member did not take a

19 compliant meal period, on any particular day, inherently raises a host of individualized

20 inquiries. *See, e.g., Wilson v. TE Connectivity Networks, Inc.*, No. 14-CV-04872-EDL,

21 2017 WL 1758048, at *7 (N.D. Cal. Feb. 9, 2017) (denying certification of Plaintiff's

22 meal break claims and noting that courts "consistently" deny certification of meal

23 break claims because individualized issues often predominate) (collecting cases)

24 (citations omitted); *Li*, 2011 WL 4635198, at *13 (finding that common issues of law or

25 fact do not predominate in plaintiffs' meal break claims because "[a]bsent a uniform

26 policy or practice, plaintiffs' meal break claims will require a heavily factual inquiry

27 into the particular circumstances of each putative class member to determine when, if

28 ever, they were not permitted to take a meal break").

It is no different here.  The variety of reasons for meal exceptions are legion: (1) "I can't remember [why],"[4] (2) "[I] had car problems so I didn't come back,"[5] (3) "Was training new employee,"[6] (4) "@Med Center,"[7] (5) "I had bread in [the] oven,"[8] and (6) "With a shoplifter."[9]  Without examining each of these allegations individually, in context, there is no way to determine whether any of them give rise to an *actual* violation.  And because the meal period premium claim cannot be adjudicated without first identifying which class members were legally entitled to a meal period, class treatment of the meal period premium claim is improper.

# CONCLUSION

This Court certified Plaintiff's meal period premium claim based on Plaintiff's representation that Walmart's investigation records would allow the Court to readily identify which associates were legally entitled to a meal premium.  Because discovery has now shown that this assumption was incorrect and that determining who is legally entitled to a meal period premium will require individualized inquiries that will overwhelm any common questions, the Court should decertify the Meal Period Premium Class.

Dated: July 26, 2018

**DUANE MORRIS** LLP

By:/s/Aaron T. Winn
    Aaron T. Winn
    Jennifer A. Kearns
    Allegra A. Jones
    Attorneys for Defendants
    Wal-Mart Associates, Inc. and
    Wal-Mart Stores, Inc.

DM1\8885229.1

---

[4] (Stokes Decl., ¶ 4, Ex. 19).
[5] (Stokes Decl., ¶ 4, Ex. 20).
[6] (Stokes Decl., ¶ 4, Ex. 21).
[7] (Stokes Decl., ¶ 4, Ex. 22).
[8] (Stokes Decl., ¶ 4, Ex. 23).
[9] (Stokes Decl., ¶ 4, Ex. 24).