UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

RODERICK MAGADIA, et al.,
Plaintiff,

v.

WAL-MART ASSOCIATES, INC., et al.,
Defendants.

Case No. 17-CV-00062-LHK

**ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT**

Re: Dkt. No. 131

Plaintiff Roderick Magadia ("Plaintiff") brings the instant suit on behalf of himself and others similarly situated against Defendants Wal-Mart Stores, Inc. and Wal-Mart Associates, Inc. (collectively, "Wal-Mart"). Before the Court is Wal-Mart's motion for partial summary judgment. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court DENIES Wal-Mart's motion for partial summary judgment.

## I. BACKGROUND

### A. Factual Background

Wal-Mart is a national retailer with locations throughout the United States. ECF No. 84. Plaintiff worked as a non-exempt employee in Wal-Mart's store in San Jose, California from June 17, 2008 to September 16, 2016. *Id.*

United States District Court
Northern District of California

When one of Wal-Mart's non-exempt California employees works overtime during a given pay period and earns "non-discretionary remuneration in the same pay period," Wal-Mart pays an employee an "additional overtime wage" that appears as "OVERTIME/INCT" on the employee's wage statement. ECF No. 67 ("Mot.") at 19; *see* ECF No. 67-1, Ex. C, Deposition of Todd Stokes ("Stokes Dep.") at 66–68, 69, 76–77. INCT is an abbreviation for incentive. *See* Stokes Dep. at 67. This ensures Wal-Mart is in compliance with California Labor Code § 510(a), which requires employers to factor in an employee's non-discretionary remuneration when calculating that employee's overtime pay. *See Marin v. Costco Wholesale Corp.*, 169 Cal. App. 4th 804, 807 (2008) ("Because the nondiscretionary bonus at issue here increases the regular rate of pay, employees who worked overtime during the bonus period and were paid at 1.5 times their hourly rate (unaugmented by the bonus) during that time are entitled to additional overtime pay once the bonus is awarded."). The OVERTIME/INCT item is a lump sum and does not list an hourly rate or specify hours worked. ECF No. 67-1 at 35 (one of Plaintiff's wage statements).

Wal-Mart employees like Plaintiff are paid biweekly. ECF No. 67-1, Ex. 1, Declaration of Todd Stokes ("Stokes Decl.") ¶ 9. Wal-Mart provides employees with biweekly wage statements that correspond to the particular pay period. *Id.* These wage statements list the start and end dates of the pay period. ECF No. 67-1 at 34 (one of Plaintiff's wage statements). When an employee is terminated, they receive a "Statement of Final Pay" that lists all wages being paid to the employee at the end of employment. Stokes Dep. at 82; Stokes Decl. ¶ 9. According to Todd Stokes, Wal-Mart's "Regional HR Director," as a matter of Wal-Mart's policy and practice, none of Wal-Mart's Statements of Final Pay from December 2015 onwards included pay period start or end dates. Stokes Dep. at 89–91. However, Wal-Mart also generates a final on-cycle wage statement and informs employees how to access it online during their exit interview. Stokes Decl. ¶ 9.

**B. Procedural History**

Plaintiff filed this putative class action in the Superior Court for the County of Santa Clara on December 2, 2016. *See* ECF No. 1-1 ("Compl.") Plaintiff's complaint alleges causes of action for (1) violation of California Labor Code §§ 226.7 and 512; (2) violation of California Labor

Code § 226(a); (3) violation of the Private Attorney Generals Act, Cal. Lab. Code § 2698, *et seq.*; and (4) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq. Id.* On January 5, 2017, Wal-Mart removed the action to this Court alleging jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). *See* ECF No. 1. On February 2, 2017, Wal-Mart filed an answer to Plaintiff's complaint. ECF No. 19.

On October 19, 2017, Plaintiff moved for class certification. ECF No. 60. On November 20, 2017, Wal-Mart filed its opposition. ECF No. 75. On December 18, 2017, Plaintiff filed his reply. ECF No. 79.

On January 9, 2018, the Court granted Plaintiff's motion for class certification. ECF No. 84. The Court certified three classes:

> **Meal Period Regular Rate Class:** All current and former California non-exempt retail store employees of Wal-Mart who received non-discretionary remuneration, including "MYSHARE INCT," and was paid any meal period premium payments in the same period that the non-discretionary remuneration was earned, at any time between December 2, 2012, through the present.
>
> **OVERTIME/INCT Wage Statement Class:** All current and former California non-exempt employees of Wal-Mart who received "OVERTIME/INCT," at any time between December 2, 2015, through the present.
>
> **Final Wage Statement Class**: All former non-exempt employees who worked for Wal-Mart in the State of California and whose employment terminated (whether voluntarily or involuntarily) at any time from December 2, 2015 to the present.

*Id.* at 22.

On October 30, 2017, Plaintiff moved for partial summary judgment on Plaintiff's claim under California's Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698–2699.5. ECF No. 67. On January 16, 2018, Wal-Mart filed its opposition. ECF No. 86. On February 5, 2018, Plaintiff filed his reply. ECF No. 91.

On May 11, 2018, the Court granted Plaintiff's motion for partial summary judgment on Plaintiff's PAGA claim. ECF No. 121. On June 25, 2018, the Court denied Wal-Mart's request for leave to file a motion for reconsideration. ECF No. 130.

On July 26, 2018, Wal-Mart filed a motion for partial summary judgment as to Plaintiff's

remaining claims. ECF No. 131 ("Mot.").[1] On August 16, 2018, Plaintiff filed his opposition. ECF No. 139 ("Opp."). On August 23, 2018, Wal-Mart filed its reply. ECF No. 142 ("Reply").

## II. LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

---

[1] Wal-Mart has filed a request that the Court take judicial notice of the California Court of Appeal decision *Fabio Canales et al. v. Wells Fargo Bank, N.A.*, Case No. B276127. ECF No. 131-1. Portions of this decision are unpublished. The version available at *Canales v. Wells Fargo Bank, N.A.*, 23 Cal. App. 5th 1262 (2018), does not include these unpublished portions. A court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc*., 971 F.2d 244, 248 (9th Cir. 1992). A court may also take judicial notice of the existence of matters of public record, such as a prior order or decision, but not the truth of the facts cited therein. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001). Accordingly, the Court GRANTS Defendants' request for judicial notice.

## III. DISCUSSION

Wal-Mart moves for summary judgment on Plaintiff's remaining claims, which are (1) a meal period premium claim under California Labor Code § 226.7; (2) an overtime wage statement claim under California Labor Code § 226(a)(9); (3) a final wage statement claim under California Labor Code § 226(a)(6); and (4) a claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* The Court evaluates Wal-Mart's attack on each claim in turn, and finds that Wal-Mart is not entitled to summary judgment on any of the four claims at issue.[2]

### A. California Labor Code § 226.7

California Labor Code § 226.7(c) provides that if an employer fails to provide a compliant meal period, the employer must provide "one additional hour of pay at the employee's regular rate of compensation." Wal-Mart pays the requisite meal period premiums to employees at their hourly pay rate. Plaintiff argues this violates § 226.7(c) because, in Plaintiff's view, an employee's "regular rate of compensation" includes hourly pay *and* any other pay (incentives, bonuses, etc.). Wal-Mart takes the position that an employee's "regular rate of compensation" is the same as the employee's hourly pay rate, and moves for summary judgment on that basis. The question is here is therefore a strictly legal one. If Wal-Mart's reading of "regular rate of compensation" is correct, Wal-Mart has not violated § 226.7(c) and is entitled to summary judgment. If Plaintiff's reading is correct, Wal-Mart is not entitled to summary judgment.

The parties agree that there is case law pointing in both directions. Wal-Mart points to several decisions: *Bradescu v. Hillstone Rest. Grp., Inc.*, 2014 WL 5312546 (C.D. Cal. Sept. 18, 2014); *Wert v. U.S. Bancorp*, 2014 WL 7330891 (S.D. Cal. Dec. 18, 2014) ("*Wert I*"); *Wert v. U.S. Bancorp*, 2015 WL 3617165 (S.D. Cal. June 9, 2015) ("*Wert II*"); and *Brum v.*

---

[2] Plaintiff advances a series of arguments that Wal-Mart's motion for partial summary judgment is essentially a motion for reconsideration of the Court's previous order granting Plaintiff's motion for partial summary judgment, and must therefore be denied as Wal-Mart has not satisfied the requirements for a motion for reconsideration. However, Wal-Mart has moved for summary judgment on different—albeit overlapping—claims from those that the Court considered in its previous summary judgment order. The Court therefore does not construe Wal-Mart's motion as a motion for reconsideration.

*MarketSource, Inc.*, 2017 WL 2633414, at *5 (E.D. Cal. June 19, 2017). Plaintiff cites contrary authority: *Studley v. All. Healthcare Servs., Inc.*, 2012 WL 12286522 (C.D. Cal. July 26, 2012); and *Ibarra v. Wells Fargo Bank, N.A.*, 2018 WL 2146380 (C.D. Cal. May 8, 2018). The Court must therefore determine which line of cases offers the more convincing analysis because "[f]ederal district courts disagree, and the Ninth Circuit has not spoken on this specific issue." *Brum*, 2017 WL 2633414, at *4. The Court finds that the decisions to which Plaintiff cites are more persuasive.

The main reason for the split is that California Labor Code § 226.7, the meal period premium statute, refers to an employee's "regular rate of compensation," whereas California Labor Code § 510, the overtime statute, refers to an employee's "regular rate of pay." The decisions to which Wal-Mart cites tend to find this distinction dispositive. All sides agree § 510's "regular rate of pay" includes hourly pay *and* any additional pay. *Brum*, 2017 WL 2633414, at *4 (E.D. Cal. June 19, 2017) (noting "regular rate of pay" includes "all remuneration for employment paid to, or on behalf of, the employee."). Some district courts have therefore reasoned that the use of "compensation" instead of "pay" in § 226.7 proves the California Legislature meant for § 226.7 to be read differently from § 510, *i.e.* to be read to include only an employee's hourly rate. *See Wert I*, 2014 WL 7330891, at *5 ("The legislature had the opportunity to define awards under §§ 226.7 and 510 in the same manner, but it chose not to.").

As *Ibarra* points out, there are problems with this approach. For one, it underemphasizes the fact that both statutes refer to a "regular rate." California courts look to the federal Fair Labor Standards Act ("FLSA") for guidance when interpreting parallel state labor laws. *Ibarra*, 2018 WL 2146380, at *5 (so noting); *Advanced-Tech Sec. Servs., Inc. v. Superior Court*, 163 Cal. App. 4th 700, 707 (2008) ("Support for this interpretation is found in the FLSA, its supporting federal regulations, and case law interpreting federal law."); *see Culley v. Lincare Inc.*, 236 F. Supp. 3d 1184, 1190 (E.D. Cal. 2017) ("When defining the term 'regular rate of pay,' California courts look to the FLSA."). FLSA uses "neither 'pay' nor 'compensation.' Instead, it uses the phrase "regular rate at which [the employee] is employed," and it defines only the term 'regular rate.' " *Ibarra*,

2018 WL 2146380, at *5 (quoting 29 U.S.C. § 207(e)) (alteration in original). In other words, FLSA defines "regular rate," which appears in both statutes, to include both hourly pay *and* any additional pay. Given the rule of statutory construction that the California Legislature is deemed to have known of existing statutes and judicial decisions, the use of "regular rate" in §§ 226.7 and 510 suggests an intent for the term, in line with FLSA, to have the same meaning in both statutes. *Id.* (so noting).

On the other side, Wal-Mart's approach also overemphasizes the distinction between "compensation" and "pay." Indeed, the Court is persuaded by *Ibarra*'s point that the two terms "generally have the same meaning in common usage and in California law." *Ibarra*, 2018 WL 2146380, at *4; *accord Studley v. All. Healthcare Servs.*, 2012 WL 12286522, at *4 n.4 (C.D. Cal. July 26, 2012) ("[C]ompensation and pay have essentially identical plain meanings for purposes of the labor code. Thus, the use of one word or the other does not substantively alter the meaning of the phrase."). In fact, no less an authority than the California Supreme Court has noted—while interpreting § 226.7—that "the Legislature has frequently used the words 'pay' or 'compensation' in the Labor Code as synonyms for 'wages' … ." *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1104 n.6 (2007) (emphasis added). A subsequent California Supreme Court decision even went so far as to describe the amount to be paid under § 510 as the employee's "regular rate of compensation" rather than "regular rate of pay," reinforcing *Murphy*'s point that "compensation" and "pay" are often used synonymously in the California Labor Code. *Costco Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725, 730, 219 P.3d 736, 739 (2009) ("Labor Code section 510, subdivision (a) requires payment at a rate of no less than time and one half the *regular rate of compensation* … ." (emphasis added)).

This backdrop is especially important because other rationales for a narrow reading of § 226.7 proffered by Wal-Mart's authorities do not withstand scrutiny. For example, *Wert I* relied heavily on its belief that § 226.7 awards are penalties whereas § 510 awards are wages in order to find that § 226.7 only includes hourly pay. However, the California Supreme Court has since held that § 226.7 awards in fact are wages. *Compare Wert I*, 2014 WL 7330891, at *4 ("[A] wards

under § 226.7 are penalties, but awards under § 510 are wages.") *with Murphy*, 40 Cal. 4th at 1102 ("We hold that section 226.7's … 'additional hour of pay' is a premium wage, not a penalty."). More fundamentally, the decisions that have adopted Wal-Mart's view simply have not examined this question to the depth found in the *Ibarra* decision. For all these reasons then, the Court joins *Ibarra* in holding that "regular rate of compensation" under § 226.7 is not limited to the employee's hourly rate "but rather must include other forms of qualifying compensation." *Ibarra*, 2018 WL 2146380, at *3.

A final point. Even if the parties' conflicting interpretations were equally persuasive (and they are not) the Court would still be compelled to adopt Plaintiff's view. The California Supreme Court has repeatedly held that statutes, like this one, which "govern[] conditions of employment are to be construed broadly in favor of protecting employees." *Murphy*, 40 Cal. 4th at 1103 (interpreting § 226.7 on this basis); *Alvarado v. Dart Container Corp. of California*, 4 Cal. 5th 542, 561–62 (2018) ("[T]he state's labor laws are to be liberally construed in favor of worker protection."). Here, the most protective construction of § 226.7 is to read it to include hourly pay and additional pay. For example, *Ibarra* points out that a contrary interpretation would be seriously detrimental to employees whose compensation is based less on an hourly rate and more on commissions and incentives, a common practice in many industries. *See Ibarra*, 2018 WL 2146380, at *3 (discussing this). The Court will therefore adopt Plaintiffs' interpretation.

In sum, the Court finds there is a genuine dispute of material fact as to Plaintiff's § 226.7 claim. In turn, the Court DENIES Wal-Mart's motion for partial summary judgment on this claim.

**B. California Labor Code § 226(a)(9)**

California Labor Code § 226(a) provides that "[a]n employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee … an accurate itemized statement in writing" that includes "(9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee … ." Cal. Lab. Code § 226(a)(9).

Wal-Mart employees who receive a MyShare incentive award at the end of a quarter and

who also worked overtime during that quarter are given additional overtime pay based on having received the incentive. Stokes Dep. at 69–70 (noting the MyShare incentive was "added into the total wages that the associate received over the course of a quarter, and it was calculated out to overtime, so they were the beneficiary of the right amount of overtime."). The additional overtime pay appears retroactively on the employee's wage statement as "OVERTIME/INCT". Stokes Dep. at 67–68, 71; ECF No. 67-1 at 35 (one of Plaintiff's wage statements). The amount of additional overtime pay is determined by a formula that accounts for the number of hours the employee worked and the employee's overtime rate. Stokes Dep. at 67–68, 69–70. However, the OVERTIME/INCT item appears on the employee's wage statement as a lump sum and does not specify how many hours the employee worked or the employee's hourly rate. ECF No. 67-1 at 35.

Wal-Mart does not dispute that the OVERTIME/INCT wage item is overtime pay that, ordinarily, would be subject § 226(a)(9)'s requirements. Wal-Mart argues instead that OVERTIME/INCT item is exempt from § 226(a)(9) because it is payment based on "overtime worked in *the prior pay periods*." Opp. at 8 (emphasis in original). Put otherwise, Wal-Mart argues that employers need not comply with § 226(a) when the overtime at issue was earned in a previous pay period.

The only published California authority identified by the parties that concerns this issue is *Soto v. Motel 6 Operating, L.P.*, 4 Cal. App. 5th 385 (2016). The allegation in *Soto* was, effectively, the inverse of what Plaintiff argues here. In *Soto*, the plaintiff argued that § 226(a) required vacation pay[3] to be listed on the wage statement for the period in which it was earned, even if the employee did not receive the vacation pay until a later pay period. *Id.* at 390. The defendant, like Plaintiff here, argued instead that vacation pay had to be listed in the employee's wage statement when the employee actually received it. *Id. Soto* sided with the defendant. *Soto* held employers were required to comply with § 226 when wages were paid instead of when wages were accrued. *Soto* reasoned that the statute's purpose was to document "the *paid wages* to ensure

[3] Although the pay at issue in *Soto* was vacation pay instead of overtime pay, *Soto* considered the same statute that is at issue here, namely § 226(a)(9). *Soto*'s analysis is therefore fully applicable.

the employee is fully informed regarding the calculation of *those wages*." *Soto*, 4 Cal. App. 5th at 392 (emphasis in original). Put otherwise, *Soto* found § 226(a)'s requirements are triggered when wages are actually paid, as opposed to when wages are earned.

Wal-Mart disagrees, and points out that *Canales v. Wells Fargo Bank, N.A.*, 23 Cal. App. 5th 1262 (2018), reached the contrary conclusion and found that § 226(a)(9) does not apply to "additional wages that were earned as overtime pay based on nondiscretionary bonuses being spread over the hours worked during the bonus period." ECF No. 131-1 at 12.[4] At the outset, the relevant portion of *Canales* is unpublished. *Id.* at 1262 n.* ("Pursuant to California rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts III(B) and III(C)."). *Canales* is therefore of limited relevance given that Civil Local Rule 3-4(e) provides "[a]ny order or opinion that is designated" as unpublished "may not be cited to this Court, either in written submissions or oral argument, except when relevant under the doctrines of law of the case, res judicata or collateral estoppel." N.D. Cal. Civ. L.R. 3-4(e). The Court therefore rejects Wal-Mart's argument on that basis.

The outcome would remain the same if the Court considered *Canales* on the merits. Although *Canales* acknowledges that *Soto* exists, *Canales* makes no attempt to reconcile its holding with *Soto* or explain the reasons for disagreement. ECF No. 131-1 at 13. *Canales* is also at odds with the purpose of § 226(a)(9). *York v. Starbucks Corp.*, 2009 WL 8617536, at *10 (C.D. Cal. Dec. 3, 2009) (describing purpose of § 226(a)(9) as "requiring more information and disclosure to employees"). *Canales* exempts an entire class of overtime payments—those which derive from nondiscretionary bonuses—from any duty to comply with § 226(a)(9). By way of illustration, Wal-Mart is not taking the position that OVERTIME/INCT hours and rates should be listed in the month they accrue, at the end of the quarter when MyShare awards are determined, or at any other point. Rather, Wal-Mart's position—in line with *Canales*—is that Wal-Mart never has to tell its employees on what hours and rates the "OVERTIME/INCT" item on their wage

---

[4] Because the unpublished portion of *Canales* is available on neither Westlaw nor Lexis, the Court relies on the document Wal-Mart has submitted in its request for judicial notice.

statement is based.

A reading that exempts employers from any obligation to disclose hours and rates for a category of overtime is hard to square with a statute whose avowed goal is to "insure that employees are adequately informed of compensation received and are not shortchanged by their employers." *Soto*, 4 Cal. App. 5th at 393 (quoting Assem. Com. on Labor and Employment, Analysis of Sen. Bill No. 1255 (2011–2012 Reg. Sess.)). Moreover, even assuming *arguendo* that the arguments on both sides were equally compelling, the Court would still adopt Plaintiff's view in light of the California Supreme Court's admonition that "the state's labor laws are to be liberally construed in favor of worker protection." *Alvarado*, 4 Cal. 5th at 561–62; *Murphy*, 40 Cal. 4th at 1103. Here, the more protective construction of § 226(a)(9) is the one that does not exempt a category of overtime from its coverage. This Court will therefore rely on *Soto* rather than *Canales*.

In sum, there is a genuine dispute of material fact as to Plaintiff's California Labor Code § 226(a)(9) claim. The Court therefore DENIES Wal-Mart's motion for partial summary judgment on this claim.

### C. California Labor Code § 226(a)(6)

Wal-Mart also moves for summary judgment on Plaintiff's claim that Wal-Mart violated California Labor Code § 226(a)'s requirement that employers provide employees, "semimonthly or at the time of each payment of wages," with a wage statement that lists "(6) the inclusive dates of the period for which the employee is paid … ."

Wal-Mart pays employees on a biweekly basis. Stokes Decl. ¶ 9. In line with this practice, Wal-Mart provides employees with biweekly wage statements corresponding to the pay period. *Id.* These wage statements list the start and end dates of the pay period. *See, e.g.*, ECF No. 67-1 at 34 (one of Plaintiff's wage statements for "Pay Period Beginning Date: 12-26-2015 through Ending Date: 01-08-2016"). When an employee is terminated, Wal-Mart pays all wages earned through the date of termination by check. Stokes Decl. ¶ 9. On the date of termination, the employee also receives a "Statement of Final Pay" that lists the wages being paid to the employee at the end of

employment. Stokes Dep. at 82; Stokes Decl. ¶ 9. These Statements of Final Pay do not specify pay period start or end dates. Stokes Dep. at 89–91; ECF No. 67-1 at 36 (Statement of Final Pay for Plaintiff's last day on September 12, 2016). However, Wal-Mart also generates a final wage statement at the close of the normal biweekly pay period that does contain pay period start and end dates. Stokes Decl. ¶ 9; ECF No. 86-2 (Plaintiff's final wage statement for biweekly pay period from September 3, 2016 to September 16, 2016). Wal-Mart tells a terminated employee how to access this final wage statement during the employee's exit interview. *Id.*

Plaintiffs contend that Wal-Mart violated § 226(a)(6) because its Statement of Final Pay did not list the start and end dates of the pay period. Wal-Mart responds that its final on-cycle wage statements satisfy § 226(a)(6)'s requirements and relies for support on the published portion of *Canales*. As here, the *Canales* plaintiffs argued that the defendant employer had violated § 226 because the defendant did not provide departing employees with an itemized wage statement when they received their final wages. *Canales*, 23 Cal. App. 5th at 1267. *Canales* rejected this theory. Section 226(a) provides that wage statements must be provided "semimonthly or at the time of each payment of wages." *Canales* read this to mean that "if an employer furnishes an employee's wage statement before or by the semimonthly deadline, the employer is in compliance." *Id.* at 1271. In other words, *Canales* read "semimonthly or at the time of each payment of wages" to mean an employer can pay wages at any point they wish, so long as it is before "the semimonthly date." *See id.* at 1270 (discussing this).

The Court disagrees with this reading of § 226(a)(6). Textually, the term "semimonthly" presumes an ongoing employment relationship. In addition, *Canales* cites not a single decision of any other court that has adopted its interpretation of § 226. The absence of supporting authority is troubling because *Canales* admits that three other decisions have stated that wage statements must be provided at the time wages are paid. *Zavala v. Scott Bros. Dairy*, 143 Cal. App. 4th 585, 591 (2006); *Reinhardt v. Gemini Motor Transp.*, 879 F. Supp. 2d 1138, 1141 (E.D. Cal. 2012); *In re Bimbo Bakeries*, 2008 WL 10850153, at *7 (N.D. Cal. Oct. 24, 2008). In a similar vein, *Canales* admits its reading is also at odds with California's Department of Industrial Relations Division of

Labor Standards Enforcement ("DLSE") because the DLSE's Policies and Interpretations Manual ("Manual") states that a "California employer must furnish a [wage] statement … to each employee at the time of payment of wages (or at least semimonthly, *whichever occurs first*)[.]" *Canales*, 23 Cal. App. 5th at 1271 (quoting DLSE Manual, § 14.1.1); *see id.* (excerpting another portion of the DLSE Manual making a similar statement). To the extent that § 226 is ambiguous on this issue—and the contrary authorities *Canales* identifies suggests that it may be—the Court is required to adopt the reading that better protects employees. *Murphy*, 40 Cal. 4th at 1103; *Alvarado*, 4 Cal. 5th at 561–62. Here, that reading requires employers to provide departing employees with a compliant wage statement when their final wages are paid.

There is an independent reason to deny Wal-Mart's motion for partial summary judgment on Plaintiff's § 226(a)(6) claim. Even assuming *arguendo* that *Canales* correctly interpreted the statute, *Canales* concerned significantly different facts. In *Canales*, the defendant employer gave departing employees a final check on their last day, and the next day (*i.e.* not at the time of "payment of wages") generated a final wage statement and mailed the wage statement to the former employee. *Id.* at 1269. By contrast, Wal-Mart gives departing employees two different wage statements. Departing employees receive (1) a check with a Statement of Final Pay on their last day (*i.e.* at the time of "payment of wages"), and (2) a subsequent final on-cycle wage statement that lists any additional wages owed. Crucially, these wage statements are for different amounts. For example, Plaintiff received a Statement of Final Pay for $2271.16 on September 12, 2016. ECF No. 67-1 at 36. Plaintiff later received a final on-cycle wage statement showing $9.77 for the September 3, 2016 to September 16, 2016 pay period. ECF No. 86-2 at 14.

Wal-Mart does not dispute that its Statements of Final Pay failed to list "the inclusive dates of the period for which the employee is paid … ." Cal. Lab. Code § 226(a)(6). Instead, Wal-Mart argues that, in light of *Canales*, the final on-cycle wage statements that list the "inclusive dates" are enough to satisfy § 226(a)(6). The premise for this argument is that the Statement of Final Pay and final on-cycle wage statements are interchangeable, such that the latter's compliance with § 226(a)(6) excuses the former's noncompliance. *See* Opp. at 11 ("[F]ailing to provide a compliant



United States District Court
Northern District of California

wage statement at the time the employer provides a final paycheck does not violate Section 226(a), provided the employer subsequently provides a compliant semimonthly wage statement.”). Put otherwise, Wal-Mart implies that lack of dates on the Statement of Final Pay is unproblematic because the final on-cycle wage statement has dates and is for essentially the same amount.

That premise is mistaken. The evidence shows that the Statement of Final Pay and the final on-cycle wage statements are for different amounts. In fact, Wal-Mart actually subtracts any amount paid by the Statement of Final Pay from the final on-cycle wage statement, the idea being to ensure there is no overlap in the amounts paid by the two wage statements. ECF No. 137-6 at 16 (“Q: So on the addendum statement, the addendum statement would show everything that was paid on the Statement of Final Pay plus whatever additional Wal-Mart may have discovered and then subtracting out what was paid through the Statement of Final Pay? A: That is correct.”). Simply put, the reason that Wal-Mart has two distinct wage statements for departing employees is because they are for two different amounts. That matters a great deal. The Court assumes, just for the moment, that *Canales* is correct and an employer can give a departing employee her final wages on her last day, but that the employer can wait weeks to provide a wage statement. Even from that starting point, nothing in *Canales* suggests an employer complies with § 226(a)(6) if the after-the-fact wage statement is not actually for the wages that the employee received on her last day, which is precisely what happened here. The bottom line is that Wal-Mart has two different wage statements for different payments. Plaintiff points to undisputed evidence that one of those two wage statements does not comply with § 226(a)(6).

In sum, there is a genuine dispute of material fact as to Plaintiff’s California Labor Code § 226(a)(6) claim. The Court therefore DENIES Wal-Mart’s motion for partial summary judgment on this claim.

**D. Unfair Competition Law**

California’s Unfair Competition Law (“UCL”) prohibits unfair competition, including “any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.” Cal. Bus. & Prof. Code § 17200. The UCL creates a cause of action for

business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Each “prong” of the UCL provides a separate and distinct theory of liability. *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). The unlawful prong of the UCL “ ‘borrows’ violations of other laws and treats them as unlawful practices,” which the UCL then “makes independently actionable.” *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999).

Here, Plaintiff uses the California Labor Code provisions discussed above as the predicate violations necessary to support his claim under the unlawful prong of the UCL. *See* Compl. ¶ 37 (UCL claim referring to unlawful practices “including those set forth herein above”). Wal-Mart argues that because it is entitled to summary judgment on Plaintiff’s predicate California Labor Code claims, Wal-Mart is also entitled to summary judgment on Plaintiff’s derivative UCL claim. *Barrionuevo v. Chase Bank, N.A.*, 2013 WL 4103606, at *6 (N.D. Cal. Aug. 12, 2013) (“Where a court grants summary judgment on predicate claims, the related UCL claims must also fail.”). However, as explained above, Wal-Mart is not entitled to summary judgment on Plaintiff’s California Labor Code claims. Thus, Wal-Mart is not entitled to summary judgment on Plaintiff’s UCL claim. Consequently, the Court DENIES Wal-Mart’s motion for partial summary judgment on Plaintiff’s UCL claim.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Wal-Mart’s motion for partial summary judgment.

**IT IS SO ORDERED.**

Dated: September 28, 2018

LUCY H. KOH
United States District Judge