UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RODERICK MAGADIA,<br><br>    Plaintiff,<br><br>v.<br><br>WAL-MART ASSOCIATES, INC., et al.,<br><br>    Defendants. | Case No. 17-CV-00062-LHK<br><br>**ORDER DENYING MOTION TO DECERTIFY MEAL PERIOD CLASS**<br><br>Re: Dkt. No. 132 |

Plaintiff Roderick Magadia ("Plaintiff") brings a class action against Defendants Wal-Mart Stores, Inc. and Wal-Mart Associates, Inc. (collectively, "Wal-Mart") that alleges that Wal-Mart denies its employees adequate meal period premiums in violation of California Labor Code § 226.7. In January 2018, the Court certified three classes: the meal period class, the OVERTIME/INCT wage statement class, and the final wage statement class. Now, Wal-Mart moves to decertify the meal period class. Having considered the parties' submissions, the relevant law, and the record in this case, the Court hereby DENIES Wal-Mart's motion to decertify the meal period class.

**I.     BACKGROUND**

    **A. Factual Background**

Wal-Mart is a national retailer with locations throughout the United States. ECF No. 84 ("Class Cert. Order"). Plaintiff worked as a non-exempt employee at a Wal-Mart store in San Jose, California from June 17, 2008 to September 16, 2016. *Id.*

The California Labor Code provides that when an employer fails to provide a meal period to an employee "in accordance with [California] law," the employer must pay the employee "one additional hour of pay at the employee's regular rate of compensation." Cal. Lab. Code § 226.7(c). That additional hour of pay is referred to as a "meal period premium." Under California law, "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." Cal. Lab. Code § 512(a).[1] Although Wal-Mart pays an employee a meal period premium whenever Wal-Mart fails to provide a meal period within the first five hours of the employee's work day, Plaintiff contends that Wal-Mart's meal period premiums are inadequate under California Labor Code § 226.7(c). Opp. at 6.

In order to provide compliant meal periods, Wal-Mart has a policy of providing employees a 30-minute meal period within the employee's first five work hours. ECF No. 137-4, Ex. A, Deposition of Todd Stokes ("Stokes Dep.") at 35. Wal-Mart maintains an Exception Management System ("EMS") that generates a "meal exception" notification each time an employee takes a late meal period or fails to take a meal period. *Id.* at 44. Then, Wal-Mart automatically pays the employee an additional hour of pay at the employee's base rate of pay. *Id.*; *see also* ECF No. 132-1, Ex. B., Deposition of Victoria Moore ("Moore Dep.") at 21–24 ("The way the system works is that if there's a meal exception in the system, there's a premium with it.").

Later, a Wal-Mart human resources ("HR") official or manager logs into the EMS database, reviews any meal exception notifications, and meets with the employee to determine why the exception occurred. Moore Dep. at 21, 26. In general, that meeting must occur within 14

---

[1] Not relevant here, the statute further provides that "if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee." Cal. Lab. Code § 512(a).

2
Case No. 17-CV-00062-LHK
ORDER DENYING MOTION TO DECERTIFY MEAL PERIOD CLASS

days of the meal exception. *Id.* at 23. In most cases, the HR official or manager then completes a California Rest Break/Meal Period Investigation Worksheet ("Investigation Worksheet"). *Id.* at 42; *accord* ECF No. 143-1, Declaration of Victoria Moore ("Moore Decl."), ¶ 3.

"Investigating managers" must complete Step 1 and Step 2 of the Investigation Worksheet. *See* ECF No. 132-2, Ex. 1 (Investigation Worksheet from California Wal-Mart store). At Step 1, the investigating manager must "[a]sk the associate and note in their words the reason a timely, full, uninterrupted rest break or meal period was not taken." *Id.* At Step 2, the investigating manager must "[s]elect the description . . . that best illustrates the reason" for the meal period exception. *Id.* There are two possible descriptions, either "Associate alleges they voluntarily failed to take a timely, full, uninterrupted . . . meal period" or "Associate alleges they involuntarily failed" to take a meal period. *Id.* In addition, the investigating manager must select an EMS code. If the meal period exception was voluntary, the investigating manager selects either "Associate Initiated Customer Support" or "Associate Initiated Without Management Approval." *Id.* If the meal period exception was involuntary, the investigating manager selects the EMS code "Manager Directed – No Coverage/For Customer Support." *Id.*; *see also* Moore Decl. ¶ 8. Either the investigating manager or an HR official then enters the relevant code into the EMS database. Moore Dep. at 68.

In addition, Wal-Mart in some circumstances conducts a "wage and hour investigation," which is "handled by someone outside the facility or in partnership with the facility." *Id.* at 62. According to the Investigation Worksheet, an investigating manager should initiate that wage and hour investigation "[i]f the associate alleges interference with ability to take a rest break or meal period." ECF No. 132-2, Ex. 1. In other circumstances, Wal-Mart will investigate exceptions coded as "Manager Directed" at the "market level." Moore Dep. at 125:4–10. Wal-Mart inputs the results of that "market level" investigation into the EMS database. Moore Decl. ¶ 6. Regardless of the result of any investigation, Wal-Mart does not revoke or withhold the payment of a meal period premium. Moore Dep. at 62:7–9 ("The investigation process is totally separate from the meal exception in the system and the meal premium that's been paid . . . or that will be

3

paid.").

**B. Procedural History**

Plaintiff filed this putative class action in the Superior Court for the County of Santa Clara on December 2, 2016. *See* ECF No. 1-1 ("Compl."). Plaintiff's complaint alleges causes of action for (1) violation of California Labor Code §§ 226.7 and 512; (2) violation of California Labor Code § 226(a); (3) violation of the Private Attorney Generals Act, Cal. Lab. Code § 2698, *et seq.*; and (4) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq. Id.* On January 5, 2017, Wal-Mart removed the action to this Court and alleged jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). *See* ECF No. 1. On February 2, 2017, Wal-Mart filed an answer to Plaintiff's complaint. ECF No. 19.

On October 19, 2017, Plaintiff moved for class certification. ECF No. 60. On November 20, 2017, Wal-Mart filed its opposition. ECF No. 75. On December 18, 2017, Plaintiff filed his reply. ECF No. 79.

On January 9, 2018, the Court granted Plaintiff's motion for class certification. Class Cert. Order. The Court certified three classes:

> **Meal Period Regular Rate Class:** All current and former California non-exempt retail store employees of Wal-Mart who received non-discretionary remuneration, including "MYSHARE INCT," and was paid any meal period premium payments in the same period that the non-discretionary remuneration was earned, at any time between December 2, 2012, through the present.
>
> **OVERTIME/INCT Wage Statement Class:** All current and former California non-exempt employees of Wal-Mart who received "OVERTIME/INCT," at any time between December 2, 2015, through the present.
>
> **Final Wage Statement Class**: All former non-exempt employees who worked for Wal-Mart in the State of California and whose employment terminated (whether voluntarily or involuntarily) at any time from December 2, 2015 to the present.

*Id.* at 22.

On January 26, 2018, Wal-Mart filed a petition with the Ninth Circuit for permission to appeal the Court's class certification order. ECF No. 89. On February 22, 2018, the Ninth Circuit denied Wal-Mart's petition. ECF No. 94.

On October 30, 2017, Plaintiff moved for partial summary judgment on Plaintiff's claim under California's Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698–2699.5. ECF No. 67. On January 16, 2018, Wal-Mart filed its opposition. ECF No. 86. On February 5, 2018, Plaintiff filed his reply. ECF No. 91. On May 11, 2018, the Court granted Plaintiff's motion for partial summary judgment on Plaintiff's PAGA claim. ECF No. 121. On June 25, 2018, the Court denied Wal-Mart's request for leave to file a motion for reconsideration. ECF No. 130.

On July 26, 2018, Wal-Mart moved for partial summary judgment on Plaintiff's three remaining claims. ECF No. 131. On August 16, 2018, Plaintiff filed his opposition. ECF No. 139. On August 23, 2018, Wal-Mart filed its reply. ECF No. 142. On September 27, 2018, the Court denied Wal-Mart's motion for partial summary judgment. ECF No. 157.

On July 26, 2018, Wal-Mart moved for decertification of the meal period class. ECF No. 132 ("Mot."). On August 16, 2018, Plaintiff filed his opposition. ECF No. 138 ("Opp."). On August 23, 2018, Wal-Mart filed its reply. ECF No. 143 ("Reply").

On August 23, 2018, the parties filed a joint discovery letter brief, in which Plaintiff moved to strike corrections to the deposition of Wal-Mart's 30(b)(6) witness, Victoria Moore. ECF No. 141. On September 6, 2018, Magistrate Judge Nathanael Cousins denied Plaintiff's motion to strike the deposition corrections. ECF No. 149. Then, on October 1, 2018, Plaintiff filed objections to evidence offered in support of Wal-Mart's reply brief. ECF No. 159. On October 9, 2018, Wal-Mart filed a response to Plaintiff's objections. ECF No. 163.

## II. LEGAL STANDARD

"Even after a certification order is entered, the [Court] remains free to modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 546 (9th Cir. 2013) ("Rule 23 provides district courts with broad authority at various stages in the litigation to revisit class certification determinations."). On a motion for decertification, Plaintiff continues to "bear[] the burden of demonstrating that the requirements of Rules 23(a) and

1  (b) are met.'" *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011) (internal quotation marks omitted).

Federal Rule of Civil Procedure 23, which governs class certification, has two sets of distinct requirements that a plaintiff must establish before the Court may certify a class. Plaintiff must satisfy all of the requirements of Rule 23(a) and at least one of the prongs of Rule 23(b).

Under Rule 23(a), the Court may certify a class only where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Courts refer to these four requirements, which all must be satisfied to maintain a class action, as "numerosity, commonality, typicality and adequacy of representation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012).

In addition to meeting the requirements of Rule 23(a), the Court must also find that Plaintiff has satisfied "through evidentiary proof" one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *see also Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623, 631 (9th Cir. 2018) ("Inadmissibility alone is not a proper basis to reject evidence submitted in support of class certification."). As relevant here, the Court may certify a Rule 23(b)(3) class if it finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). On the whole, "a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 466. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* Within the framework of Rule 23, the Court

6
Case No. 17-CV-00062-LHK
ORDER DENYING MOTION TO DECERTIFY MEAL PERIOD CLASS

1 ultimately has broad discretion over whether to certify or decertify a class. *United Steel Workers*

2 *Int'l Union v. ConocoPhillips Co.*, 593 F.3d 802, 809–10 (9th Cir. 2010).

### III. DISCUSSION

On January 9, 2018, the Court certified the meal period class. Class Cert. Order at 12–16. Wal-Mart argued that Plaintiff had not met Rule 23(b)(3)'s predominance requirement because Wal-Mart's payment of a meal period premium is not connected to whether the receiving employee was legally entitled to a meal period premium. *See id.* at 13. That is because Wal-Mart automatically pays an employee a meal period premium when a meal period exception occurs regardless of the reason for the exception. However, the Court held that the Court could use Wal-Mart's own Investigation Worksheets to evaluate Wal-Mart's liability. *Id.* at 14. The Court relied on the testimony of Wal-Mart's "regional HR director" Todd Stokes, who explained that the Investigation Worksheets "document why each meal exception happened." *Id.* at 15. As a result, the Court concluded, those records "'can be used to extrapolate' whether each meal period premium that was paid to a class member was prompted by an actual failure by Wal-Mart to provide a compliant meal period." *Id.* (citing *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 966 (9th Cir. 2013)). Thus, the Court certified the meal period class under Rule 23(b)(3).

After certification, the parties continued discovery, which included the collection of all relevant meal period Investigation Worksheets from 50 California Wal-Mart stores. ECF No. 132-1 ("Winn Decl."), ¶ 3. Wal-Mart also produced a spreadsheet containing its Meal Exception Reports, which includes 443,681 meal period exceptions. ECF No. 161 ¶ 5. Wal-Mart noticed Victoria Moore as a 30(b)(6) witness to testify about Wal-Mart's meal period investigations. Moore Dep. at 1. Although the parties do not specify the total number of Investigation Worksheets the parties collected, Wal-Mart completes an Investigation Worksheet for almost all meal period exceptions. Moore Decl. ¶ 3 (stating that Wal-Mart completes an Investigation Worksheet "[u]nless the reason the associate provides for the exception is a mere timekeeping error (and sometimes even in those cases)").

In its motion for decertification, Wal-Mart contends that Wal-Mart's investigations of meal

7

period exceptions are "focused on documenting associate allegations," not on determining "who is legally entitled to a meal premium." Mot. at 6. Wal-Mart also contends that Investigation Worksheets produced in discovery show that the Investigation Worksheets "are not reliable for purposes of determining whether [Wal-Mart] prevented an associate from taking a proper meal period." *Id.* at 9. Wal-Mart thus contends that "individualized inquiries" will predominate over common questions and that class certification under Rule 23(b)(3) is not warranted. *Id.* at 13.

In opposition, Plaintiff argues that Wal-Mart's own testimony establishes that Wal-Mart conducts "significant and detailed investigations" of meal period exceptions and logs the results. Opp. at 5. Plaintiff also contends that Wal-Mart may not "discredit [its] own documents" with a sample of 24 Investigation Worksheets out of 443,681 meal period exceptions. *Id.*

For the reasons below, the Court DENIES Wal-Mart's motion for decertification. The Court determined in its class certification order that with respect to Wal-Mart's liability to class members, common questions predominated over individualized inquiries because Wal-Mart's own records "document why each meal exception happened." Class Cert. Order at 14–15. The evidence submitted with the instant motion continues to demonstrate that Wal-Mart's own records—specifically, the EMS codes generated after a meal period exception investigation—enable the Court to evaluate Wal-Mart's liability to class members "on a class-wide basis," which warrants certification. *Abdullah*, 731 F.3d at 964.

### A. Legal Standard

"The Rule 23(b)(3) predominance inquiry" is meant to "tes[t] whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The Ninth Circuit has held that "there is clear justification for handling the dispute on a representative rather than an individual basis" if "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). As the U.S. Supreme Court recently explained, "[t]he predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common,

8

Case No. 17-CV-00062-LHK
ORDER DENYING MOTION TO DECERTIFY MEAL PERIOD CLASS

aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 William Rubenstein, Newberg on Class Actions, § 4:49 at 196–97 (5th ed. 2012)). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* (quoting 7AA Charles Wright et al., Federal Practice and Procedure § 1778 (3d ed. 2005)). At the class certification stage, a plaintiff "need not, at that threshold, prove that the predominating question will be answered in their favor." *Amgen*, 568 U.S. at 468. With these principles in mind, the Court turns to Wal-Mart's motion.

**B. Analysis**

Plaintiff's meal period claim is brought under California Labor Code § 226.7, which an employer satisfies if the employer "relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040 (2012); *see also Boyd v. Bank of Am. Corp.*, 109 F. Supp. 3d 1273, 1305 (C.D. Cal. 2015) (explaining that a violation of § 226.7 occurs when "an employer pressured or coerced plaintiff to skip otherwise provided meal breaks"); *Rodriguez v. Taco Bell Corp.*, 896 F.3d 952, 956 (9th Cir. 2018) ("The California Supreme Court's decision in *Brinker* provides the authoritative standard to be applied."). Thus, whether Wal-Mart offered its employees "a reasonable opportunity to take an uninterrupted 30-minute break, and [did] not impede or discourage them from doing so" is a legal question common to all class members. *Brinker*, 43 Cal. 4th at 1040. In the class certification order, the Court concluded that because Wal-Mart investigates and documents why each meal exception happened, "it would not be difficult to determine [Wal-Mart's] liability to individual plaintiffs." Class Cert. Order at 15 (citing *Abdullah*, 731 F.3d at 966).

**1. Investigation Worksheets and EMS Codes**

In this motion, Wal-Mart contends that Wal-Mart's Investigation Worksheets and the EMS

9

codes Wal-Mart uses to categorize meal period exceptions are not reliable tools to resolve Wal-Mart's liability to class members because "the process that leads to the EMS coding of meal period exceptions is focused on documenting associate allegations and identifying potential risks," rather than on identifying whether the allegation is true. Mot. at 6–7. Wal-Mart also provides evidence showing that in some cases, the EMS code in Wal-Mart's EMS database does not reflect the reason for the exception that was listed on the corresponding Investigation Worksheet. Mot. at 9–13. In Wal-Mart's view, that evidence illustrates why the EMS codes are unreliable indicators of Wal-Mart's liability and why individualized inquiries are necessary to determine why each meal period exception occurred. *Id.*

To support its theory, Wal-Mart cites to three Northern District of California cases in which the courts declined to certify meal period exception classes, although none helps Wal-Mart. In *Ochoa*, the plaintiffs attempted to rely on crew member time records as common proof of the employer's liability for missed meal periods. *Ochoa v. McDonald's Corp.*, No. 14-CV-02098-JD, 2016 WL 3648550, at *7 (N.D. Cal. July 7, 2016). In *Ochoa*, United States District Judge James Donato rejected that argument because mere time records could only demonstrate whether employees took meal breaks, not whether the employer had denied the meal breaks. *Id.*; *see also Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 641 (N.D. Cal. 2010) (rejecting plaintiff's attempt to rely on time records as evidence of employer's liability because such records "would not answer the question why the employees did not take breaks").

In *Wilson*, United States Magistrate Judge Elizabeth D. Laporte denied class certification because the evidence rebutted the plaintiff's sole theory that the defendant employer lacked a uniform meal period policy. *Wilson v. TE Connectivity Networks, Inc.*, No. 14-CV-04872-EDL, 2017 WL 1758048, at *7 (N.D. Cal. Feb. 9, 2017).

Finally, in *Guifu Li*, this Court denied certification of a meal period class because absent "a uniform lunch policy," evaluation of the plaintiffs' claims would "require a heavily factual inquiry into the particular circumstances of each putative class member." *Guifu Li v. A Perfect Franchise, Inc.*, No. 10-CV-01189-LHK, 2011 WL 4635198, at *13 (N.D. Cal. Oct. 5, 2011).

*Wilson* and *Guifu Li* are inapplicable because Plaintiff does not argue that Wal-Mart maintained an unlawful uniform lunch policy (or lacked a lawful policy). In fact, the parties agree that Wal-Mart maintains a uniform policy of paying any employee who misses a meal period premium an additional hour of pay at the employee's hourly pay rate. ECF No. 157 at 5.

That leaves *Ochoa* and *Joe's Crab Shack*, which both illustrate why common questions predominate in the instant case. In both *Ochoa* and *Joe's Crab Shack*, district courts denied class certification because the plaintiffs' time records bore no relationship to the employer's liability for missed meal periods, which meant that individualized inquiries would predominate. *Ochoa*, 2016 WL 3648550, at *7; *Joe's Crab Shack*, 271 F.R.D. at 641. Here, by contrast, Plaintiff relies on Wal-Mart's own Investigation Worksheets and the resulting EMS codes, which appear to answer *why* class members missed meal periods and thus obviate the need for a "heavily factual inquiry into the particular circumstances" of each class member. *Guifu Li*, 2011 WL 4635198, at *13. Wal-Mart's 30(b)(6) witness Victoria Moore testified that Wal-Mart completes an Investigation Worksheet anytime "there was an actual meal period exception." Moore Dep. at 55:18–19; *see* ECF No. 163-3 at 2 (errata to Moore Dep.); Stokes Dep. at 44:11–25 (stating that "an investigation . . . is done" after each meal period exception).

Wal-Mart relies heavily on a declaration that Wal-Mart submitted only with its reply brief, in which Moore declared that the Investigation Worksheet merely "documents what the associate said" about the reasons for the meal period exception. Moore Decl. ¶ 4.[2] Yet Wal-Mart offers no reason to suggest that associates provide false reasons for meal period exceptions. Moreover, Moore's own testimony was that an investigating manager is expected "to reconcile any conflicts in the facts with respect to a meal exception." Moore Dep. at 45:1–5.

---

[2] Plaintiff objects to several paragraphs in Moore's declaration. ECF No. 159. Civil Local Rule 7-3(d)(1) permits a non-movant to object to new evidence submitted in the non-movant's reply within seven days after the reply is filed. Here, Plaintiff missed that deadline and then some, as he filed his objections over a month after Wal-Mart filed its reply brief. *Id.* Regardless, Plaintiff's objections lack merit because "class-certification-stage proof" is not limited to admissible evidence. *Sali*, 889 F.3d at 631.

11
Case No. 17-CV-00062-LHK
ORDER DENYING MOTION TO DECERTIFY MEAL PERIOD CLASS

The investigation following a meal period exception also assigns a reason for each meal period exception. *See id.* at 43:1–2 (Moore explaining that "before we're doing the investigation, we don't know if it's a violation or not"). To complete an Investigation Worksheet, a Wal-Mart investigating manager interviews the associate that had the meal period exception and selects one of three codes on the Investigation Worksheet. ECF No. 132-2, Ex. 1 (example Investigation Worksheet). If the meal period exception was voluntary, the investigating manager selects either of two codes, "Associate Initiated Without Management Approval" or "Associate Initiated Customer Support." *Id.* If the meal period exception was involuntary, the investigating manager selects the third code, "Manager Directed – No Coverage/For Customer Support." *Id.* Wal-Mart then enters the relevant code into the EMS database. Moore Dep. at 68.

When an investigating manager completing the Investigation Worksheet selects the code "Manager Directed – No Coverage/For Customer Support," the investigation "automatically escalate[s] to market level," which means that a person outside the facility investigates the exception. Moore Dep. at 109–10. The result of that market-level investigation is then coded into the EMS database. *Id.* at 125.[3]

Wal-Mart argues that Wal-Mart's purpose when investigating meal period exceptions is not to determine Wal-Mart's legal liability, but rather intended to "creat[e] visibility into risk indicators for meal exceptions." Mot. at 4. However, regardless of *why* Wal-Mart internally conducts the investigations, Wal-Mart expects an investigating manager "to determine what happened." Moore Dep. at 45. Wal-Mart further expects that the results of its investigations will be "true and accurate." Moore Dep. at 110. Thus, given Wal-Mart's uniform approach to

---

[3] Plaintiff also notes that when an associate alleges "interference with ability" to take a meal period, the investigating manager is instructed to call Wal-Mart's wage and hour hotline. *See* ECF No. 132-2, Ex. 1 (Investigation Worksheet). The ensuing wage and hour investigation involves multiple steps, including witness interviews and review of video footage. ECF No. 161, Declaration of Larry Lee ("Lee Decl."), Ex. 61 at 5. However, although that "investigation file should be maintained in a locked file cabinet in the facility manager's office," *id.* at 7, Moore declared that the results are not coded into the EMS database. Moore Decl. ¶¶ 14, 16. Plaintiff thus does not appear to attempt to rely on those wage and hour investigation files as common proof. *See* Opp. at 12 (contending that Plaintiff intends to prove Wal-Mart is liable based on EMS codes for meal exceptions).

12
Case No. 17-CV-00062-LHK
ORDER DENYING MOTION TO DECERTIFY MEAL PERIOD CLASS

determining and logging the reasons for meal period exceptions, "it [will] not be difficult to determine [Wal-Mart's] liability to individual plaintiffs." *Abdullah*, 731 F.3d at 966–67.

Despite that evidence, Wal-Mart attacks the accuracy of its own process with a sample of 24 Investigation Worksheets, out of 443,681 meal period exceptions, that Wal-Mart contends include incident descriptions that are inconsistent with the corresponding codes in Wal-Mart's EMS database. Mot. at 9–13. Wal-Mart also includes approximately 100 additional Investigation Worksheets with its reply brief, but does not contend that the corresponding EMS codes are inconsistent with any of those Investigation Worksheets. ECF No. 143-2, Ex. B. Wal-Mart asserts that some worksheets are "either incomplete or too vague to make any determinations about what actually happened." Mot. at 12 (emphases removed). Thus, Wal-Mart contends, the EMS codes do not reflect a reliable "legal conclusion" about Wal-Mart's liability. Reply at 9.

However, whether those EMS codes reflect a *legal* conclusion about Wal-Mart's liability is immaterial at the class certification stage, at which the Court is not called upon "to determine whether class members could actually prevail on the merits of their claims." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011). Rather, the purpose of class certification is "to select the metho[d] best suited to adjudication of the controversy fairly and efficiently." *Amgen*, 568 U.S. at 460 (alteration in original) (internal quotation marks omitted).

Moreover, Wal-Mart provides no support for its suggestion that fewer than 24 examples of inconsistencies between EMS codes and Investigation Worksheets, out of 443,681 meal period exceptions, show that individualized inquiries predominate. Wal-Mart's own 30(b)(6) witness testified that Wal-Mart investigates almost every meal period exception, codes those results into the EMS database, and expects the results to be "true and accurate." Moore Dep. at 55, 110. Thus, Plaintiff has shown that Wal-Mart has *already completed* individual inquiries into the meal period exceptions, and that the EMS codes represent Wal-Mart's conclusions.

Here, Plaintiff seeks to rely on the EMS codes that result from Wal-Mart's investigations, *not* on the associate's explanation for a meal period exception listed on Step 1 of an Investigation Worksheet. *See* Opp. at 12 (stating that Plaintiff seeks to prove that Wal-Mart is at fault for any

13

1 meal period exceptions coded Associate Initiated Customer Support or Manager Directed – No Coverage/For Customer Support). Thus, Wal-Mart's suggestion that associate explanations on the Investigation Worksheets—which, unlike the EMS codes, are not the end result of Wal-Mart's investigations—are "incomplete" or "vague" is irrelevant. Wal-Mart's EMS codes enable classwide proof of whether or not Wal-Mart was at fault for individual meal period exceptions. *See Mendez v. C-Two Grp., Inc.*, No. 13-CV-05914-HSG, 2015 WL 8477487, at *2 (N.D. Cal. Dec. 10, 2015) (certifying class under Rule 23(b)(3) where common questions of law were "capable of classwide resolution").

Of course, Wal-Mart is not precluded from challenging at trial whether Wal-Mart's records actually answer "the predominating question . . . in [Plaintiff's] favor." *Amgen*, 568 U.S. at 468; *see Williams v. Jani-King of Phila., Inc.*, 837 F.3d 314, 322 (3d Cir. 2016) (explaining that at the class certification stage, the court is called on to determine whether "the common documents . . . contain the types of evidence" used to resolve the relevant legal question, not whether those documents in fact prove plaintiff's case). At this stage, Plaintiff has satisfied his burden to show that Wal-Mart's EMS codes "facilitate common proof on the otherwise individualized issue[]" of Wal-Mart's liability to class members. *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). Thus, the Court "conclude[s] that the [class's] claims will 'prevail or fail in unison,' as required by Rule 23(b)(3)." *Abdullah*, 731 F.3d at 967 (quoting *Amgen*, 568 U.S. at 460).

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Wal-Mart's motion for decertification.

**IT IS SO ORDERED.**

Dated: November 13, 2018

_____
LUCY H. KOH
United States District Judge

14
Case No. 17-CV-00062-LHK
ORDER DENYING MOTION TO DECERTIFY MEAL PERIOD CLASS