Aaron T. Winn (State Bar No. 229763)
atwinn@duanemorris.com
750 B Street, Suite 2900
San Diego, CA 92101
(619) 744-2222

Natalie F. Hrubos, 307255, *Admitted Pro Hac Vice*
nfhrubos@duanemorris.com
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1962

**DUANE MORRIS LLP**
Attorneys for Defendants
Wal-Mart Associates, Inc. and Wal-Mart Stores, Inc.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODERICK MAGADIA, individually and on behalf of all those similarly situated,<br><br>Plaintiff,<br>v.<br><br>WAL-MART ASSOCIATES, INC. a Delaware corporation; WAL-MART STORES, INC, a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 5:17-cv-00062-LHK<br><br>**WALMART'S POST-TRIAL BRIEF** |

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 6

THE MEAL PERIOD PREMIUM CLAIMS ........................................................................ 6

THE WAGE STATEMENT CLAIMS .................................................................................. 7

    A.    "Knowing and intentional" means what it says. ............................................. 8

    B.    Walmart acted in good faith to comply with section 226(a)(9). ..................... 9

    C.    Walmart acted in good faith to comply with section 226(a)(6). ................... 10

    D.    Magadia has not established injury. ............................................................. 11

THE PAGA CLAIMS ALSO FAIL ..................................................................................... 14

MAGADIA'S EVIDENCE DOES NOT SUPPORT ANY MONETARY AWARD ........... 16

CONCLUSION .................................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Aguirre v. Genesis*
  2013 WL 10936035 (C.D. Cal. Dec. 30, 2013) ............................................................. 15

*Apodaca v. Costco Wholesale Corp.*
  No. CV12–5664 DSF (Ex), 2014 WL 2533427 (C.D. Cal. Jun. 5, 2014) ........................ 8

*Cotter v. Lyft, Inc.*
  193 F. Supp. 3d 1030 (N.D. Cal. 2016) .................................................................. 15-16

*F.C.C. v. Fox Television Stations, Inc.*
  567 U.S. 239 (2012) ...................................................................................................... 9

*Fobroy v. Video Only, Inc.*
  2014 WL 6306708 (N.D. Cal. Nov. 14, 2014) ............................................................. 15

*Gen. Elec. Co. v. Joiner*
  522 U.S. 136 (1997) .................................................................................................... 17

*Gofron v. Picsel Techs., Inc.*
  804 F. Supp. 2d 1030 (N.D. Cal. 2011) ....................................................................... 15

*Guifu Li v. A Perfect Day Franchise, Inc.*
  2012 WL 2236752 (N.D. Cal. June 15, 2012) (Koh, J.) .............................................. 15

*Harris v. Best Buy Stores, L.P.*
  2018 WL 984220 (N.D. Cal. Feb. 20, 2018) ............................................................... 14

*Lierboe v. State Farm Mut. Auto. Ins. Co.*
  350 F.3d 1018 (9th Cir. 2003) ....................................................................................... 7

*Lumens Co. v. GoEco LED LLC*
  No. SACV1401286CJCDFMX, 2018 WL 1942768 (C.D. Cal. Jan. 3,
  2018) ........................................................................................................................... 17

*Mazza v. Am. Honda Motor Co.*
  666 F.3d 581 (9th Cir. 2012) ....................................................................................... 12

*Mie Yang v. Francesca's Collections, Inc.*
  2018 WL 984637 (N.D. Cal. Feb. 20, 2018) ............................................................... 13

*Novoa v. Charter Commc'ns, LLC*
  100 F. Supp. 3d 1013 (E.D. Cal. 2015) ................................................................... 9, 13

*Reber v. AIMCO/Bethesda Holdings, Inc.*
    2008 WL 4384147 (C.D. Cal. Aug. 25, 2008) .................................................................. 9

*Ricaldai v. US Investigations Servs., LLC*
    878 F. Supp. 2d 1038 (C.D. Cal. 2012) ......................................................................... 9

*Serrano v. Swissport NA., Inc.*
    2013 WL 12145614 (C.D. Cal. June 3, 2013) ............................................................. 16

*Shook v. Indian River Transp. Co.*
    716 F. App'x 589 (9th Cir. 2018) ................................................................................. 15

*Spokeo, Inc. v. Robins*
    136 S. Ct. 1540 (2016) ................................................................................................. 12

*State Farm Mut. Auto. Ins. Co. v. Campbell*
    538 U.S. 408 (2003) ..................................................................................................... 16

*Stores, Inc.*, No. 12-cv-00703- GEB-CKD, 2014 U.S. Dist. LEXIS 2207, *19
    (E.D. Cal. Jan. 8, 2014) ................................................................................................ 9

*Suarez v. Bank of Am. Corp.*
    2018 WL 3659302 (N.D. Cal. Aug. 2, 2018) .............................................................. 13

*Tourgeman v. Nelson & Kennard*
    900 F.3d 1105 (9th Cir. 2018) ..................................................................................... 17

*Tran v. Companion Med Trans, LLC*
    2016 WL 89251469 (C.D. Cal. Jan. 25, 2016) ........................................................... 15

*United States v. Bajakajian*
    524 U.S. 321 (1998) ..................................................................................................... 16

*United States v. Citrin*
    972 F.2d 1044 (9th Cir. 1992) ..................................................................................... 16

*Villalpando v. Exel Direct Inc.*
    No. 12-CV-04137-JCS, 2015 WL 5179486 (N.D. Cal. Sept. 3, 2015) ........................... 8

*Wentz v. Taco Bell Corp.*
    2012 WL 6021367 (E.D. Cal. Dec. 4, 2012) ............................................................... 15

*Willner v. Manpower Inc.*
    35 F. Supp. 3d 1116 (N.D. Cal. 2014) ........................................................................... 8

*Woods v. Vector Mktg. Corp.*
    2015 WL 2453202 (N.D. Cal. May 22, 2015) .............................................................. 9

*Wright v. Adventures Rolling Cross Country, Inc.*
   No. C-12-0982 EMC, 2013 WL 1758815 (N.D. Cal. Apr. 24, 2013) .............................. 8

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*
   259 F.3d 1101 (9th Cir. 2001) ...................................................................................... 17, 19

**California Cases**

*Amalgamated Transit Union, Local 1756, AFL-CIO v. Sup. Ct.*
   46 Cal. 4th 993 (2009) ...................................................................................................... 14

*Amaral v. Cintas Corp. No. 2*
   163 Cal. App. 4th 1157 (2008) ..................................................................................... 9, 15

*Arias v. Superior Court*
   46 Cal. 4th 969 (2009) ...................................................................................................... 14

*Brinker Rest. Corp. v. Superior Court*
   53 Cal.4th 1004 (2012) ....................................................................................................... 6

*Canales v. Wells Fargo Bank*
   23 Cal. App. 5th 1262, 1269-72 (2018) ............................................................................ 9

*Home Depot U.S.A., Inc. v. Super. Ct.*
   191 Cal. App. 4th 210 (2010) ........................................................................................... 16

*Kim v. Reins Int'l Cal., Inc.*
   18 Cal. App. 5th 1052, 1058 (2017), review granted, 413 P.3d 1132
   (2018) .................................................................................................................................. 14

*Lopez v. Fraint & Assoc., LLC*
   15 Cal. App. 5th 773 (2017) ............................................................................................. 14

*Raines v. Coastal Pac. Food Distrib. Inc.*
   23 Cal. App. 5th 667 (2018) ............................................................................................. 14

*Thurman v. Bayshore Transit Mgmt., Inc.*
   203 Cal. App. 4th 1112 (2012) ......................................................................................... 15

*Williams v. Super. Ct.*
   3 Cal. 5th 531, 558 (2017) ........................................................................................... 14-15

**State Statutes**

Cal. Code Regs. Tit. 8, § 13520 ............................................................................................. 9

Cal. Lab. Cod § 2699(f) ........................................................................................................ 16

Cal. Lab. Code § 203 ........................................................................................................... 7-8

Cal. Lab. Code § 226 ............................................................................................................. 8, 13, 15

Cal. Lab. Code § 226 ..................................................................................................................... 14

Cal. Lab. Code § 226(a) ............................................................................................... 6, 8-9, 11, 13

Cal. Lab. Code § 226(a)(6) ......................................................................................................10-11

Cal. Lab. Code § 226(a)(9) .......................................................................................................9-10

Cal. Lab. Code § 226(e) ............................................................................................................. 6-8

Cal. Lab. Code § 226(e)(2)(B) ...................................................................................................... 12

Cal. Lab. Code § 226(e)(3) ............................................................................................................. 8

Cal. Lab. Code § 226.7 .......................................................................................................... 6, 14

Cal. Lab. Code § 2699(c) ............................................................................................................... 14

Cal. Lab. Code § 2699(e)(2) .......................................................................................................... 15

Cal. Lab. Code § 2699.3(a) ........................................................................................................... 16

**Rules**

Fed. R. Civ. P. 26(a) ...................................................................................................................... 17

Fed. R. Civ. P. 26(a)(2)(B)(ii) ................................................................................................. 16, 19

Fed. R. Civ. P. 37(c)(1) ........................................................................................................... 17, 19

Fed. R. Evid. 702 .................................................................................................................... 6, 17

**Other Authorities**

*Fabio Canales et al. v. Wells Fargo Bank, N.A.*
   Case No. B276127 (2018) .......................................................................................................... 10

# INTRODUCTION

Magadia cannot prevail at trial based on argument and allegation. He must provide competent evidence. And he hasn't. In fact, he admits that there is no evidence that he "actually suffered an unlawful meal period exception." TT. 582:6-10. That ends the meal period premium claim.

Magadia's wage statement claims also fail because Magadia did not prove that Walmart knowingly and intentionally violated Labor Code section 226(e). To the contrary, it is undisputed that Walmart's approach is consistent with the California Court of Appeal's interpretation of Section 226(a). That's hardly evidence of a "knowing and intentional" violation. Magadia also failed to prove that he was harmed as a result of receiving allegedly non-complaint wage statements. In fact, he said the exact opposite—that he was *not* injured. TT 99:14-19. Nor is he aware of any class member who suffered any injury. TT 98:15-99:1. These shortcomings sink the wage statement claims. And because Magadia has not carried his burden for any of his underlying claims, his derivative claims for PAGA penalties also fail.

Regardless, Magadia has not provided competent evidence to support any monetary award. There is no evidence of the number of purported violations for any of the various time periods, no evidence to show which class members would be entitled to penalties, and no evidence to show what those penalties would be. This foundational evidence is not optional. *See* Fed. R. Evid. 702. And because Magadia has failed to provide it, the Court should not award *any* penalties or damages.

# THE MEAL PERIOD PREMIUM CLAIMS

An employer only owes a meal period premium under Section 226.7 if it fails to provide an employee with an opportunity to take a proper meal period. *See Brinker Rest. Corp. v. Superior Court*, 53 Cal.4th 1004, 1034 (2012). Thus, as a threshold matter, Magadia was required to show that Walmart failed to provide him (and the class) with an opportunity to take a legally compliant meal period. He never made that showing. In fact, Plaintiffs' counsel does not dispute that Magadia failed to provide any

evidence that he (1) was unlawfully deprived of a meal break or (2) had any meal break exceptions coded as 1, 5, or 12 (the exception codes that are supposedly relevant for Plaintiffs' claims).  TT. 582:6-584:6.  Without that evidence, the meal period premium claim is dead.  *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (vacating the district court's certification of a stacking claim class because the named plaintiff had no stacking claim, and as such, "she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail").

Magadia's claim also fails because he did not prove that Walmart denied anyone the opportunity to take a meal break.  In fact, Walmart undisputedly builds meal breaks into each associate's schedule.  TT. 142:7-23, Exs. 4, 5.  The only other evidence—that Walmart asks associates to state whether they *allege* that a meal exception was voluntary or involuntary, and that Walmart codes the associate's response in its Exception Management System—does not show that anyone was actually denied a meal break.  TT. 305:15-308:12, 309:10-19, 528:9-11.  In fact, Walmart does not rely on the meal exception codes to determine who is entitled to a meal period premium; Walmart pays premiums for every exception, regardless of the reason (if any) that the associate gives for the exception.  TT. 311:13-24.

Because Magadia has failed to establish that he (or anyone else) was *actually* denied a meal break, his meal period premium claim fails.  As a result, his derivative claims for Section 203 waiting time penalties and PAGA penalties also fail.

# THE WAGE STATEMENT CLAIMS

To prevail on a claim for penalties under Section 226(e), Magadia must prove that (1) Walmart failed to furnish each class member with compliant wage statements; (2) the failure to do so was "knowing and intentional"; and (3) class members suffered a resulting injury.  Dkt. No. 184 at 6; Dkt. 185 at 15; Dkt. 197 at 11.

Prior to trial, the Court held that (1) Walmart was required to issue a compliant wage statement at the time of termination (issuing a bi-weekly statement was not enough); and (2) Walmart's description of its OVERTIME/INCT pay on its wage

statements should include hours and rates from *prior* pay periods.  Even if the Court sticks with those conclusions, Magadia was still required to prove that Walmart "knowing[ly] and intentional[ly]" violated the statute and that, as a result, Magadia and the class were injured.  Cal. Lab. Code § 226.

### A.    "Knowing and intentional" means what it says.

Magadia urges the Court to conclude that *any* violation of section 226(a) is knowing and intentional unless the error was something akin to a typo.  This unnatural construction renders "knowing and intentional" meaningless and violates one of the first tenants of statutory construction:  "a construction making some words surplusage is to be avoided."  *See Willner v. Manpower Inc.*, 35 F. Supp. 3d 1116, 1130-31 (N.D. Cal. 2014) (internal citations omitted).

Plaintiffs' neutering of the "knowing and intentional" element is also inconsistent with section 226(e)(3).  That subsection authorizes courts assessing the "knowing and intentional" question to consider whether the employer "has adopted and is in compliance with a set of policies, procedures, and practices that fully comply with this section."  Inviting courts to assess employer's policies, procedures, and practices to determine whether a violation is "knowing and intentional" confirms that "knowing and intentional" does not mean anything-other-than-a-typo.

Indeed, because Section 203 and Section 226 both contain a scienter requirement ("willfulness" and "knowing and intentional," respectively), courts often treat both standards the same and apply the same "good faith dispute" rule to both Section 226(e) and Section 203.[1]  This does not mean that every defense is a "good faith defense."

---

[1] *See, e.g., Apodaca v. Costco Wholesale Corp.*, No. CV12–5664 DSF (Ex), 2014 WL 2533427, *3 (C.D. Cal. Jun. 5, 2014) ("[w]here an employer has a good faith belief that it is not in violation of Section 226, any violation is not knowing and intentional"); *Wright v. Adventures Rolling Cross Country, Inc.*, No. C-12-0982 EMC, 2013 WL 1758815, at *9 (N.D. Cal. Apr. 24, 2013) ("There is no dispute by the parties that there is a comparable good faith defense for § 226 which, similar to § 203, requires knowing and intentional conduct."); *Villalpando v. Exel Direct Inc.*, No. 12-CV-04137-JCS, 2015 WL 5179486, at *37 (N.D. Cal. Sept. 3, 2015) ("The good faith defense that applies to claims under section 203 also applies to Claims asserted under section 226."); *Guilfoyle v. Dollar Tree*

1  Defenses that "are unsupported by any evidence, are unreasonable, or are presented in
2  bad faith, will preclude a finding of a 'good faith dispute.'"  CCR tit. 8, § 13520.

3  The authorities Magadia relies upon stress that ignorance of the law is no
4  defense.  That is consistent with the good faith dispute doctrine because ignorance of
5  the law is not a *reasonable* argument.  And Walmart has never claimed ignorance of the
6  law.  Rather, Walmart has shown—through its practices, policies, and procedures—that
7  it is aware of the law and that it deliberately and intentional tries to comply with the law.
8  *See, e.g.*, TT. 148:21-152:7, Exs. 300-306; *see also* sections B. and C, *infra*.

9  Unlike every case that Plaintiff has cited to date, Walmart's reading of the statute
10  is objectively reasonable because, as this Court has acknowledged, the California Court
11  of Appeal *agrees* with Walmart's reading of the statute.  *See* ECF No. 157 at 12 (citing
12  *Canales v. Wells Fargo Bank*, 23 Cal. App. 5th 1262, 1269-72 (2018)).  None of the
13  authorities Magadia cites are similar.[2]  And this Court's alternative interpretation does
14  not retroactively make Walmart's reading of the statute a "knowing and intentional"
15  violation.  *See* Cal. Code Regs. tit. 8, § 13520 ("The fact that a defense is ultimately
16  unsuccessful will not preclude a finding that a good faith dispute did exist.").  Adopting
17  such an approach would turn "knowing and intentional" on its head and improperly
18  penalize Walmart for an interpretation of the law for which Walmart lacked fair notice.
19  *See F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

20  **B.  Walmart acted in good faith to comply with section 226(a)(9).**

21  Section 226(a)(9) requires wage statements to include "all applicable hourly rates
22  in effect *during the pay period* and the corresponding number of hours worked at each

---

*Stores, Inc.*, No. 12-cv-00703- GEB-CKD, 2014 U.S. Dist. LEXIS 2207, *19 (E.D. Cal. Jan. 8, 2014) (same) (quoting *Ricaldai v. US Investigations Servs., LLC*, 878 F. Supp. 2d 1038, 1047 (C.D. Cal. 2012)); *Woods v. Vector Mktg. Corp.*, 2015 WL 2453202, at *3 (N.D. Cal. May 22, 2015) (Chen, J.) (collecting cases); *Reber v. AIMCO/Bethesda Holdings, Inc.*, 2008 WL 4384147, at *9 (C.D. Cal. Aug. 25, 2008); *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1194-96, 1201-04 (2008).

[2] *See, e.g., Novoa v. Charter Commc'ns, LLC,* 100 F. Supp. 3d 1013, 1029 (E.D. Cal. 2015) (employer's position that Labor Code 226(a) did not require pay period start dates was unreasonable).

hourly rate by the employee." Cal. Lab. Code § 226(a)(9). In an effort to comply with this requirement, Walmart's wage statements list all hourly rates in effect *during the applicable pay period*. TT. 162:21-164:19. Walmart did not believe that OVERTIME/INCT pay fell within the scope of this requirement because it is an incremental adjustment to overtime worked in *prior* pay periods "over the course of the quarter" for which the MyShare incentive award was paid. TT. 158:8-24. The California Court of Appeal reads the statute the same way. *Fabio Canales et al. v. Wells Fargo Bank, N.A.*, Case No. B276127 (2018) (Judicially Noticed by this court at ECF No. 157, n. 1).

As further evidence of its good faith efforts, Walmart also informed all associates that "Earned MyShare Incentive Awards will be included in the regular rate of pay when calculating overtime for the incentive quarter." *See* Ex. 125-7; TT. 159:4-160:9. As Mr. Stokes explained, Walmart flags this for associates in its written MyShare Quarterly Incentive Plan Program "to make sure the associates understand that the incentive award is going to not only show as an incentive award but it's also going to reflect in their regular rate of pay, which also would reflect on any payments from -- for overtime." TT. 159:4-160: 23.

Walmart also encourages associates to ask questions about the wage statements, provides multiple avenues for associates to get answers to those questions, and makes all wage statements and time punch details readily accessible. *See* TT. 154:15-156:8; Ex. 300-7; TT. 155:21-156: 8; 160:24-161: 6. Despite this, there is no evidence that Magadia—or anyone else—ever asked a question about their wage statements or were confused by the information contained on their wage statements. *See* Plaintiff's testimony at TT. 89:22-91:12, 98:18-20; *see also* Todd Stokes' testimony at TT. 161:7-14.

C. **Walmart acted in good faith to comply with section 226(a)(6).**

Section 226(a)(6) requires employers to provide compliant wage statements either "semimonthly or at the time of each payment of wages." Cal. Lab. Code § 226(a)(6).

1  Walmart believed it complied with this requirement by providing biweekly wage
2  statements that undisputedly contain all the details required by Section 226(a).  ECF
3  No. 176, at 8.  As a courtesy, Walmart also provides terminated associates with a
4  Statement of Final Pay when issuing a final pay check.  But Stokes explained that
5  Walmart did not consider the Statement of Final Pay a wages statement, which is why
6  it did not include pay periods:  "It's not a wage statement. It is a document that
7  confirms the amount of pay we are using the associate on their final day with the
8  company. The wage statement is issued with the payroll cycle, whenever that happens
9  after that termination."  TT. 169:18-25.  Plaintiff has presented no evidence that
10 Walmart's belief that issuing wage statements semi-monthly did *not* comply with
11 Section 226(a)(6).

12 Moreover, although the Statements of Final Pay do not have "pay period" start
13 and end dates (since they do not align with Walmart's pay periods), associates receive,
14 at the time of termination, *all* the information that is needed to determine the start and
15 end dates applicable to their final paycheck.  The Statement of Final Pay includes the
16 date of the time period applicable to the final paycheck.  And it is common knowledge
17 that the start date of that time period is the pay period end date of the previous
18 paycheck.  TT. 100-11-102:8; Ex. 17, 309-1, 309-2.  Plus, Walmart's practice is to
19 conduct an exit interview with all terminated associates (if available) to pay the
20 associate through the date of termination, confirm the accuracy of the amount of the
21 final paycheck (tell the associate he or she was paid through the date of termination),
22 explain the details of the Statement of Final Pay, and instruct the associate on how to
23 access their forthcoming final wage statements.  TT. 165:16-167:5.  Walmart then
24 issues all department associates a final *wage statement*.  TT. 169:18-25; 375:5-18.

25 **D.     Magadia has not established injury.**

26 This case presents the extraordinary circumstance of a plaintiff who has
27 admitted on the stand that neither he nor any other class member (as far as he is
28 aware) suffered any harm.  For example, he admitted that he (1) never discovered any

time records or pay that were incorrect (TT. 89:19-21); (2) never had any questions about what his wage statement meant or said (TT. 90:1-3); (3) is not aware of any associate who was confused by any statement of pay (TT. 98:18-20); and (4) is not aware of any Walmart associate whose wages were calculated incorrectly (TT. 98:24-99:4.). And he denied any injury as a result of receiving allegedly non-complaint pay stubs:

> Q. How have you been harmed by receiving the pay stubs that you received?
> A. What do you mean "harmed"?
> Q. Have you been injured in any way because of the pay stubs you received?
> A. Oh. No.  (TT. 99:14-19)
>
> . . .
>
> Q. Were you injured in any way by receiving this statement of final pay without a start or end date?
>
> . . .
>
> A. The witness: No, sir. [3]  (TT. 104:2-7)

Plaintiff also wasn't interested in any of the categories of information listed on his wage statements (except his total pay).  Indeed, Plaintiff testified that he doesn't have a general understanding of how overtime is calculated, and he never asked any questions about it.  TT. 90:19-91:15.  He also never asked about the MyShare incentive payment.  TT. 91:18-20.  In sum, Magadia's evidence of harm was not weak, vague, or contradicted—it was non-existent.

Magadia claims he doesn't need to show any actual evidence of injury because Labor Code § 226(e)(2)(B) states that a plaintiff is "deemed to suffer injury" if the employer "fails to provide" the required wage-statement information.  TT. 214:5:24, 209:9-13, 510:25-511:5.  But that amendment "merely clarified the law" to recognize

---

[3] Magadia's admission that he has suffered no harm also deprives him of Article III standing.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (a statutory violation alone is not enough to establish standing).  Magadia was also required to show that the class suffered harm—something he also failed to do—because "no class may be certified that contains members lacking Article III standing." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012).

that the injury requirement was "minimal." *Novoa v. Charter Commc'ns, LLC*, 100 F. Supp. 3d 1013, 1030 & n. 10 (E.D. Cal. 2015). "Minimal" does not mean "nonexistent."

Two cases from this year alone establish as much. In *Suarez v. Bank of Am. Corp.*, 2018 WL 3659302, at *12 (N.D. Cal. Aug. 2, 2018), Judge James found that a Section 226 plaintiff survived 12(b)(6) because she alleged that, as a result of the noncompliance, she "could not determine whether they were paid properly and/or did not receive pay for all hours worked, and *thus suffered monetary damages due to Defendants' policies*." Yet Magadia conceded that he suffered no loss of money. TT. 89:19-21, 96:18-23, 99:17-19. In *Mie Yang v. Francesca's Collections, Inc.*, 2018 WL 984637, at *7 (N.D. Cal. Feb. 20, 2018), Judge Gilliam *dismissed* a Section 226 claim because "[t]he injury requirement cannot be satisfied simply because one of the nine itemized requirements in section 226(a) is missing from a wage statement. [A]n employee seeking to recover for wage statement violations must demonstrate an *injury arising from the missing information*…. [T]he deprivation of that information, standing alone, is not a cognizable injury." None of the cases even suggesting that injury is established by noncompliance alone involved a plaintiff who *had the benefit of trial yet failed to produce evidence of harm*. Trial—especially one where a plaintiff all but disclaims injury—changes everything.

When asked about harm on the stand, his counsel objected that this called for a "legal conclusion." But as the Court explained, it was a *factual* question: "How else are you going to show whether he's been injured or not if he doesn't testify to it?" TT. 99:23-24. Magadia failed to answer the call, as to him or any class member. Walmart is entitled to judgment on Magadia's Section 226 claim.[4]

---

[4] In the alternative, the Court should decertify the wage statement claims. As Magadia's trial testimony shows, determining whether someone was actually harmed will inherently require individualized evidence as to the circumstances of every associate who received a wage statement in question. *See, e.g.,* TT. 99:5-100:3 (because Magadia did not present any evidence of harm, it was reasonable to ask him "whether he's been injured or not.")

# THE PAGA CLAIMS ALSO FAIL

Under PAGA, only "aggrieved employees" may recover civil penalties for Labor Code violations. *Arias v. Superior Court*, 46 Cal. 4th 969, 908 (2009); Cal. Lab. Code § 2699(c). With that, the California Supreme Court recognized that "PAGA imposes a standing requirement; to bring an action, one must have suffered harm." *Williams v. Super. Ct.*, 3 Cal. 5th 531, 558 (2017); *see also Amalgamated Transit Union, Local 1756, AFL-CIO v. Sup. Ct.*, 46 Cal. 4th 993, 1001 (2009) (PAGA "require[s] a plaintiff to have suffered injury resulting from…violations of the Labor Code").

Magadia's PAGA claim seeks civil penalties for alleged violations of Labor Code Sections 226 and 226.7. But as explained above, Magadia has no viable Labor Code claim and, in particular, conceded that he has suffered *no harm by any of the complained-about practices*. Without those predicate injuries to redress, Magadia "no longer me[ets] the definition of 'aggrieved employee' under PAGA" and "d[oes] not have standing to maintain a PAGA action against [Walmart]." *Kim v. Reins Int'l Cal., Inc.*, 18 Cal. App. 5th 1052, 1058 (2017), *review granted*, 413 P.3d 1132 (2018).

Neither *Raines v. Coastal Pac. Food Distrib. Inc.*, 23 Cal. App. 5th 667 (2018) nor *Lopez v. Fraint & Assoc., LLC*, 15 Cal. App. 5th 773 (2017) hold otherwise. Neither decision "speak[s] to the issue of standing to bring a PAGA claim." *Raines*, 23 Cal. App. 5th at 681. And those cases certainly do not involve the remarkable situation where a plaintiff admits on the stand that he suffered no injury or harm as a result of the complained-about practice. Rather, where a plaintiff lacks viable Labor Code claims or injuries to redress, the plaintiff loses standing under PAGA. *Kim*, 18 Cal. App. 5th at 1058; *Harris v. Best Buy Stores, L.P.*, 2018 WL 984220, at *11 (N.D. Cal. Feb. 20, 2018) ("Considering the sweeping preclusive effect of PAGA…it would raise serious fairness

14   CASE NO. 5:17-CV-00062-LHK
WALMART'S POST-TRIAL BRIEF

and justiciability concerns to allow an employee to bind future individuals by asserting, on a representative basis, a harm that she did not personally suffer").[5]

As noted, Plaintiff's failure to prove his claims or establish any injury destroys his ability to assert that he is an "aggrieved employee" under PAGA. But even if Plaintiff had proven that he was an aggrieved employee (he has not), no PAGA penalties should be awarded because they would (1) constitute impermissible stacking with Labor Code penalties, (2) be "unjust, arbitrary and oppressive, or confiscatory," and (3) violate the Due Process and Excessive Fines Clauses of the U.S. Constitution.

*First*, as this Court held in *Guifu Li v. A Perfect Day Franchise, Inc.*, 2012 WL 2236752, at *17 (N.D. Cal. June 15, 2012) (Koh, J.), once a plaintiff "elect[s] to receive penalties for [a defendant's] failure to provide accurate wage statements in violation of California Labor Code § 226 . . . granting PAGA penalties for failure to provide accurate wage statements would be duplicative recovery." *Id; see also Tran v. Companion Med Trans, LLC*, 2016 WL 8925146, *8–9 (C.D. Cal. Jan. 25, 2016); *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1131 (2012).

*Second*, if the Court awards any PAGA penalties (it should not), the Court should reduce the amount because, "based on the facts and circumstances of [this] particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Labor Code § 2699(e)(2). In reducing a PAGA award, courts consider whether (1) the penalty is proportionate to actual damages, *Amaral*, 163 Cal. App. 4th at 1214; (2) non-PAGA penalties may be awarded, *Aguirre v. Genesis*, 2013 WL 10936035, *3 (C.D. Cal. Dec. 30, 2013); and (3) a defendant acted willfully or in good faith, *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016). Here, a PAGA penalty in any amount would be wildly disproportionate to any actual harm. And any

---

[5] *Fobroy v. Video Only, Inc.*, 2014 WL 6306708, at *5 (N.D. Cal. Nov. 14, 2014) (dismissing PAGA claims once predicate claims dismissed); *accord Williams*, 3 Cal. 5th at 558; *Shook v. Indian River Transp. Co.*, 716 F. App'x 589, 590 (9th Cir. 2018); *Wentz v. Taco Bell Corp.*, 2012 WL 6021367, at *5 (E.D. Cal. Dec. 4, 2012); *Gofron v. Picsel Techs., Inc.*, 804 F. Supp. 2d 1030, 1043 (N.D. Cal. 2011).

1    penalty would be particularly unjust because Walmart acted in good faith.  *See Cotter*,
2    193 F. Supp. 3d at 1037.  Walmart is aware of no court that has ever awarded a PAGA
3    penalty that comes anywhere close to what Magadia is seeking.  This case should not
4    break the records.  *See Serrano v. Swissport NA., Inc.*, 2013 WL 12145614, at *6 (C.D.
5    Cal. June 3, 2013) ($5.6 million PAGA penalty award was "oppressive and confiscatory"
6    where claims involved a "technical defect in . . . wage statements").

7    *Third*, California's authority to impose "statutory penalties"—including penalties
8    under PAGA—is limited "by the due process clauses of the federal and state
9    Constitutions."  *Home Depot U.S.A., Inc. v. Super. Ct.*, 191 Cal. App. 4th 210, 225 (2010)
10   (analyzing PAGA section 2699(f)).  Awarding PAGA penalties here would violate due
11   process and the Excessive Fines Clause because the penalty does not have "a nexus to
12   the specific harm suffered by" Magadia.  *E.g.*, *State Farm Mut. Auto. Ins. Co. v.
13   Campbell*, 538 U.S. 408, 422 (2003); *United States v. Citrin*, 972 F.2d 1044, 1051 (9th
14   Cir. 1992); *United States v. Bajakajian*, 524 U.S. 321, 337–39 (1998).

15   In addition, no penalties should be awarded for the period before October 4, 2016
16   TT. 61:1-5, the date of Plaintiff's LWDA notice.  This is so because PAGA provides that
17   an allegedly aggrieved employee must provide the LWDA notice of "[Labor Code]
18   provisions alleged *to have been violated*."  Cal. Lab. Code § 2699.3(a) (emphasis
19   added).  Therefore, by its own terms, PAGA limits the scope of the LWDA notice—and
20   thus the allegedly aggrieved employee's PAGA enforcement action—to *past* violations of
21   which the LWDA has been provided notice.  The DLSE has endorsed this *retrospective*
22   nature and scope of notices to the LWDA.  *See* Request for Judicial Notice, Ex. A at 7;
23   *see also* Ex. B at 24.

## MAGADIA'S EVIDENCE DOES NOT SUPPORT *ANY* MONETARY AWARD

26   Magadia's claim for penalties and damages rests solely on the Dr. Kriegler's expert
27   report.  But Dr. Kriegler's report fails to include the basic facts and data that support his
28   opinion, as required by Fed. R. Civ. P. 26(a)(2)(B)(ii).  In short, he failed to show his

1  work. And when "a party fails to provide information . . . as required by Rule 26(a) . . .
2  the party is not allowed to use that information or witness to supply evidence." Fed. R.
3  Civ. P. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th
4  Cir. 2001). Moreover, competent evidence was *necessary* for Magadia to prove his
5  entitlement to damages. *Tourgeman v. Nelson & Kennard*, 900 F.3d 1105, 1109 (9th
6  Cir. 2018) (It is "one of the most basic propositions of law ... that the plaintiff bears the
7  burden of proving his case, including the amount of damages.") (citations omitted); *see*
8  *also Lumens Co. v. GoEco LED LLC,* No. SACV1401286CJCDFMX, 2018 WL 1942768,
9  at *5–6 (C.D. Cal. Jan. 3, 2018) (concluding that "any attempt by a trier of fact to award
10 damages on this record would be impermissibly speculative" and stating that "the
11 opinions are conclusory" and do not provide "the facts, data, or principles applied to that
12 data to support their damages calculations – all of which are required under Federal
13 Rule of Evidence 702"); *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 145-46 (1997)
14 (reaffirming district court discretion to exclude inadequately supported expert opinion).
15     Here, Dr. Kriegler's conclusions regarding potential damage and penalties are
16 virtually useless because Kriegler (admittedly) does not show the number of violations
17 for any of categories, does not identify the number of associates that fall into any of the
18 various damages/penalty buckets, and does not provide any data that would allow the
19 Court to determine the penalties or damages attributable to any class member. TT.
20 483:17-485: 2; TT. 485:3-486:8. In fact, Dr. Kriegler said the only way to determine the
21 number of violations is "by running the code." TT. 491:13-21. But that information is
22 nowhere to be found in his report: "[The] code generates the number of violations and
23 the number of people that -- *they're not listed in my expert report*, but they are part of
24 my computational programs." TT. 491:8-11. (emphasis added.)
25     But Dr. Kriegler's computational program is not part of the record. And even if it
26 were, the code itself does not show either the number of violations or employees
27 included in the damages calculations. It would need to be *run* to generate any of that
28 information. When asked at trial if the code showed the number of violations, Dr.

1 Kriegler explained: "If you look at the code you can't see the dollar amounts, either.
2 That's not what code is used for." TT. 491:13-21.  But it is not the Court's role to fill in
3 the gaps of an expert report "by running the code."  This is why raw code also cannot be
4 used as the basis for a damages award.

5       Dr. Kriegler also admitted that he did not personally write the code, that he is
6 not an expert in coding, and that he does not know exactly how the results of his coding
7 were validated. TT. 486:9-487:19, 489:4-490:9, 491:4-12.  At the time of his deposition,
8 he was only aware of who might have done the auditing of the data by looking at time
9 records.  TT. 487:25-488:25.  And at trial, he admitted that he recently learned of at
10 least one error in his computations.  TT. 451:17-452:4, 497:14-20.   Because he does not
11 show his work, it's impossible to tell how many additional errors exist.

12       Looking closer at his testimony only reveals bigger holes.  For example, when
13 calculating waiting time penalties, Dr. Kriegler fails to identify any of the basic
14 elements that would support his calculations.  He does not identify which class
15 members are supposedly entitled to the penalties, the amount of money they were
16 supposedly owed, the date it was supposedly due, or any other foundational facts.  This
17 makes his numbers impossible to verify, meaningfully discuss, or rely upon.  But the
18 limited information he did provide shows that his calculations are also *wrong*.  For
19 example, he assumed that *every* associate worked exactly 8 hours per day, despite
20 knowing that this assumption was wrong.  TT. 494:12-495:5.

21       Dr. Kriegler also claimed to have calculated pre-judgment interest, but it is
22 unknown (even to Dr. Kriegler himself) what computation period was used.  TT. 491:22-
23 494:6.  When asked if he was relying on the pay period (as stated in his expert report),
24 he said: "I think we used the payroll run date."  TT. 493:2-9.  But he was just guessing:
25 "I believe it was the payroll run date. It was not the end of the pay period. It was
26 sometime after that, either the payroll run rate or the—and I believed it was the payroll
27 run date." TT. 492:17-22.

28

These same type of problems infect every aspect of Dr. Kriegler's report. As a result, the Court cannot reasonably rely upon any of his conclusions. And because there is no other evidence that can support any penalties or damages, the Court should decline to award any monetary relief. *See* Fed. R. Civ. P. 26(a)(2)(B)(ii); Fed. R. Civ. P. 37(c)(1); *Yeti by Molly*, 259 F.3d at 1106.

## CONCLUSION

For the foregoing reasons, the Court should enter judgment on the merits in favor of Walmart on all claims or award no damages. In the alternative, the Court should decertify the classes and dismiss the claims because Magadia lacks standing.

DATED: December 7, 2018                              **DUANE MORRIS LLP**

By: /s/ Aaron T. Winn

Aaron T. Winn
Natalie F. Hrubos
Attorneys for Walmart

DM1\9220186.1

19                    CASE NO. 5:17-CV-00062-LHK
WALMART'S POST-TRIAL BRIEF