Aaron T. Winn (State Bar No. 229763)
atwinn@duanemorris.com
750 B Street, Suite 2900
San Diego, CA 92101
(619) 744-2222

Natalie F. Hrubos, 307255, *Admitted Pro Hac Vice*
nfhrubos@duanemorris.com
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1962

**DUANE MORRIS LLP**
Attorneys for Defendants
Wal-Mart Associates, Inc. and Wal-Mart Stores, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| RODERICK MAGADIA, individually and on behalf of all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WAL-MART ASSOCIATES, INC., a Delaware corporation; WAL-MART STORES, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 5:17-cv-00062-LHK<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF WALMART'S POST-TRIAL BRIEF** |

Pursuant to Federal Rule of Evidence 201(b) and (d), Defendants WAL-MART ASSOCIATES, INC. and WAL-MART STORES, INC. (collectively "Walmart") respectfully request that the Court take judicial notice of the California Labor Commissioner's Memorandum of Points And Authorities re New Trial (attached hereto as Exhibit A) and the California Labor Commissioner's Memorandum Of Points And Authorities In Opposition To Petition For Writ of Mandate (attached hereto as Exhibit B) in the action entitled *Bodega Latina Corporation v. Labor Commissioner Of The State of California*, filed in the Los Angeles Superior Court, Case No.: BS162695.

Records filed in another court are judicially noticeable because they are matters of public record capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned. *Id.* 201(b); *Shaw v. Hahn*, 56 F.3d 1128 (9th Cir. 1995).

Dated: November 7, 2018                    **DUANE MORRIS** LLP

By:/s/Aaron T. Winn
Aaron T. Winn
Natalie F. Hrubos
Attorneys for Defendants
Wal-Mart Associates, Inc. and
Wal-Mart Stores, Inc.

DM1\9222792.1

# EXHIBIT A

01/03/2018  14:53    61976    ;         DLSE LEGAL                    PAGE  02

**STATE OF CALIFORNIA**
Division of Labor Standards Enforcement
Department of Industrial Relations
By:     DEBORAH D. GRAVES, SBN 167922
        7575 Metropolitan Drive, Suite 210
        San Diego, California 92108
        Tel. (619) 767-2023
        Fax. (619) 767-2026
        dgraves@dir.ca.gov

Attorney for Respondent
Department of Industrial Relations

**FILED**
Superior Court of California
County of Los Angeles

**JAN 03 2018**

Sherri R. Carter, Executive Officer/Clerk
By: _____ , Deputy
        CARMEN DEL RIO

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| BODEGA LATINA CORPORATION,<br><br>Petitioner,<br><br>vs.<br><br>LABOR COMMISSIONER OF THE STATE OF CALIFORNIA, DEPARTMENT OF INDUSTRIAL REPLATIONS, DIVISION OF LABOR STANDARDS ENFORCMENT,<br><br>Respondent. | CASE NO. BS162695<br><br>RESPONDENT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITIONER'S MOTION FOR NEW TRIAL<br><br>Hearing Date:   January 17, 2018<br>Time:           9:30 a.m.<br>Department :    86<br>Judge:          Honorable Amy Hogue |

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

Respondent's Memorandum of Points & Authorities in Support of Opposition to Petitioner's Motion for New Trial
15:00:49 2018-01-03

01/03/2018  14:53    6197E    5              DLSE LEGAL                    PAGE  03

## I. UNDERLYING SUBSTANTANTIVE AND PROCEDURAL FACTS

On August 29, 2015, the Division of Labor Standards Enforcement ("DLSE") issued a wage and penalty assessment citation to petitioner, Bodega Latina Corporation, for violations of various Labor Code provisions.  Petitioner timely appealed the citation and an administrative hearing was held over the course of several days, concluding on February 3, 2016.   On April 8, 2016, the hearing officer issued the Notice of Findings on the citations, after which petitioner filed a petition for administrative mandate, pursuant to Code of Civil Procedure §1094.5, challenging the hearing officer's findings.  After lengthy and substantial briefing by petitioner and respondent, this court held a *trial* on the petition for writ of mandate on September 27, 2017. This court reviewed the administrative decision pursuant to its statutory authority set forth in Code of Civil Procedure §1094.5.

The writ hearing or *trial* was *not* the type of fact-finding that takes place at a usual civil trial. Nevertheless, petitioner sought to submit additional evidence not contained within the administrative record.  (See Declaration of Laura Reathaford in Support of Its Notice of Motion and Motion for Writ of Administrative Mandate filed on September 6, 2017 and Reporter's Transcript of Proceedings attached as Exhibit B to Declaration of Laura Reathaford in Support of Petitioner's Motion for New Trial[1]).   This court properly excluded petitioner's proffered evidence at the writ trial because petitioner failed to meet the test for the admission of new evidence as required by Code of Civil Procedure §1094.5(e).

The evidentiary limitation imposed on the court by section 1094.5(e), relating to the trial court's authority to admit and consider new evidence, is a central issue to petitioner's motion for a new trial.  Petitioner's own failure to submit certain evidence in the underlying administrative hearing and failure to meet the test for admission of new evidence did not prevent petitioner from having a fair trial and does not justify a new trial.  As such, petitioner's motion should be denied.

[1] Hereinafter referred to as "Reathaford Decl."

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

## II. ARGUMENT

1    Petitioner urges this court to grant it a new trial so that evidence, which was available to petitioner and could have been produced by petitioner at the administrative hearing, be considered by this court.  Despite petitioner's characterization of events, this court's refusal to consider evidence outside the administrative record, and for which no motion to augment the record was filed, did not create a condition upon which a new trial should be granted. Moreover, even if the evidence which petitioner seeks to have the court consider had been admitted at the underlying hearing, such evidence does not preclude DLSE's enforcement activities in this case.

### A. MOTION FOR NEW TRIAL

"The authority of a trial court to grant a new trial is established and circumscribed by statute. 'Section 657 sets out seven grounds for such a motion: (1) "[i]rregularity in the proceedings'; (2) "[m]isconduct of the jury"; (3) "[a]ccident or surprise"; (4) "[n]ewly discovered evidence"; (5) "[e]xcessive or inadequate damages"; (6) '[i]nsufficiency of the evidence"; and (7) "[e]rror in law.'" [Citation.]" *Montoya v. Barragan* (2013) 220 Cal.App.4th 1215, 1227.

Petitioner argues that a new writ trial is warranted on several grounds established by Code of Civil Procedure §657.  Specifically, petitioner contends that there was irregularity in proceedings of the court; that petitioner's counsel was subject to accident or surprised which she could not have guarded against; that there was insufficient evidence to support the judgment; that there was error in law; and that the judgment is excessive.  Central to all the arguments asserted by petitioner is the underlying fact that petitioner did not submit certain evidence at the administrative hearing and now wants this court to reconsider its decision in light of that evidence. (See Reathaford Decl., ¶10).

"Our Supreme Court definitively construed the statutes providing for new trials in *Carney v. Simmonds* (1957) 49 Cal.2d 84 [315 P.2d 305]. There the court said, "[t]he statutes on new trial provide that: 'A new trial is a re-examination of an issue of fact in the same court after a trial and decision by a jury, court or referee.' (Code Civ. Proc., § 656.)" *Pollak v. State Personnel Board* (2001) 88 Cal. App. 4th 1394, 1405.  Thus, the motion for new trial is essentially asking the

2

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

1   court to re-examine its decision not to accept the evidence of the *Rivera* complaint or PAGA

2   letters and then reevaluate the court's decision based on that additional evidence.   As indicated

3   below, the courts rejection of the evidence proffered by petitioner at the writ hearing was proper

4   and did not constitute an irregularity, accident or surprise, insufficiency in evidence, error in law

5   or cause excessive damages to be awarded.

6   **B.  PETITIONER FAILED TO SUBMIT AVAILABLE EVIDENCE AT THE**
**ADMINISTRATIVE HEARING AND THIS COURT'S REFUSAL TO CONSIDER**
7   **SUCH EVIDENCE DOES NOT CONSTITUTE AN IRREGULARITY**

8   "An 'irregularity in the proceedings' is a catchall phrase referring to any act that (1) violates

9   the right of a party to a fair trial and (2) which a party 'cannot fully present by exceptions taken

10  during the progress of the trial, and which must therefore appear by affidavits.' [Citation.]"

11  *Montoya v. Barragan, supra,* 220 Cal.App.4th at pp. 1229-30.

12  Petitioner argues that there was irregularity in the trial court proceedings because the court

13  should have considered the *Rivera* complaint and PAGA letters in its determination.  Petitioner

14  also argues that the court's refusal to allow petitioner to admit the *Rivera* complaint and PAGA

15  letters at the writ trial was erroneous and grounds for a new trial.  What petitioner fails to

16  acknowledge is that the proceedings before this court is a mandamus action, which is the

17  exclusive remedy for judicial review of adjudicatory administrative actions of state level

18  agencies.  This court's refusal to review evidence not supplied in the administrative record was

19  not an irregularity in the proceeding which deprived petitioner of a fair hearing.  To the contrary,

20  petitioner's attempt to introduce new evidence at the writ hearing itself was irregular.

21  Code of Civil Procedure section 1094(e) expressly limits judicial review to the evidence in

22  the administrative record unless one of two limited exceptions applies: (1) the evidence could not

23  *with due diligence have been produced during the administrative proceedings* or (2) the evidence

24  was improperly excluded by the administrative hearing officer.  *Western States Petroleum Ass'n*

25  *v. Superior Court* (1995) 9 Cal.4th 559, 578 (Emphasis added).

26  Code of Civil Procedure § 1094.5(e) provides:

27       Where the court finds that there is relevant evidence which, in the exercise of
        reasonable diligence, could not have been produced or which was improperly
28       excluded at the hearing before respondent, it may enter judgment as provided in

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

3

01/03/2018  14:53    61976    6                    ' DLSE LEGAL                          PAGE  06

1    subdivision (f) remanding the case to be reconsidered in light of that evidence.

2    This section has been construed as a limitation on the court's authority to admit new

3    evidence in a writ proceeding.  The general rule is that a hearing on a writ of administrative

4    mandamus is conducted solely on the record of the proceeding before the administrative agency.

5    *Beverly Hills Fed. S. & L. Ass'n. v. Superior Court* (1968) 259 Cal.App.2d 306, 324.  As the

6    court stated in *Windigo Mills v. Unemployment Ins. Appeals Bd.* (1979) 92 Cal.App.3d 586, 595.

7    "It is not contemplated by the code provision that there should be a trial de novo before the court

8    reviewing the administrative agency's action, even under the independent review test.

9    [Citations.]  Public policy requires a litigant to produce all existing evidence on his behalf at the

10   administrative hearing."  (Citations and internal quotations omitted.)

11   Moreover, the court in *Windigo Mills* went on to state:

12          When the Legislature granted the superior court the discretion to receive 'relevant
              evidence which, in the exercise of reasonable diligence, could not have been
13          produced at the administrative hearing,' it reasonably may be inferred that it meant to
              authorize the receipt of evidence of events which took place after the administrative
14          hearing.

15          *Windigo Mills v. Unemployment Ins. Appeals Bd.* (1979) 92 Cal.App.3d 586 at 596.

16   The evidence sought to be introduced by petitioner is not evidence of events that took place

17   after the administrative hearing, but is evidence that could have been presented at the hearing and

18   was properly excluded by the trial court.

19   The administrative record discloses that petitioner was permitted to present its defenses, both

20   legal and factual, at the underlying administrative hearing.  Petitioner has failed to establish that

21   the evidence, it now wishes the court to consider, was improperly excluded or not available at the

22   time of the underlying hearing and as such, the evidence was properly excluded by this court.

23          Moreover, even if the court had the evidence which petitioner seeks to introduce, the

24   judge's comments at the writ hearing do not establish that her decision would have been different

25   or establish an "irregularity" such that a new trial is warranted.  Specifically, when asked if the

26   decision not to apply res judicata was based on the fact that there was no evidence in the

27   underlying record of the PAGA claims, the court indicated "It's more than that." (page 3, line

28   10; See also page 22, line 26 through page 23; line 6).  As discussed in Section D below, public

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

4

01/03/2018  14:53    61976      5             DLSE LEGAL                      PAGE  07

1   policy dictates that res judicata not apply under the facts of this case.

2   **C. THERE WAS NO ACCIDENT OR SURPRISE TO PETITIONER BY THE COURT IN REFUSING TO CONSIDER EVIDENCE THAT PETITIONER FAILED TO PRESENT AT THE UNDERLYING ADMINISTRATIVE HEARING**

3

4   Petitioner's argument of accident or surprise is substantively identical to its argument

5   regarding an irregularity in the proceedings relating to this court's refusal to admit and consider

6   the *Rivera* complaint and PAGA letters.  As noted by petitioner, accident or surprise as grounds

7   for a new trial denotes some condition or a situation in which a party to an action is unexpectedly

8   placed to his detriment. *Wade v. De Bernardi* (1970) 4 Cal. App. 3d 967, 971.  "The condition or

9   situation must have been such that ordinary prudence on the part of the person claiming surprise

10   could not have guarded against and prevented it. Such party must not have been negligent in the

11   circumstances." *Id.*

12   Petitioner contends it could not have anticipated that the court would misread the *Rivera*

13   complaint and therefore did not bring a copy of the complaint to the writ hearing to admit as

14   evidence.  Petitioner contends that this somehow constitutes and "accident" or "surprise" by

15   which petitioner could not have guarded against.  However, as articulated above, the court could

16   not consider and did not consider the *Rivera* complaint or the PAGA letters in its decision

17   because the Court was not permitted to do so.  (See C.C.P. §1094.5(e) and cases cited in

18   Argument, section B above.)  As such, petitioner cannot have been prejudiced when it was

19   unable to present evidence at the writ hearing that it had no right to submit in the first place.

20   **D. THERE WAS SUBSTANTIAL EVIDENCE AFFIRMING THE CITATION AND NO ERRORS IN LAW IN THE COURT'S DECISION ON THE WRIT**

21

22   Petitioner asserts that there is insufficient evidence and error in law justifying a new trial.  It

23   appears that the basis of petitioner's contention is that there was sufficient evidence in the

24   administrative record for the court to conclude that the DLSE's enforcement activity was

25   preempted and the court's failure to conclude that the DLSE was barred constitutes a legal error.

26   Insufficiency of evidence "means an absence of evidence or that the evidence received, in the

27   individual judgment of the trial judge, is lacking in probative force to establish the proposition of

28   fact to which it is addressed." *Dominguez v. Pantalone* (1989) 212 Cal. App. 3d 201, 215.  A

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

5

01/03/2018   14:53   61976   3   · DLSE LEGAL   PAGE   08

1   motion for new trial on the grounds that the judgment was error in law requires the moving party

2   to show that the evidence is without conflict and insufficient *as a matter of law* to support the

3   judgment. *McCown v. Spencer* (1970) 8 Cal.App.3d 216, 229.

4   As petitioner points out, there was some indication in the evidence at the administrative

5   hearing that the class action settlement included PAGA claims. (AR-000998-001037).

6   However, as the court pointed out, the evidence in the administrative record did not specify

7   whether the PAGA claims referenced in the settlement agreement covered the same claims and

8   time frame for which the DLSE issued the citation. (See (Tentative) Order Granting in Part the

9   Petition for a Writ of Mandate attached as part of Exhibit C to Reathaford Decl. at page 8).

10   However, even if the evidence had been included and considered, it was not an "error in law" to

11   refuse to apply *res judicata*.   This court properly reviewed the administrative record and found

12   that even in light of the class action and settlement, public policy precluded the application of res

13   judicata to the DLSE's enforcement activities. (See (Tentative) Order Granting in Part the

14   Petition for a Writ of Mandate attached as part of Exhibit C to Reathaford Decl. at pages 7-9).

15   This determination would not necessarily change or be an error in law even had the *Rivera*

16   complaint and PAGA letters been admitted into evidence. (See Exhibit B to Reathaford Decl. at

17   page 21, line 25 to page 22, line 6 and (Tentative) Order Granting in Part the Petition for a Writ

18   of Mandate attached as part of Exhibit C, pages 7-9).

19   First, the DLSE issued citations which included a wage assessment and a penalty assessment.

20   PAGA claims can only include, by statute, penalties. (See Labor Code §2699; *Iskanian v. CLS*

21   *Transportation* (2014) 59 Cal.4th 348, 380, 381 [PAGA claims are for civil penalties].) As

22   thoroughly briefed in respondent's opposition to the petition for writ of mandate, the settlement

23   agreement in *Cardoza v. Bodega Latina* class action does not preclude the DLSE from carrying

24   out its enforcement duties.   Moreover, even if the DLSE was precluded from pursuing the

25   PAGA claims, that preclusion would only affect the penalties assessed by the DLSE, and wold

26   not impact any wages assessed.

27   As the California Supreme Court expressed in *Iskanian, supra,* 59 Cal,.4th 348, 388, the

28   police powers of the state are not to be superseded without a clear and manifest intent.  Although

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

6

01/03/2018  14:53   61976   5   ·  DLSE LEGAL   PAGE  09

1   the PAGA statute allows a private individual to step into the shoes of an enforcement agency, it

2   does not permit the individual to do so indefinitely.

3        Before pursuing a PAGA claim for penalties, an individual is required to provide notice

4   "of the specific provisions of this code alleged *to have been* violated..." Labor Code

5   §2699.3(a)(1)(A) (Emphasis added).  If the agency does not intend to investigate the alleged

6   violations that **have occurred**, the aggrieved employee may then commence a civil action to

7   recover penalties.  Labor Code §2699.3.  The PAGA notice in this case was required to be sent

8   prior to filing the lawsuit for violations occurring prior to 2009.  The *Cardoza* lawsuit reached

9   preliminary settlement in May 2011.  (AR-001003 §2.8).  The class period covers July 25, 2005

10  through December 2012.  The final settlement agreement was signed in 2013 and approved in

11  2015, **four years** after which initial settlement was reached.  Clearly, the Private Attorneys

12  General Act did not contemplate that a notice sent in 2009 and a decision made **at that time** not

13  to investigate **past** violations, would precluding the DLSE from investigating claims and issuing

14  citations for violations that occurring years later.  Such a construction would be unjust, would

15  undermine the purposes for which the DLSE exists and would violate the public policy of this

16  state to determine and assess employers for violations of the Labor Code.

17       Second, it was not an error in law for the court to determine that the *Cardoza* settlement

18  did not foreclose the DLSE's enforcement activities on principles of res judicata.  The doctrine

19  of res judicata is applicable if three threshold requirements are satisfied: 1) the decision in the

20  prior proceeding is final and on the merits; 2) the parties must be the same as, or in privity with

21  the party to the former proceeding; and 3) the present proceeding is on the same cause of action

22  as the prior proceeding. *Federation of Hillside & Canyon Associations v. City of Los Angeles*

23  (2004) 126 Cal.App.4th 1180. .  However, where the subsequent action involves parallel facts,

24  but a different historical transaction, the application of the law to the facts is not subject to res

25  judicata or collateral estoppel.  *Chern v Bank of America* (1976) 15 Cal.3d 866, 871.  In addition,

26  the determination whether a party is in privity with another is a policy decision which depends

27  on the circumstances of the case and the relationship between the parties. *Gikas v. Zolin* (1993)

28  6 Cal.4th 841, 849; *Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Association*

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

7

01/03/2018  14:53    61976     5          DLSE LEGAL                    PAGE  10

1  (1998) 60 Cal.App.4th 1053, 1070.

2       Numerous court cases confirm that public policy can preclude the application of res judicata.

3  Res judicata will not apply if injustice would result; or if the public interest requires that

4  relitigation not be foreclosed; or in cases which concern matters of important public interest; or

5  in cases involving a public agency's ongoing obligation to administer statutes enacted for the

6  public benefit, and affecting members of the public not before the court.  (See *California v.*

7  *Optometric Association v Lackner* (1976) 60 Cal.App.3d 500, 505; *Dunkin v. Boskey* (2000) 82

8  Cal.App.4th 171, 181; *Louis Stores, Inc. v. Dept. of Alcoholic Beverage Control* (1962) 57

9  Cal.2d 749; and *Villacres v. ABM Industries, Inc.* (2010) 189 Cal.App.4th 562, 592)  Because it

10 is within the court's purview to determine that public policy would preclude the application of

11 res judicata, it was not an "error in law" for this court to do just that.

12      **E.  THERE ARE NO EXCESSIVE DAMAGES TO JUSTIFYING A NEW TRIAL**

13      Petitioner argues that a new trial should be granted because the judgment is excessive.

14 Code of Civil Procedure §657 authorizes "excessive damages" as grounds for a new trial.  The

15 statutory test for granting a new trial on this ground is: "A new trial shall not be granted upon the

16 ground … of excessive …, unless after weighing the evidence the court is convinced from the

17 entire record, including reasonable inferences therefrom, that the *court or jury* clearly should

18 have reached a different verdict or decision.  Cal. Civ. Proc. Code § 657 (Emphasis Added)

19      In administrative writs however, the standard of review prohibits the reviewing court

20 from substituting its own judgment.   In cases in which the administrative proceeding does not

21 affect a fundamental vested right, the trial court reviews the administrative record to determine

22 whether the findings are supported by substantial evidence and whether the agency committed

23 any errors of law.  *Bixby v. Pierno* (1971) 4 Cal.3d 130, 144.  In such a case "[a] court may

24 reverse an administrative order only if the hearing officer's factual determinations are not

25 supported by the weight of the evidence." *Vison v. Snyder* (1999) 75 Cal.App.4th 182; *Santos v.*

26 *Dept. of Motor Vehicles* (1992) 5 Cal.App.4th 537, 545.  The trial court may not disregard or

27 overturn the Commission's finding "for the reason that it is considered that a contrary finding

28 would have been equally or more reasonable." *Boreta Enterprises, Inc. v. Department of*

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

8

01/03/2018  14:53    61976                  · DLSE LEGAL                    PAGE  11

1    *Alcoholic Beverage Control* (1970) 2 Cal.3d 85, 94; *Bowman v. Alcoholic Bev. App. Board*

2    (1959) 171 Cal.App.2d 467, 471-472.  In this case, a "motion for new trial" to have this Court

3    review the assessment issued by the DLSE is not appropriate and contrary to the procedures for

4    review administrative mandamus.

5           However, to the extent that the DLSE citation assessment includes amounts for which

6    petitioner contends were settled as part of the *Cardoza/Rivera* action, it is the DLSE contention

7    that the assessment does not result in a "double recovery."

8           As discussed in Section D above, the *Cardoza* lawsuit was filed in 2009 to recover wages

9    and penalties for violations going back to 2005.  The parties reached a tentative settlement in

10   2011 for class members working July 2005 through December 2012.  Logically the settlement

11   would not and could not include wages and penalties that occurred after May 2011 and certainly

12   not after December 2012.  The citations at issue in the underlying administrative action assess

13   wages from June 2012 through June 2015 and penalties from June 2014 through June 2015. (AR-

14   000001)  The violations giving rise to this wage and penalty assessment occurred years after the

15   filing of the *Cardoza/Rivera* action was filed and could not have been included in any decision

16   made in 2009 by the LWDA not to investigate.  Quite simply, if the LWDA declines to

17   investigate a matter at the time the PAGA letter is submitted, it does not preclude the LWDA

18   from investigating subsequent violations, especially those which occur years later.  The judgment

19   does not constitute a double recovery because the amounts assessed are for violations occurring

20   after the *Cardoza/Rivera* action was filed and settled.

21                                    **III. CONCLUSION**

22          A writ of administrative mandamus is not a procedure by which a petitioner can retry its

23   underlying administrative case, which is essentially what petitioner is attempting to do with this

24   motion.  What is evident is that the court followed statutory procedure with respect to judicial

25   review of an administrative proceeding.  The provisions for review of an administrative decision

26   are clear and section 1094.5(e) operates as a limitation upon the court's authority to admit and

27   consider new evidence. Petitioner's motion simply repeats the request, with new labels and

28   characterizations, that the court accept and consider evidence which was not presented at the

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

                                              9

01/03/2018  14:53      61976      ;                    DLSE LEGAL                    PAGE  12

1  administrative hearing.  This court was briefed on the relevant case law concerning res judicata

2  and class action preemption, received over 1800 pages of evidence, and decided the issues

3  presented by petitioner based on the administrative record and arguments presented at trial.

4  Petitioner's failure to present in the underlying administrative hearing all evidence it wanted

5  considered is not sufficient grounds for granting a new trial.  Petitioner was granted a fair trial at

6  the administrative hearing and during the judicial review of the administrative hearing.  The

7  procedures for review of administrative mandate were properly followed and the court's decision

8  is supported by both the administrative record and case law.  As such, respondent respectfully

9  requests that the motion for new trial be denied in its entirety.

10  Dated:  January 3, 2018                    Respectfully submitted,

11

12                                             _____
                                              Deborah D. Graves, Esq.
13                                            Attorney for Respondent
                                              Department of Industrial Relations
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

Respondent's Memorandum of Points & Authorities in Support of Opposition to Petitioner's Motion for New Trial

### STATE OF CALIFORNIA
### DEPARTMENT OF INDUSTRIAL RELATIONS
### DIVISION OF LABOR STANDARDS ENFORCEMENT

### CERTIFICATION OF SERVICE BY MAIL
### (C.C.P. 1013A) OR CERTIFIED MAIL

I, JUDITH A. ROJAS, do hereby certify that I am a resident of or employed in the County of San Diego, over 18 years of age, not a party to the within action, and that I am employed at and my business address is: 7575 Metropolitan Drive, Suite 210, San Diego, CA 92108-4424

On January 3, 2018, I served the within **RESPONDENT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITIONER'S MOTION FOR NEW TRIAL** by placing a true copy thereof in an envelope addressed as follows:

Laura Reathaford, Esq.
Blank Rome LLP
2920 Century Park East, 6th Floor
Los Angeles, CA 90067-3125

and then sealing the envelope and with postage and certified mail fees (if applicable) thereon fully prepaid, depositing it for pickup in this city by:

___**XX**_____   **Federal Express Overnight Mail**

_____   Ordinary First Class Mail

I certify under penalty of perjury that the foregoing is true and correct.

Executed on January 3, 2018, at San Diego, California.

_____
JUDITH A. ROJAS

Case No.  BS162695

01/23/2018 01:04

---

### PROOF OF SERVICE

15:00:49 2018-01-03

01/03/2018  14:53   61976      DLSE LEGAL                                    PAGE  01

72

| | MC–005 |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Division of Labor Standards Enforcement<br>By: Deborah D. Graves, Attorney,  SBN: 167922<br>7575 Metropolitan Drive, Suite 210<br>San Diego, CA 92108<br>TELEPHONE NO.:  619-767-2023     FAX NO. (Optional):  619-767-2026<br>E-MAIL ADDRESS (Optional):  dgraves@dir.ca.gov<br>ATTORNEY FOR (Name):  Plaintiff | FOR COURT USE ONLY<br><br>**Received**<br><br>JAN 03 2018<br><br>**Fax Filing** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS:  111 N. Hill Street
MAILING ADDRESS :
CITY AND ZIP CODE:  Los Angeles, CA 90012
BRANCH NAME :  Stanley Mosk Courthouse

PLAINTIFF/PETITIONER:  Bodega Latina Corporation

DEFENDANT/RESPONDENT:  Labor Commissioner of the State of California et.

| **FACSIMILE TRANSMISSION COVER SHEET** | CASE NUMBER:<br>BS162695 |
|---|---|

TO THE COURT:

1. **Please file** the following transmitted documents in the order listed below:

D -86

Document name                                                                     No. of pages

Respondent's Memorandum of Points and Authorities in Opposition to Petitioner's
Motion for new Trial                                                                              12

CASE #
DATE ENTERED
FILING FEE $ _____ TOTAL: $ _____
NO. OF PAGES (including coversheet)  Gov.
CONFIRMATION FEE $ _____ PROCESSING FEE $ _____
ENTERED BY _____, Deputy Clerk

** GOVERNMENT AGENCY NO FEES APPLY PER LABOR CODE 101.5
AND GOVERNMENT CODE 6103 **

2. ☐ Processing instructions consisting of: _____ pages are also transmitted.

3. ☐ **Fee required**   ☐ Filing fee  ☐ Fax fee (Cal. Rules of Court, rule 10.815)
   a. ☐  Credit card payment I authorize the above fees and any amount imposed by the card issuer or draft purchaser to
           be charged to the following account:
           ☐ VISA   ☐ MASTERCARD    Account No.:                    Expiration date:

   _____                        _____
   (TYPE OR PRINT NAME OF CARDHOLDER)                        (SIGNATURE OF CARDHOLDER)

   b. ☐  **Attorney account** (Cal. Rules of Court, rule 2.304). Please charge my account no.:

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>MC-005 [Rev. January 1, 2007] | **FACSIMILE TRANSMISSION COVER SHEET**<br>**(Fax Filing)** | Page 1 of 1<br>Cal. Rules of Court, rule 2.304<br>www.courtinfo.ca.gov |
|---|---|---|

15:00:49 2018-01-03

# EXHIBIT B

1  **STATE OF CALIFORNIA**
   Division of Labor Standards Enforcement
2  Department of Industrial Relations
   By:    DEBORAH D. GRAVES, SBN 167922
3         7575 Metropolitan Drive, Suite 210
          San Diego, California 92108
4         Tel.  (619) 767-2023
          Fax. (619) 767-2026
5         dgraves@dir.ca.gov

6  Attorney for Respondent
   Department of Industrial Relations

7

8                  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                          **COUNTY OF LOS ANGELES**

10

11  BODEGA LATINA CORPORATION,           CASE NO. BS162695

12              Petitioner,

                                         RESPONDENT'S MEMORANDUM OF
13     vs.                               POINTS AND AUTHORITIES IN
                                         OPPOSITION TO PETITION FOR WRIT
14  LABOR COMMISSIONER OF THE            OF MANDATE
    STATE OF CALIFORNIA,
15  DEPARTMENT OF INDUSTRIAL             Hearing Date:   September 27, 2017
    REPLATIONS, DIVISION OF              Time:           9:30 a.m.
16  LABOR STANDARDS                      Department :    86
    ENFORCMENT,                          Judge:          Honorable Amy Hogue
17
                Respondent.
18

19

20

21

22

23

24

25

26

27

28

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

---

Respondent's Memorandum of Points & Authorities in Support of Opposition to Petition for Writ of Mandate

FILED
LOS ANGELES SUPERIOR COURT

AUG 1 5 2017

Sherri Ganer, Executive Officer/Clerk
By _____
A. ROBLEDO          Deputy

FILED BY FAX

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................ ii

I.   INTRODUCTION ............................................................................................................. 1

II. RELEVANT FACTS ........................................................................................................ 1

III. ARGUMENT ................................................................................................................... 4

    A. Standard of Review ...................................................................................................... 4

    B. Substantial Evidence Supports the Minimum and Overtime Wage
       Assessment .................................................................................................................. 6

    C. Substantial Evidence Supports the Meal Period Assessment ................................. 9

    D. Substantial Evidence Supports the Rest Period Assessment and the
       Finding that the Penalties were Properly Calculated ........................................... 10

         1.    The Rest Period Assessment is Supported by Substantial
             Evidence ......................................................................................................... 10

         2.    The Rest Period Penalties were Properly Calculated .............................. 11

    E. The Hearing Officer is Entitled to Assess Credibility
       and Draw Inferences to Determine if the DLSE Met its Burden ...................... 12

    F.  The Labor Commissioner did not Deprive Petitioner of a Fair Hearing
       or Infringe upon Petitioner's Due Process Rights.................................................. 14

         1.    The Labor Commissioner Afforded Petitioner a Fair Trial .................... 14

         2.    The Citation Hearing Process is not Subject to Discovery ...................... 15

         3.    The Labor Commissioner was not Required to Eliminate Claims
             Of Non-Testifying Employees' Audit Amounts for the Citation
             and did not Commit Prejudicial Error by Keeping Those
             Amounts in the Assessment ........................................................................ 15
             a.  The Wage Adjudication Process Within the Division of Labor
                 Standards Enforcment.......................................................................... 16
             b.  The Citation Appeal Hearing Process within the Division
                 of Labor Standards Enforcement....................................................... 16

         4.    The Statutory Time Lines for Issuing and Serving Decisions
             are Directory, not Mandatory or Jurisdictional ...................................... 17

    G. The DLSE did not Error in Refusing to Apply the Class Action Settlement
       to the Citation at Issue… .......................................................................................... 19

         1.    The DLSE is not Subject to the Class Action Settlement ...................... 19

         2.    Res Judicata and Collateral Estoppel Do Not Apply to the DLSE ......... 21

IV. CONCLUSION ............................................................................................................... 24

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

i

# TABLE OF AUTHORITIES

## CASES

*Abbott v. Mandiola* (1999) 70 Cal.App.4th 676 .......................................................................... 13

*Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America* (2005) 133 Cal.App.4th 1319......................................................................................21

*Beck Development Co. v. Southern Pacific Transp. Co.* (1996) 44 Cal.App.4th 1160.............13

*Bixby v. Pierno* (1971) 4 Cal.3d 130 ........................................................................................ 4

*Boreta Enterprises, Inc. v. Department of Alcoholic Beverage Control* (1970) 2 Cal.3d 85......... 5

*Borror v. Department of Inv.* (1971) 15 Cal.App.3d 531............................................................7-8

*Bowman v. Alcoholic Bev. App. Board* (1959) 171 Cal.App.2d 467 ........................................... 5

*Bristol v. Young* (1943) 23 Cal.2d 221 ................................................................................. 5, 6

*Brown v. Gordon* (1966) 240 Cal.App.2d 659 ............................................................................ 5

*California v. Optometric Association v Lackner* (1976) 60 Cal.App.3d 500 ............................ 23

*California Real Estate Loans, Inc. v. Wallace* (1993) 18 Cal.App.4th 1575 ..............................4-5

*Campbell v. Bd. of Dental Examiners* (1971) 17 Cal. App. 3d 872 ........................................... 12

*Champion Motorcycles Inc. v New Motor Vehicle Board* (1988) 200 Cal.App.3d 819................. 5

*Chern v Bank of America* (1976) 15 Cal.3d 866...................................................................21

*Cimarusti v. Superior Court* (2000) 79 Cal.App.4th 799...........................................................15

*Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Association* (1998) 60 Cal.App.4th 1053...............................................................................................23

*City of Los Angeles v. Civil Service Commission* (1995) 39 Cal. App. 4th 620 .......................... 14

*Cuadra v. Millan* (1998) 17 Cal.4th 855...............................................................................16

*Dibble v. Gourley* (2002) 103 Cal.App.4th 496.........................................................................7-8

*Dunkin v. Boskey* (2000) 82 Cal.App.4th 171 ............................................................................ 23

*Edwards v. Steele* (1979) 25 Cal.3d 406 ...............................................................................17-18

*EEOC v. Waffle House, Inc.* (2002) 534 U.S. 279.....................................................................20

*Fashion 21 v. Coal. for Humane Immigrant Rights of Los Angeles* (2004) 117 Cal. App. 4th 1138.................................................................................................13

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

1

## TABLE OF AUTHORITIES

2

*Federation of Hillside & Canyon Associations v. City of Los Angeles*
(2004) 126 Cal.App.4th 1180..................................................................,,,.....21

3

*Flippin v. Los Angeles City Bd. Of Civil Service Commissioners* (2007) 148 Cal.App.4th 272 ... 5

4

*Fox v. San Francisco Unified School District* (1952) 111 Cal.App.2d 885...................... 7, 15-16

5

*Gikas v. Zolin* (1993) 6 Cal.4th 841..........................................................................23

6

*Gore v. Board of Medical Quality Assurance* (1980) 110 Cal.App.3d 184 ............................... 13

7

*Hicks v. Reis* (1943) 21 Cal.2d 654.........................................................................13

8

*Kawasaki Motors Corp. v. Superior Court* (2000) 85 Cal. App.4th 200...................................... 5

9

*Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44 ................................................................. 5

10

*Krause v. Apdaca* (1960) 186 Cal.App.2d 413.............................................................13

11

*Louis Stores, Inc. v. Dept. of Alcoholic Beverage Control* (1962) 57 Cal.2d 749 ...................... 23

12

*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204 .............. 4

13

*Mohilef v. Janavici* (1996) 51 Cal.App.4th 267.........................................................15

14

*Morris v. County of Marin* (1977) 18 Cal.3d 901 ................................................................17- 18

15

*Northern Inyo Hosp. v. Fair Employment Practices Com.* (1974) 38 Cal.App.3d 14 ................. 5

16

*Owen v. Sands* (2009) 176 Cal.App.4th 985 ................................................................................ 5

17

*People v. Miller* (1916) 171 Cal. 649 ....................................................................................... 12

18

*Prachasaisoradej v. Ralphs Grocery Co., Inc.* (2007) 42 Cal.4th 217.............................23

19

*Rodgers v. Sargent Controls & Aerospace* (2006) 136 Cal.App.4th 82.............................22

20

*Santos v. Dept. of Motor Vehicles* (1992) 5 Cal.App.4th 537 ........................................................ 4

21

*Schaub's, Inc. v. Dept. Alc. Bev. Control* (1957) 153 Cal.App.2d 858 ......................................... 5

22

*Smith v. Superior Court* (2006) 39 Cal.4th 77 .............................................................................. 23

23

*Villacres v. ABM Industries, Inc.* (2010) 189 Cal.App.4th 562 ............................................. 22, 23

24

*Vison v. Snyder* (1999) 75 Cal.App.4th 182 ................................................................................. 4

25

*Woods v. California Department of Motor Vehicles* (1989) 211 Cal.App.3d 1263 .................... 18

26

27

28

Department of
Industrial Relations
Division of Labor
Standards Enforcement
Legal Unit

iii

Table of Authorities

1

## **TABLE OF AUTHORITIES**

2

### STATUTES

3   Code Civ. Proc., §1094.5 ................................................................................................ 4

4   Evidence Code §115 ...................................................................................................... 12

5   Government Code §11400 ............................................................................................. 15

6   Government Code §11425.10............................................................................................ 14

7   Government Code §11450.10............................................................................................. 14

8   Government Code §11513.... ................................................................................ 7, 15-16

9   Labor Code §90 ............................................................................................................ 20

10  Labor Code §90.5 .......................................................................................... 16, 18, 19, 20, 23

11  Labor Code §96.7 ............................................................................................... 19, 23

12  Labor Code §226.7 ....................................................................................................... 10

13  Labor Code §510 ............................................................................................................ 7

14  Labor Code §558 ..................................................................................................... 14, 18

15  Labor Code §1174 .......................................................................................................... 8

16  Labor Code §1197 ................................................................................................... 7, 17

17  Labor Code §1197.1 ........................................................................... 7, 14, 16-17, 18

18  Labor Code §2699.3............................................................................................ .22

19

### OTHER AUTHORITIES

20  8 California Code of Regulations §11070 [Industrial Welfare Commission ("IWC")

21      Wage Order 7-2001 .................................................................................. 8, 10

22

23

24

25

26

27

28

## I. INTRODUCTION

On August 29, 2015, the Division of Labor Standards Enforcement ("DLSE") issued a wage citation to Bodega Latina Corporation for violations of Labor Code section 1197 for failing to pay minimum wage to four employees; for violations of Labor Code section 510 for failing to pay overtime wages to four employees; for violations of Labor Code section 226.7 and section 11 governing meal periods of the Industrial Welfare Commission ("IWC") wage order for failing to provide a 30 minute duty free meal period to three employees; and for violations of Labor Code section 226.7 and section 12 governing rest periods of the IWC wage order for failing to provide a 10 minute duty free rest period to 19 employees. (AR-000001[1])

Bodega Latina timely appealed the citation. The administrative hearing on the citation was held over the course of several days, finishing on February 3, 2016. (AR-000021; AR-000038-000989) On April 8, 2016, the hearing officer issued the Notice of Findings on the citations. (AR- 000020-000037) The hearing officer affirmed the citation as amended at hearing. (*Id.*) On June 13, 2016, Petitioner timely filed this writ challenging the hearing officer's findings.

## II. RELEVANT FACTS

On April 18, 2014, the Labor Commissioner's office conducted a multi-store compliance inspection of Bodega Latina' El Super markets. (AR-000055:11-17) Deputy Labor Commissioner Catalina Botello ("DLC Botello") and Industrial Relations Representative Jocelyn Lopez ("IRR Lopez") conducted the inspection at Bodega Latina's Santa Fe Springs location. (AR-000052:18-25)

During the inspection, DLC Botello observed employees personally using the time clock and observed an individual identified as "Madge" clocking other employees in and out. (AR-000054:10-12; 18-20) Madge explained to DLC Botello that she would clock employees in and out for lunch when the employee was past their scheduled time for a lunch break. (AR-000054:21-000055:2) Bodega Latina prohibited DLC Botello and IRR Lopez from interviewing

---

[1] All references to the Certified Administrative Record prepared by the agency will be noted by the use of the following initials: "AR" followed by the page number. The Reporter's Transcript has been made part of the Administrative Record and will be referenced by the Administrative Record page number.

1

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

1  employees on the day of inspection. (AR -000053:10-000054:5)

2   DLC Botello spoke with Bodega Latina's attorney, Laura Reatheford, who confirmed

3  that employees' posted schedules included each employee's start time, meal period, rest period

4  and end time, (AR-000056:9-11) and that the time clocks at each facility would not allow

5  employees to clock in more than 7 minutes before their start time or after 7 minutes of their

6  scheduled departure time. (AR-000056:7-9) DLC Botello was also advised that Bodega Latina

7  operated 45 stores and the same labor practices were in effect at all 45 stores. (AR-000055:19-

8  56:1)

9   Following the inspection, investigators interviewed forty-five Bodega Latina employees.

10  (AR-000057:7-10) Based on the employee interviews, the DLSE determined that certain

11  employees were not permitted timely meal periods, were denied rest breaks and were owed

12  minimum wages and overtime wages for work performed off the clock. (AR-000057:25-

13  000058:4) After the DLSE issued Citation WA102338, Bodega Latina provided a copy of the

14  class action settlement agreement which was executed in November and December 2013. (AR-

15  000058:5-6, 15-25; AR000995-001037) Based on the defined class period ending December 31,

16  2012, DLC Woo amended the citation to reflect a period of violation from January 1, 2013 to

17  June 6, 2015. (AR-000059:7-000060:16; AR-001039) DLC Woo entered as an exhibit and

18  explained audit spreadsheets (AR-001055-001474) which were based on the information

19  provided by employees and formed the basis of the citation. (AR-000075-000087)

20   During the administrative hearing, several employees confirmed the information provided

21  during the interviews and which formed the basis of the citation for denied rest breaks [Martinez

22  (AR-000129:10-13; AR-000130:1-4; AR-000153:15-21; AR-000154:8-000155:2; AR-000134:3-

23  11; AR-000160:19-25; AR-000161:13-23; AR-000162:2-23); Yanez (AR-000181:18-000182:14;

24  AR-000187:3-17); Jiminez (AR-000208:4-10; AR-000209:2-17); Garcia (AR-000221:17-

25  000223:1; AR-000222:11-13; AR-000233:25-000234:1; AR-000235:3-5; 9-13); Robles (AR-

26  000317:5-21; AR-000318:9-11); Aguirre (AR-000359:11-17; AR-000373:6-9; AR-000373:13-

27  14; AR-000377:20-23; AR-000378:3-6, 13-15, 20-22; AR-000381:4-17); Valle (AR-000410:10-

28  19; AR-000411:10-11; AR-413:2-4; AR-000424:7-8); Orozco (AR-000445:23-000446:7); De

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

1    Porras (AR-000472:9-24; AR-000495:13-19; AR:000497:20-23); Mejia (AR-000550:9-12; AR-

2    000556:25-000557:5; AR-000569:22:25); Olivares (AR-000585:7-19; AR-000585:25-000585:9,

3    AR-000586:17; AR-000588:4-6); Urrutia (AR-000628:15-000629:1; AR-000629:11-13; AR-

4    000630:17-20; AR-000636:12-19); Moran  (AR-000661:17-24; AR-000662:18-23)]; missed

5    meal periods [Garcia (AR-000221:17-000223:1; AR-000222:11-13; AR-000233:25-000234:1;

6    AR-000235:3-5; 9-13); Moran (AR-000676:19-23; AR-000677:3-14; AR-000678:14-19)]; and

7    overtime and minimum wages due for uncompensated work [Jorge Martinez (AR:000130:1-4;

8    AR-000131:20-24); Jose Garcia (AR-000218:11-000219:14; AR-000220:4-10; AR-000220:17-

9    19; AR-000257:24-000258:14; AR-000221:17-000223:1; AR-000222:11-13; AR-000233:25-

10   000234:1; AR-000235:3-5; 9-13)].  The hearing officer found that the DLSE's witnesses testified

11   credibly (AR-000031:24-26) and properly concluded that the DLSE met its burden establishing

12   the violations.  (AR-000029:7-16; AR-000030:4-11; AR-000030:24-000031:7)

13          The hearing officer noted that eleven of petitioner's twelve witnesses were currently

14   employed with petitioner at the time of hearing, one regional director, six store directors, one

15   department manager and two clerks.  (AR-000027:16-20)  These witnesses all claimed that the

16   employees all took their breaks and lunches, had not made complaints that they were denied

17   meal or rest periods or not paid for uncompensated hours and were provided with the employee

18   handbooks governing petitioner's meal and rest period policies.  (AR-000027:20-23).  The

19   hearing officer determined that petitioner's meal and rest period policies were inconsistently

20   applied and that the witnesses for petitioner lacked credibility with respect to refuting the

21   testimony provided by the DLSE's witnesses.  (AR-000031:2-7)

22          At the hearing, Bodega Latina also argued that with the exception of four employees (two

23   who opted out of the class action (AR-00095:17-21) and two who were not included in the

24   defined class (AR-000099:10-000100:1; 10-196; AR-000102:1-9; AR-000116:12-17), the

25   individuals for whom the DLSE determined were owed wages had released their claims through

26   December 27, 2015 by virtue of the class action settlement.  (AR-00069:4-7; AR-000071:3-5;

27   AR-001480-001486).  The hearing officer held that the DLSE was not a party to the class action

28   and that no evidence was presented which would preclude the DLSE from proceeding on the

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

1  citation. (AR-000028)

2  ### III. ARGUMENT

3      Petitioner asserts that its Petition for Writ of Mandate should be granted because the

4  evidence does not support the findings and because the Labor Commissioner exceeded her

5  jurisdiction, abused her discretion by failing to apply the class action settlement to the citation,

6  and denied petitioner due process by failing to provide petitioner a fair trial. As discussed below,

7  none of the arguments propounded by Petitioner justify issuance of the writ of mandate.

8  **A.      STANDARD OF REVIEW**

9      An aggrieved party may seek judicial review of an administrative order or decision by

10  filing a petition for a writ of mandate in the Superior Court. "The inquiry in such a case shall

11  extend to the questions whether the respondent [agency] has proceeded without, or in excess of

12  jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of

13  discretion. Abuse of discretion is established if the respondent has not proceeded in the manner

14  required by law, the order or decision is not supported by the findings, or the findings are not

15  supported by the evidence." Code Civ. Proc., §1094.5 subd. (b).

16      The standard of review depends on the nature of the right affected by the administrative

17  decision. *MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204,

18  217. If the decision of the administrative agency substantially affects a vested, fundamental

19  right, then the trial court exercises its independent judgment upon the evidence. *Bixby v. Pierno*

20  (1971) 4 Cal.3d 130, 143. In cases in which the administrative proceeding does not affect a

21  fundamental vested right, the trial court reviews the administrative record to determine whether

22  the findings are supported by substantial evidence and whether the agency committed any errors

23  of law. *Bixby v. Pierno* (1971) 4 Cal.3d 130, 144. In such a case "[a] court may reverse an

24  administrative order only if the hearing officer's factual determinations are not supported by the

25  weight of the evidence." *Vison v. Snyder* (1999) 75 Cal.App.4th 182; *Santos v. Dept. of Motor*

26  *Vehicles* (1992) 5 Cal.App.4th 537, 545.

27      Generally, the assessment and review of penalties does not vest the reviewing court with

28  the power to exercise independent judgment. "Neither a trial court nor an appellate court is free

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

4

Respondent's Memorandum of Points & Authorities in Support of Opposition to Petition for Writ of Mandate

1  to substitute its discretion for that of an administrative agency concerning the degree of

2  punishment imposed." *California Real Estate Loans, Inc. v. Wallace* (1993) 18 Cal.App.4th

3  1575, 1579.  Further, "there is no vested right to conduct a business free of reasonable

4  governmental rules and regulations." *Northern Inyo Hosp. v. Fair Employment Practices Com.*

5  (1974) 38 Cal.App.3d 14, 22.  Preservation of economic interests has not been held to affect

6  fundamental vested rights.  *Champion Motorcycles Inc. v New Motor Vehicle Board* (1988) 200

7  Cal.App.3d 819, 824.  Where the right addressed is purely economic, the substantial evidence

8  test applies to judicial review. *Kawasaki Motors Corp. v. Superior Court* (2000) 85 Cal. App.4th

9  200, 203-205.

10  Courts have addressed the appropriate *trial court* standard of review (independent

11  judgment or substantial evidence) with respect to citation proceedings and have held that the

12  heightened standard of review (independent judgment) does *not* apply. *Owen v. Sands* (2009)

13  176 Cal.App.4th 985, 992. The *Owens* court, citing a string of cases pertaining to civil penalties

14  for violations of law, explained that where the only sanction imposed is a fine—not revocation,

15  suspension, or restriction of a license—no fundamental vested right is implicated and the trial

16  court is not authorized to exercise independent judgment on the evidence." *Id.* at p. 992.

17  "[J]udicial review of an agency's assessment of a penalty is limited [to the substantial

18  evidence test] and the agency's determination will not be disturbed in mandamus proceedings

19  unless there is an arbitrary, capricious or patently abusive exercise of discretion by the agency."

20  *Flippin v. Los Angeles City Bd. Of Civil Service Commissioners* (2007) 148 Cal.App.4th 272;

21  *Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44.  An abuse of discretion is "discretion

22  exercised to an end or purpose not justified by and clearly against reason, all of the facts and

23  circumstances being considered." *Brown v. Gordon* (1966) 240 Cal.App.2d 659, 666-667;

24  *Schaub's, Inc. v. Dept. Alc. Bev. Control* (1957) 153 Cal.App.2d 858, 866.  The trial court may

25  not disregard or overturn the Commission's finding "for the reason that it is considered that a

26  contrary finding would have been equally or more reasonable." *Boreta Enterprises, Inc. v.*

27  *Department of Alcoholic Beverage Control* (1970) 2 Cal.3d 85, 94; *Bowman v. Alcoholic Bev.*

28  *App. Board* (1959) 171 Cal.App.2d 467, 471-472.  Moreover, as the court in *Bristol v. Young*

Department of
Industrial Relations
Division of Labor
Standards Enforcement
Legal Unit

5

Respondent's Memorandum of Points & Authorities in Support of Opposition to Petition for Writ of Mandate

1    (1943) 23 Cal.2d 221, 223-224 explained: "...when two or more inferences can be reasonably

2    deduced from the facts, the reviewing court is without power to substitute its deductions for

3    those of the trial court." Essentially, unless the finding, viewed in the light of the entire record,

4    is so lacking in evidentiary support as to render it unreasonable, it may not be set aside.

5    **B.    SUBSTANTIAL EVIDENCE SUPPORTS THE MINIMUM AND OVERTIME
         WAGE ASSESSMENT**

6

7        DLC Botello and IRR Lopez interviewed Jose Garcia, Jorge Martinez and Juan Carlos

8    Urutia who indicated that they worked time off the clock which resulted in a minimum wage and

9    overtime assessment. (AR:-000057:7-10; AR-000057:25-000058:4). DLC Woo testified that

10   the audits were prepared based on information obtained from employees. (AR-000308:16-23)

11   Mr. Garcia and Mr. Martinez both testified at the hearing and confirmed that they worked time

12   off the clock, partly because they were not permitted to clock in or out with 7 minutes of their

13   shift and no time adjustments were made for their actual hours worked. (AR:000130:1-4; AR-

14   000131:20-24; AR-000218:11-000219:14; AR-000220:4-10; AR-000220:17-19; AR-000257:24-

15   000258:14; AR-000221:17-000223:1; AR-000222:11-13; AR-000233:25-000234:1; AR-

16   000235:3-5; 9-13)

17       Socorro Sanchez testified on behalf of Bodega Latina. (AR-000822) Ms. Sanchez

18   supervised Mr. Martinez at an unspecified time and claimed that Mr. Martinez took his breaks.

19   (AR-000826:9-14) However, Ms. Sanchez did not provide any testimony to refute the DLSE's

20   claim that Mr. Martinez was owed minimum and overtime wages for time worked off the clock.

21   Abel Guidino also testified on behalf of Bodega Latina but like Ms. Sanchez, did not provide any

22   testimony to refute the DLSE's claim that Mr. Martinez was owed minimum and overtime wages

23   for time worked off the clock. (AR-000835-000842) Armando Nava testified on behalf of

24   Bodega Latina and stated that he saw Mr. Garcia take breaks but did not provide any testimony

25   to refute the DLSE's claim that Mr. Garcia was owed minimum and overtime wages for time

26   worked off the clock. (AR-000928-000938)

27       Petitioner contends that the DLSE's calculation for Mr. Garcia's overtime claim is

28   contradicted by Mr. Garcia's own testimony. (Petitioner's Opening Brief at page 10) However,

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

1   a thorough reading of Mr. Garcia's testimony suggests this is not quite true. Specifically, the

2   DLSE's audit, based on information Mr. Garcia provided during the investigation, credits him

3   with three uncompensated hours each day. (AR-001178-001218) Mr. Garcia testified that his

4   scheduled shift was 6:00 a.m. to 2:30 p.m. and that he would work from 5:00 a.m. to 3:30 p.m.

5   (AR-000218:13-000219:14) Mr. Garcia also testified that he would not get his full 30 minute

6   duty free meal period. (AR-000221:17-000222:1) Essentially, Mr. Garcia was working at least

7   10.5 hours and it was not unreasonable for the hearing officer to affirm the citation of 3 hours of

8   overtime rather than 2.5 hours given the information provided to the investigators was provided a

9   year earlier, more recent in time than the testimony given at the hearing a year later.

10   Labor Code §1197 provides that the payment of a less wage than the minimum so fixed is

11   unlawful. Labor Code §1197.1 provides that an employer who pays a wage less than the

12   minimum fixed by an order of the commission shall be subject to a civil penalty, restitution of

13   wages and liquidated damages. Labor Code §510 provides in relevant part that any work in

14   excess of eight hours in one workday and any work in excess of 40 hours in any one workweek

15   shall be compensated at the rate of no less than one and one-half times the regular rate of pay.

16   A review of the audits for Jose Garcia, Jorge Martinez and Juan Carlos Urutia, admitted

17   as DLSE Exhibit 4 at AR-001178-001218; AR-1080-1081; and AR-001082-001134, reveals that

18   each is owed minimum wage and overtime wages based on information provided by these three

19   employees to the DLSE investigators.

20   DLC Woo's testimony that the audits were based on information provided by the

21   employees and employer records with respect to the employee's hours worked and compensation

22   is admissible evidence in the administrative hearing. Hearsay evidence is sufficient to support a

23   finding in administrative proceedings. Government Code §11513(d). Section 11513(d) makes it

24   clear that **an objection is necessary to prevent hearsay from being relied on to support a**

25   **finding.** Failure to object will allow the hearsay, standing alone, to be considered of probative

26   value and to be the sole support of a finding in administrative proceedings. *Fox v. San Francisco*

27   *Unified School District* (1952) 111 Cal.App.2d 885, 891. See also *Dibble v. Gourley* (2002) 103

28   Cal.App.4th 496, *disapproved on other grounds* and *Borror v. Department of Inv.* (1971) 15

7

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

1  Cal.App.3d 531, 546, which both hold that a party must object at the administrative proceeding

2  otherwise hearsay evidence is sufficient.

3      Second, when an employer has failed to fulfill a statutory obligation to keep accurate

4  time records, testimony by the affected employee is sufficient to establish the amount of hours

5  worked and wages due.

6      Labor Code Section 1174, subsection (d) provides that every employer shall keep payroll

7  records showing the hours worked daily by, and the wages paid to, employees.  In addition,

8  Industrial Welfare Commission ("IWC") Order 7-2001 (Title 8, California Code of Regulations,

9  §11070), which regulates the wages, hours and working conditions in the defendant's business,

10  requires employers to keep accurate time records showing when the employee begins and ends

11  each work period and when meal periods are taken.

12      Testimony at the hearing confirmed that employees were prevented from clocking in or

13  out of their shift or meal periods unless it was within seven minutes of their schedule.  (AR-

14  000056:7-9)  Employees such as Mr. Garcia, Mr. Martinez and Mr. Urutia who worked time

15  before or after their scheduled shift would not be able to have that time reflected in their time

16  records unless a manager modified an employee's time record to accurately reflect the time.  Mr.

17  Garcia confirmed that his time records were not modified to accurately reflect his actual hours

18  worked.  (AR-000220:20-24; AR-000240:21-24; AR-000241:3-8; AR-000244:11-14)

19      Petitioner violated the record keeping provisions of the Labor Code and IWC Wage

20  Orders by failing to accurately record the employees' time worked before or after their scheduled

21  shift.  The information provided to the DLSE investigators regarding time worked off the clock

22  that resulted in the audits, coupled with Mr. Garcia's and Mr. Martinez' testimony as to the hours

23  they worked off the clock and Bodega Latina's time keeping system which prevented them from

24  accurately recording their own hours, are sufficient to meet the burden of establishing the

25  compensable hours for which the employees are owed.  Thus substantial evidence exists that the

26  amount of wages due as reflected in the wage audits were properly calculated.

27  ////

28  ////

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

8

## C.   SUBSTANTIAL EVIDENCE SUPPORTS THE MEAL PERIOD ASSESSMENT

DLC Botello and IRR Lopez interviewed Jose Garcia, Juan Carlos Urutia and Herbert Alfredo Moran who indicated that on occasion, they were not able to take a full, thirty minute duty free meal period.    (AR:-000057:7-10; AR-000057:25-000058:4). DLC Woo testified that the audits were prepared based on information obtained from employees. (AR-000308:16-23)  Mr. Garcia and Mr. Moran both testified at the hearing that they were denied meal periods, were unable to take a full-30 minutes meal period, or received their meal period after the fifth hour of work. (AR-000221:17-000223:1; AR-000222:11-13; AR-000233:25-000234:1; AR-000235:3-5; 9-13; AR-000676:19-23; AR-000677:3-14; AR-000678:14-19)

Armando Nava testified on behalf of Bodega Latina. (AR-000928)  Mr. Nava supervised Mr. Garcia at an unspecified time and stated that he saw Mr. Garcia taking his meal breaks on numerous occasions. (AR-000933:11-13)  However Mr. Nava did not provide any testimony that he had personal knowledge about what time Mr. Garcia took his meal period or how long Mr. Garcia was able to take a meal period.  Essentially, Mr. Nava did not provide any direct evidence to refute the DLSE's claim that Mr. Garcia was not provided a timely and full 30 minute duty free lunch period each day.

Erika Medina, store director testified that she saw Herbert Moran taking breaks. (AR-000850:21-000851:5; AR-000867:14-25)  However, Ms. Medina did not provide any testimony to refute the DLSE's claim that Mr. Moran was not provided a timely and full 30 minute duty free lunch period each day.  Petitioner contends that Mr. Moran testified that he received his meal breaks late one or two days per week but that the DLSE audit attributes missed meal periods each day he worked.  A review of Mr. Moran's testimony reveals a discussion of meal periods and rest periods in different departments, under different managers and during different times.  It is certainly not clear from Mr. Moran's testimony when exactly he received complete and timely meal periods and when he did not.  Given the imprecise testimony at the hearing regarding these factors, it was not unreasonable for the hearing officer to affirm the assessment as determined by the

9

1    DLSE during its earlier investigation.

2        IWC Wage Order 7, Section 11 sets forth the meal period requirements for

3    petitioners' employees. Section 11 states:

4        (A) No employer shall employ any person for a work period of more than five (5)
         hours without a meal period of not less than 30 minutes, except that when a work
5        period of not more than six (6) hours will complete the day's work the meal
         period may be waived by mutual consent of the employer and employee. Unless
6        the employee is relieved of all duty during a 30 minute meal period, the meal
         period shall be considered an "on duty" meal period and counted as time worked.
7        An "on duty" meal period shall be permitted only when the nature of the work
         prevents an employee from being relieved of all duty and when by written
8        agreement between the parties an on-the-job paid meal period is agreed to. The
         written agreement shall state that the employee may, in writing, revoke the
9        agreement at any time.

10       The information provided to the DLSE investigators regarding missed or late meal

11   periods, Mr. Garcia's and Mr. Moran's testimony regarding their missed meal periods and

12   Bodega Latina's failure to refute the evidence, provides substantial evidence that the meal period

13   assessment was properly issued and affirmed.

14   **D.    SUBSTANTIAL EVIDENCE SUPPORTS THE REST PERIOD ASSESSMENT
           AND THE FINDING THAT THE PENALTIES WERE PROPERLY**
15   **     CALCULATED**

16       **1.    The Rest Period Assessment is Supported by Substantial Evidence**

17       As discussed above, DLC Botello and IRR Lopez interviewed 45 employees after

18   which they determined that certain employees were not permitted to take 10 minute duty

19   free rest periods in accordance with IWC Wage Order 7, section 12 and Labor Code

20   section 226.7 which requires an employer to authorize and permit 10 minute rest periods

21   for every four hours worked or major fraction thereof.

22       The rest period assessment is further supported by the testimony of thirteen

23   employees. (AR-000127-000688). Bodega Latina's witnesses offered testimony that the

24   employees were able to take their breaks. However the counter-testimony proffered

25   failed to adequately refute the DLSE's witness testimony in that no information was

26   provided as to when the alleged breaks were taken, how often the breaks were observed,

27   that the testifying witness actually knew how long the alleged break lasted, whether the

28   witnesses to the break knew if the other employees took all their breaks or any other

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

Respondent's Memorandum of Points & Authorities in Support of Opposition to Petition for Writ of Mandate

1   information that would directly contradict the testimony of the employees.

2       In addition, Erika Medina, store director, testified that it was the department

3   managers' responsibility to ensure that employees were complying with Bodega Latina's

4   meal and rest period policies and that the managers would be subject to discipline for

5   failing to follow through with policies with respect to the employees under their

6   supervision. (AR-000852:1-5, 11, 16-24; AR-000853:18-000854:1; AR-000877:5-7) As

7   such, the hearing officer inferred that the petitioner's managers who testified were biased

8   and not as credible with respect to their testimony regarding rest periods. (AR-000027;

9   AR-000031)

10      Petitioner contends that testimony from Esther Valle, Juana Villegas De Porras,

11  Jacqueline Urrutia and Herbert Alfredo Alas Moran contradicts and refutes the DLSE's

12  audits for these individuals. Again, a review of these witnesses' testimonies reveals a

13  discussion of meal periods and rest periods in different departments, under different

14  managers and during different times. It is certainly not clear from the testimony when

15  exactly each received the rest periods to which they were entitled. Witnesses testified

16  that they would get breaks a few times of week but their testimony did not confirm that

17  they received *both* their morning *and* afternoon break. The hearing officer justifiably

18  inferred from the evidence that even if one rest period was provided, the second was not

19  and that the assessment, as amended, was correct.

20      **2.    The Rest Period Penalties were Properly Calculated**

21      The civil penalty portion of WA102338 was assessed for any pay period an employee did

22  not receive a rest period occurring between June 29, 2014 and June 29, 2015 (AR-000073:12-21;

23  AR-001039). Although the audit reveals 19 employees who suffered rest period violations, DLC

24  Woo testified that the penalty assessed was based on three employees, 52 violations each for

25  Dena Maureen Quinn Taylor, Luis Aguirre and Guspar Olivares Pompe (AR-000072:4-

26  000073:1; AR-000073:9; AR-000073:10) For **each pay period** between June 29, 2014 and June

27  29, 2015, for which an employee is owed rest period premiums counts as one violation. The

28  actual number of violations as reflected in the audits, which are part of the administrative record

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

11

Respondent's Memorandum of Points & Authorities in Support of Opposition to Petition for Writ of Mandate

1    are as follows:

2    | Employee | Audit Location in AR | # of pay periods denied rest period between 06/29/14 – 06/29/15 |
     | --- | --- | --- |
     | Dena Maureen Quinn Taylor | AR-001474 | 48 |
     | Luis Aguirre | AR-001230 | 48 |
     | Guspar Olivares Pompe | AR-001340 | 48 |
     | Jose Garcia | AR-001213-001218 | 10 |
     | Total # of violations: | | 154 |

8    Substantial evidence supports an assessment of penalties for violation of the rest period

9    provisions on 154 different pay periods, thus an assessment of 152 violations is proper.

10   **E.   THE HEARING OFFICER IS ENTITLED TO ASSESS CREDIBILITY AND DRAW INFERENCES TO DETERMINE IF THE DLSE MET ITS BURDEN**

12   "A strong presumption supports the correctness of the findings of the administrative

13   agency. [citations omitted]. The burden of proof rests upon the petitioner for writ of mandate to

14   make a showing sufficient to establish administrative error. [citations omitted] Where the

15   petitioner's assertions of irregular procedure or insufficiency of evidence have been denied,

16   presumptions arise that the administrative proceedings were, in fact, regular and supported by the

17   evidence. [citations omitted] In an administrative proceeding the determination of the credibility

18   of witnesses is within the province of the Board. *Campbell v. Bd. of Dental Examiners* (1971) 17

19   Cal. App. 3d 872, 875–76.

20   California Evidence Code section 115 defines "burden of proof" as the obligation of a

21   party to establish by evidence a requisite degree of belief concerning a fact in the mind of the

22   trier of fact or the court. In the administrative hearings, the trier of fact is the Hearing Officer.

23   Evidence Code §115 also provides "[e]xcept as otherwise provided by law, the burden of proof

24   requires proof by a preponderance of the evidence." Preponderance of the evidence means that

25   the evidence on one side outweighs the evidence on the other side. *People v. Miller* (1916) 171

26   Cal. 649, 652. It does not have to be "clear and convincing" evidence.

27   ////

28   ////

1    In addition, the hearing officer may make inferences, assess credibility and weigh the

2  evidence. *Beck Development Co. v. Southern Pacific Transp. Co.* (1996) 44 Cal.App.4th 1160,

3  1204. See also *Hicks v. Reis* (1943) 21 Cal.2d 654, 659 [The trier of fact can consider the

4  interest, bias and motive of the witness in drawing inferences and accepting or rejecting

5  proffered evidence.]   An inference is a reasonable conclusion from the evidence. *Krause v.*

6  *Apdaca* (1960) 186 Cal.App.2d 413, 418. "Even "slight evidence" in support of the fact to be

7  inferred has been held to be sufficient." *Fashion 21 v. Coal. for Humane Immigrant Rights of*

8  *Los Angeles* (2004) 117 Cal. App. 4th 1138, 1150.

9    Finally, "an administrative hearing officer's proposed decision is entitled to great weight

10  *because of* his [or her] *opportunity to observe the witnesses and weigh their testimony in light of*

11  *their demeanor." Gore v. Board of Medical Quality Assurance* (1980) 110 Cal.App.3d, 184, 190.

12  "Credibility determinations require a personal presence that a cold transcript cannot convey."

13  *Abbott v. Mandiola* (1999) 70 Cal.App.4th 676, 683.

14    In this case, the preponderance of the evidence support the wage and penalty assessment

15  in the mind of the trier of fact – the hearing officer - as indicated in her decision. The evidence

16  presented established that the wage audits prepared by the DLSE were properly conducted based

17  on information obtained from employees and payroll records from the employer. The hearing

18  officer reasonably concluded that the audits were valid and that the DLSE had met its burden

19  that, more likely than not, the petitioner violated the Labor Code provisions for which they were

20  cited. After listening to testimony and considering bias and motivations of Bodega Latina's

21  witnesses, she properly determined that Bodega Latina did not establish credible proof disputing

22  the evidence presented by the DLSE.

23    Petitioner asserts that the hearing officer ignored evidence that petitioner did not prevent

24  them from taking rest breaks and ignored credible evidence of petitioner's witnesses. This is

25  simply not true. The hearing officer noted that petitioner had implemented policies regarding

26  meal and rest periods but found that the Division's witnesses testified credibly that petitioner's

27  managers made if difficult, if not impossible for the employees to take both their rest periods.

28  (AR-000031) The hearing officer found a culture within the stores which essentially prevented

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

1   employees from taking their rest periods despite petitioner's policy. The hearing officer

2   determined that petitioner's inconsistent implementation of its policies and lack of credible

3   testimony failed to refute the audit findings. (AR-000031:2-7) Clearly, the hearing officer

4   considered the evidence as indicated in her decision but then gave it the weight that she

5   considered that evidence deserved. In effect, Bodega Latina is requesting that the reviewing

6   court reweigh the evidence and credibility of witnesses, which the court is not empowered to do.

7   *City of Los Angeles v. Civil Service Commission* (1995) 39 Cal. App. 4th 620, 633.

8   **F.      THE LABOR COMMISSIONER DID NOT DEPRIVE PETITIONER OF A FAIR**
        **HEARING OR INFRINGE UPON PETITIONER'S DUE PROCESS RIGHTS**
9

10      **1.      The Labor Commissioner Afforded Petitioner a Fair Trial**

11          Due process requires notice and an opportunity to be heard, including the right to present

12   and rebut evidence, in actions in which the agency determines the facts and law and applies them

13   to a particular person. Government Code §11425.10(a)(1).

14          The Labor Code affords employers extensive due process to challenge civil penalties,

15   including written notice and opportunity for a hearing.  For example, a citation for failure to pay

16   minimum wage provides that a person who wishes to contest a citation can request an informal

17   hearing after which a decision shall be rendered and served on all parties.  A party wishing to

18   then challenge the decision may file a writ of mandate for judicial review. (See Labor Code

19   §1197.1) Wage citations for overtime wages, meal period premiums and rest period premiums

20   are issued pursuant to Labor Code §558. Labor Code §558 utilizes the procedures for contesting

21   a citation or penalty assessment set forth in §1197.1

22          During the hearings, Petitioner had every opportunity to present testimony and evidence

23   and in fact did so. (See AR-000716-000940 – testimony of witnesses and AR-001480-001862 -

24   exhibits). Petitioner cross-examined all witnesses called by the Division. (See AR-000127-

25   000688) Petitioner had the right to call its own witnesses, including any employees not called by

26   the DLSE for whom the audit was performed that gave rise to the citation. (See Government

27   Code §11450.10) The DLSE was not required to produce every employee for whom it based its

28   audit and citation. As indicated below, hearsay evidence is admissible in administrative hearings

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

14

Respondent's Memorandum of Points & Authorities in Support of Opposition to Petition for Writ of Mandate

1   and petitioner was not denied due process on the grounds certain individuals did not testify and

2   thus were not available for cross-examination.  Petitioner was afforded due process under the

3   Administrative Procedure Act and was not denied a fair trial.

4        **2.**     **The Citation Hearing Process is not Subject To Discovery**

5        Petitioner objects to the findings and asserts that the hearing was fundamentally unfair

6   because it was denied its request for records upon which the audit was based and the citation was

7   issued.  Petitioner's objections are unfounded.

8        The DLSE's citation appeal hearings are governed by the informal hearing procedures of

9   the Administrative Procedures Act ("APA") set forth in Government Code §11400, et seq.

10   Under the informal hearing procedures of the APA, there is no due process right to prehearing

11   discovery.  See also *Mohilef v. Janavici* (1996) 51 Cal.App.4th 267 (due process of law does not

12   guarantee a prehearing right to discovery) and *Cimarusti v. Superior Court* (2000) 79

13   Cal.App.4th 799, 809 (The scope of discovery in administrative hearings is governed by statue

14   and the agency's discretion.)

15        The decision by the hearing officer was based upon the evidence presented at the hearing

16   to which the petitioner had an opportunity to review, object to and refute.  The DLSE was not

17   obligated to respond to any requests for records provided that any documents presented at the

18   hearing were made available to petitioner at the hearing as well.

19        **3**  **The Labor Commissioner was not Required to Eliminate Claims of Non-**

            **Testifying Employees' Audit Amounts from the Citation and did not Commit**

20               **Prejudicial Error by Keeping Those Amounts in the Assessment**

21        Petitioner claims they were denied the right to confront "absentee employees" as a

22   witness.  This is simply not true because these employees did not testify at the hearing as a

23   witness and the DLSE did not prevent petitioner from calling any witness to testify.  Although

24   DLC Woo testified that the audits were performed based on information provided by employees

25   during investigative interviews, petitioner could have objected at the hearing that DLC Woo's

26   testimony regarding the audits was based on hearsay.  Petitioner waived the hearsay objection by

27   failing to timely assert it at the hearing.  [Failure to object will allow the hearsay, standing alone,

28   to be considered of probative value and to be the sole support of a finding in administrative

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

15

1   proceedings. *Fox v. San Francisco Unified School District* (1952) 111 Cal.App.2d 885, 891;

2   Government Code §11513(d).]

3       Petitioner argues that non-testifying employees should have been excluded from the audit

4   and the final decision and order because they were not individually present to "prove their

5   claim." Petitioner relies on the statute and DLSE's policies and procedures pertaining to the

6   *Berman* wage claim proceedings to support this contention. However, BOFE citation appeal

7   hearings are not wage adjudication hearings and are not governed by the same statutes and

8   procedures.

9                   **a. The Wage Adjudication Process Within the Division of Labor Standards Enforcement**

10      If an employer fails to pay an employee his or her wages in the amount, time or manner

11  required by contract or statute, the employee has two options. The employee may seek judicial

12  relief by filing a civil action against the employer or the employee may seek administrative relief

13  by filing a wage claim with the labor commissioner pursuant to a special statutory scheme

14  codified in Labor Code sections 98 to 98.8. *Cuadra v. Millan* (1998) 17 Cal.4th 855, 858. The

15  latter option is commonly known as the "Berman" hearing procedure after the name of its

16  sponsor. *Id.* The Berman hearing procedure is designed to provide wage earners a speedy,

17  informal and affordable method of resolving their **individual** wage claims and to avoid recourse

18  to costly and time-consuming judicial proceedings. *Cuadra, v. Millan* 17 Cal.4th at 858 and 869

19  (emphasis added).

20                  **b. The Citation Appeal Hearing Process within the Division of Labor Standards Enforcement**

21

22      Labor Code section 90.5, establishes a Bureau of Field Enforcement (BOFE unit) under

23  the jurisdiction of the Labor Commissioner which is administratively and physically separate

24  from the (wage adjudication unit) offices that accept and determine individual employee

25  complaints. The BOFE unit has the primary responsibility for administering and enforcing

26  those statutes and regulations most effectively enforced through field investigations. Labor Code

27  section 1197.1 provides that upon inspection or investigation (by the BOFE unit), if the Labor

28  Commissioner determines that a person has been paid a wage less than a minimum, the Labor

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

16

1   Commissioner may issue a citation to the person in violation. An employer wishing to contest

2   the citation may file an appeal by request for an *informal* hearing, Labor Code §1197(c)(1). The

3   Labor Commissioner shall hold a hearing after which the citation shall be affirmed, modified or

4   dismissed. *Id.*

5       The wage adjudication process outlined in Labor Code §98 upon which petitioner relies,

6   is not applicable to citation hearings.   As such, the Labor Commissioner can affirm an

7   assessment for non-testifying employees.

8       **4       The Statutory Time Lines for Issuing and Serving Decisions are Directory,
            not Mandatory or Jurisdictional.**

9

10      When a party wishes to contest a citation or proposed assessment, the party must notify

11  the Labor Commissioner in writing. (See Labor Code §1197.1(c)(1) The Labor Commissioner

12  shall thereafter hold a hearing and serve the decision on the parties. "The Labor Commissioner

13  … shall, within 30 days, hold a hearing…. The decision… shall be served on all parties to the

14  hearing within 15 days after the hearing…" Labor Code §1197(c)(1)[2].

15      Petitioner latches on to the word "shall" and argues that the Labor Commissioner lost its

16  authority to render a decision on the appeal hearing because the findings were not served within

17  15 days of the hearing. However, contrary to petitioner's assertions, the word "shall" as used in

18  the Labor Code sections at issue are directory, rather than mandatory or jurisdictional and the

19  failure to issue the findings within 15 days does not deprive the Labor Commissioner of

20  jurisdiction to render the decision.

21      The California Supreme Court has held that requirements relating to time within which

22  an act must be done by divisions of the State's Executive Branch of government are directory,

23  rather than mandatory or jurisdictional:

24              We have held that, generally, requirements relating to
                the time in which an act must be done are directory
25              rather than mandatory or jurisdictional, unless a
                contrary intent is expressed…. In some cases focus has
26              been directed at the likely consequences of holding a

27  [2] The procedures for issuing and contesting citations for overtime wages, meal period premiums
    and rest period premiums are the same as those set out in Labor Code §1197.1  Labor Code
28  §558(b)

1
2
3
4

> particular time limitation mandatory, in an attempt to
> ascertain whether those consequences would defeat or
> promote the purpose of enactment.  Other cases have
> suggested that a time limitation is deemed merely
> directory, 'unless a consequence or penalty is provided
> for failure to do the act within the time commanded.'

5    *Edwards* v. *Steele* (1979) 25 Cal.3d 406, 410, citing *Morris v. County of Marin* (1977) 18 Cal.3d

6    901, 908 *(disapp'd on other grounds)*, citations omitted.

7        In ascertaining probable intent of whether time limits are to be construed as mandatory,

8    California courts have expressed a variety of tests:

9
10
11
12
13

> In some cases focus has been directed at the likely
> consequences of holding a particular time limitation
> mandatory . . . to ascertain whether those consequences
> would defeat or promote the purpose of the enactment.
> Other cases have suggested that a time limitation is
> deemed merely directory 'unless a consequence or
> penalty is provided for failure to do the act within the
> time commanded.'

14    *Woods v. California Department of Motor Vehicles* (1989) 211 Cal.App.3d 1263, 1267, citations

15    omitted.

16        In this case, the application of either test yields the same result.  First, nowhere in Labor

17    Code sections 1197.1 or 558 does there appear a consequence or penalty for noncompliance by

18    the administrative agency with the provisions relating to time within which the decision must be

19    rendered and served.  Neither statute holds that failure to serve the decision within the 15 days

20    renders the decision void or deprives the Labor Commissioner of jurisdiction to hear the matter.

21    Nor does a delay prejudice the employer.

22        Second, holding the time limits mandatory would defeat the purposes of the statutes'

23    enactment if the time limitations were not met.  The Labor Code provides, "It is the policy of this

24    state to vigorously enforce minimum labor standards in order to ensure employees are not

25    required or permitted to work under substandard unlawful conditions or for employers that have

26    not secured the payment of compensation, and to protect employers who comply with the law

27    from those who attempt to gain a competitive advantage at the expense of their workers by

28    failing to comply with minimum labor standards."  Labor Code §90.5(a).  Labor Code §90.5

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

Respondent's Memorandum of Points & Authorities in Support of Opposition to Petition for Writ of Mandate

1   goes on to state that in order to ensure that minimum labor standards are adequately enforced, the

2   Labor Commissioner shall administer and enforce those statutes most effectively enforced

3   through filed investigations. Labor Code §90.5(b).  Labor Code §96.7 provides that the Labor

4   Commissioner after investigation and upon determination that wages are due, may collect such

5    wages or benefits on behalf of the worker.  Clearly, the legislative intent of the penalty and wage

6   provisions for violating Labor Code sections 1197, 510, 226.7 and other provision of the IWC

7   Wage Orders is to ensure compliance with the Labor Code, provide protections to workers and

8   compliant businesses and to collect unpaid wages on behalf of workers.  To find the time

9   provisions set forth therein to be mandatory would only serve to permit a non-compliant

10  employer to sidestep the legal consequences of their violations of the fundamental public policies

11  of this state based on a mere procedural deficiency.

12  **G.      THE DLSE DID NOT ERROR IN REFUSING TO APPLY THE CLASS ACTION
           SETTLEMENT TO THE CITATION AT ISSUE**

13

14       Petitioner argues the doctrine of res judicata precludes the DLSE from issuing and

15  affirming the citation at issue because the violations for which the citation was issued were

16  settled in *Cardoza v. Bodega Latina* class action case.

17       **1.      The DLSE is not Subject to the Class Action Settlement**

18       The settlement agreement entered as an exhibit at the administrative hearing is between

19  the named plaintiffs, Rafaela Rivera and Delma Cordoza, the class members they represent, and

20  Bodega Latina Corporation dba El Super. (AR-000998)  The DLSE is not a party to the

21  settlement agreement.

22       In addition, the settlement agreement specifically defines the class as individuals who

23  worked between 2005 and December 2012 and the class period is defined as July 25, 2005 to

24  December 31, 2012,  (AR-000998-000999)  The initial complaint was filed July 27, 2009

25  seeking damages and restitution for violations of Labor Code sections 201 (payment of wages at

26  time of discharge), 202 (payment of wages at time of quitting), 203 (penalty for failing to pay all

27  wages due at time of discharge or quitting), 226 (itemized wage statements), 226.7 (provision of

28  meal and rest periods), 1174 (record keeping), 1174.5 (penalty for violation of record keeping

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

19

, Respondent's Memorandum of Points & Authorities in Support of Opposition to Petition for Writ of Mandate

1   requirements), 2802 (indemnification for business expenses) and Business & Professions Code

2   section 17200 (unfair business practices).  (AR-001003, §2.8)

3        The parties reached the basic terms of the settlement on May 25, 2011.  (AR-001003)

4   BOFE did not commence its investigation until April 2014, nearly 3 years after the parties in the

5   *Cardoza* matter reached its settlement.  (AR-000055:11-17)

6        Labor Code §90.5 states, "It is the public policy of this state to vigorously enforce

7   minimum labor standards in order to ensure employees are not required or permitted to work

8   under substandard unlawful conditions or for employers that have not secured the payment of

9   compensation, and to protect employers who comply with the law from those who attempt to

10  gain a competitive advantage at the expense of their workers by failing to comply with minimum

11  labor standards."

12       Moreover, the citation issued to Bodega Latina is an enforcement action, seeking to

13  vindicate the public interest as expressed in Labor Code §90.  Although not in the same context

14  as this matter, the effect of a private agreement on the enforcement powers of the EEOC, an

15  administrative agency charged with vindicating certain employee rights, was discussed by the

16  U.S. Supreme Court in *EEOC v. Waffle House, Inc.* (2002) 534 U.S. 279.  In *Waffle House,* the

17  Court held that an arbitration agreement between an employer and employee could not preclude

18  the EEOC from seeking injunctive and monetary relief on behalf of that employee. *Id.* at 295-98.

19  The Supreme Court in *Waffle House* noted that the EEOC stands not just in the shoes of the

20  individual, but as an enforcement vehicle for the public interest. Separate, private agreements to

21  which the EEOC is not a party do not necessarily vitiate the EEOC's authority to proceed in

22  furtherance of the public interest. *Id.* at 296.

23       In this case, the *Cardoza* settlement should not preclude the DLSE from investigating

24  claims and assessing wage and penalties for violations occurring between January 1, 2013 and

25  June 2015.  Specifically, the *Cardoza* action was filed in 2009 for claims going back to 2005.

26  The *Cardoza* parties entered into a preliminary settlement agreement in May 2011 and a formal

27  settlement agreement in 2013, which was not formally approved until 2015.  The DLSE sought

28  to recover for violations which occurred outside the class period and after the parties agreed to

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARD ENFORCEMENT
LEGAL UNIT

20

Respondent's Memorandum of Points & Authorities in Support of Opposition to Petition for Writ of Mandate

1   settlement.  The fact that the parties in the *Cardoza* action took **four** years to finalize their

2   settlement agreement and have it approved does not and should not preclude the DLSE, and

3   specifically the BOFE unit, from carrying out its statutory mandated duties of investigating and

4   ascertaining violations of the Labor Code by petitioner that occurred *after* the *Cardoza* case was

5   filed and settled.

6           **2.**     **Res Judicata and Collateral Estoppel Do Not Apply to the DLSE**

7         The doctrine of res judicata describes the preclusive effect of a final judgment on the

8   merits.  *Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co.*

9   *of America* (2005) 133 Cal.App.4th 1319, 1326.  The doctrine has two aspects: the first is claim

10   preclusion, otherwise known as res judicata, which prevents relitigation of the same cause of

11   action in a second suit between the same parties or parties in privity with them. *Id.* The second is

12   issue preclusion, or collateral estoppel, which precludes relitigation of issues argued and decided

13   in prior proceedings. *Id.*

14         The doctrine of res judicata is applicable if three threshold requirements are satisfied: 1)

15   the decision in the prior proceeding is final and on the merits; 2) the parties must be the same as,

16   or in privity with the party to the former proceeding; and 3) the present proceeding is on the

17   same cause of action as the prior proceeding.  *Federation of Hillside & Canyon Associations v.*

18   *City of Los Angeles* (2004) 126 Cal.App.4th 1180. .  However, where the subsequent action

19   involves parallel facts, but a different historical transaction, the application of the law to the facts

20   is not subject to res judicata or collateral estoppel.  *Chern v Bank of America* (1976) 15 Cal.3d

21   866, 871.

22         As indicated above, the *Cardoza* case was filed in 2005, seeking recovery for violations

23   of law occurring from 2005 through the date of filing the litigation, and arguably to the date the

24   parties agreed to settle.   The parties in *Cardoza* reached preliminary settlement in May 2011.

25   The settlement specifically excludes employees who were not working at Bodega Latina after

26   December 2012, (AR-000998 §1.5) and thus by inference, does not compensate employees for

27   violations occurring thereafter.  Although the final settlement documents were not signed until

28   2013 and were not approved by the court until 2015, the violations for which the DLSE issued its

1   citations were for those occurring after 2012. Although the "causes of action" may be the same

2   as those litigated in *Cardoza*, they are clearly not identical in that they involve completely

3   different time periods than those contemplated when the *Cardoza* action was filed four years

4   earlier.

5        Petitioner argues that the DLSE is in privity with the *Cardoza* plaintiffs because the

6   DLSE delegated its authority to recover wages and penalties to the *Cardoza* plaintiffs through

7   the PAGA statute. Res judicata is an affirmative defense which must be pleaded and proved in

8   the underlying administrative or trial court action. *Rodgers v. Sargent Controls & Aerospace*

9   (2006) 136 Cal.App.4th 82, 89. Although the settlement agreement generally refers to "PAGA"

10  claims (AR-001001 §1.19; AR-001005 §4.2) and the Court Order approving the settlement refers

11  to a payment for PAGA penalties (AR-001484), there is absolutely no mention or evidence of

12  when or if the Labor and Workforce Development Agency ("LWDA") was properly as notified

13  as required by Labor Code section 2699.3. And, if the LWDA was notified, there is no evidence

14  in the record of when LWDA was purportedly notified, what claims were in the notice to the

15  LWDA, or the time period of the alleged violations which were noticed. Petitioner failed to

16  establish that notice was provided, that the PAGA claims alleged in the complaint and alleged to

17  have been settled are the same as those for which the DLSE cited.

18       Petitioner cites *Villacres v. ABM Industries, Inc.* (2010) 189 Cal.App.4th 562 for its

19  argument that the DLSE is precluded from recovering wages on behalf of individuals who are

20  class members in the *Cordoza* class action. In *Villacres,* the court held that the plaintiff was

21  precluded from bringing PAGA claims that were the subject of a prior class action in which the

22  plaintiff was a class member. The *Villacres* case involved an individual who the court

23  determined was in privity with the prior class action plaintiffs because he was in fact a class

24  member of that class action. That is simply not the case here. The State of California is an

25  enforcement agency charged with enforcing the provisions of the Labor Code and upholding the

26  public policy of maintaining minimum wage standards by assessing and collecting wages.

27       Even if petitioner's argument of privity based on delegation of authority through PAGA

28  is viable argument, to do so under the parameters argued by petitioner and under the

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

1  circumstances of this case would be unjust and violate the public policy of California.

2      The determination whether a party is in privity with another is a policy decision which

3  depends on the circumstances of the case and the relationship between the parties. *Gikas v. Zolin*

4  (1993) 6 Cal.4th 841, 849; *Citizens for Open Access to Sand and Tide, Inc. v. Seadrift*

5  *Association* (1998) 60 Cal.App.4th 1053, 1070. The rule of collateral estoppel and res judicata

6  do not foreclose the relitigation of an issue of law covering a public agency's ongoing obligation

7  to administer a statute enacted for the public benefit and affecting members of the public not

8  before the court. *California v. Optometric Association v Lackner* (1976) 60 Cal.App.3d 500,

9  505. See also *Dunkin v. Boskey* (2000) 82 Cal.App.4th 171, 181 recognizing that res judicata

10  will not apply if injustice would result or if the public interest requires that relitigation not be

11  foreclosed; *Louis Stores, Inc. v. Dept. of Alcoholic Beverage Control* (1962) 57 Cal.2d 749

12  recognizing sound judicial policy against applying collateral estoppel in cases which concern

13  matters of important public interest. The court in *Villacres v. ABM Industries, Inc.* (2010) 189

14  Cal.App.4th 562 also recognized that public policy could preclude the application of res judicata

15  but held that application of res judicata to Villacres's lawsuit would not result in any manifest

16  injustice to him or any adverse impact upon the public. *Id.* at 592.

17      The California Supreme Court has repeatedly recognized California's public policy to

18  broadly construe protective statutes regulating the workplace in favor of employee with an eye to

19  promoting the worker protections. See *Smith v. Superior Court* (2006) 39 Cal.4th 77;

20  *Prachasaisoradej v. Ralphs Grocery Co., Inc.* (2007) 42 Cal.4th 217, 228. And, as articulated

21  above, the public policy of this state is to vigorously enforce minimum labor standards and in

22  order to ensure that the minimum labor standards are adequately enforced, the Labor

23  Commissioner shall after investigation and upon determination that wages are due, collect such

24  wages or benefits on behalf of the worker. Labor Code §§90.5(b), §96.7.

25      Here, public policy precludes the application of res judicata because it would result in a

26  manifest injustice and have an adverse impact on the public interest in the enforcement policies

27  of this state. Specifically, if a PAGA notice was in fact sent to the LWDA, it was required to be

28  done in 2009, before the filing of the *Cardoza* lawsuit for violations occurring prior to 2009.

DEPARTMENT OF
INDUSTRIAL RELATIONS
DIVISION OF LABOR
STANDARDS ENFORCEMENT
LEGAL UNIT

23

1    The *Cardoza* lawsuit reached preliminary settlement in May 2011.  (AR-001003 §2.8).  The

2    class period covers July 25, 2005 through December 2012.  The final settlement agreement was

3    signed in 2013 and approved in 2015, **four years** after which initial settlement was reached.

4    Precluding the DLSE from investigating claims and issuing citations for violations that occurred

5    years after any PAGA notice may have been sent, years after the operative complaint was filed,

6    and for years subsequent to the settlement of the *Cardoza* claims would be unjust, would

7    undermine the purposes for which the DLSE exists and would violate the public policy of this

8    state to determine and assess employers for violations of the Labor Code.

9                                                    **IV. CONCLUSION**

10          Substantial evidence supports the wage audit and wage assessments, as modified.

11   Petitioner was provided a fair hearing and was not deprived of due process.  The hearing officer

12   assessed witness credibility and drew reasonable inferences from the evidence in affirming the

13   citation.  Finally, neither the rendering the decision more than 15 days after the hearing or res

14   judicata deprived the Labor Commissioner of jurisdiction to investigate and assess for the Labor

15   Code violations for which petitioner was cited.

16          For the reasons stated herein, Respondent respectfully requests that the writ of mandate

17   be denied.

18

19   Dated:  August 14, 2017                        Respectfully submitted,

20

21                                                  Deborah D. Graves, Esq.

22                                                  Attorney for Respondent

                                                    Department of Industrial Relations

23

24

25

26

27

28